1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRADLEY ROBERTS,

Plaintiff,

v.

CLARK COUNTY SCHOOL DISTRICT,

Defendant.

Case No. 2:15-cv-00388-JAD-PAL

ORDER

(Mot Compel Disc – Dkt. #116)

12   The court held a hearing on Plaintiff's Motion to Compel Discovery of CCSD Policy

13   Decisions (Dkt. #116) on March 29, 2016.  Kathleen England and Danielle Barraza appeared on

14   behalf of the Plaintiff, and Bruce Young appeared on behalf of the Defendant.  The court has

15   considered the motion, Defendant's Opposition (Dkt. #118), Plaintiff's Reply (Dkt. #120) and

16   the arguments of counsel at the hearing.  At the conclusion of the hearing, the court directed

17   counsel for the CCSD to submit the documents in dispute for *in camera* review.  Mr. Young was

18   prepared to deliver the documents and provided them in open court.  The court has now had an

19   opportunity to review the 65 documents at issue.  The court also directed counsel for CCSD to

20   file and serve a description by job title and function, or any other information counsel deemed

21   pertinent to assert a claim of privilege, for those individuals listed on the privileged logs, as

22   sending or receiving documents withheld as privileged.

23   After completing a review of the parties' moving and responsive papers, the privileged

24   logs and the documents submitted for *in camera* review, the Motion to Compel (Dkt. #116) is

25   **GRANTED in part** and **DENIED in part**.

26   ## BACKGROUND

27   The complaint and amended complaint in this case were filed in state court and removed

28   (Dkt. #1) March 4, 2015.  Roberts has asserted claims for gender discrimination, retaliation in

1

violation of state and federal law and a state tort claim for negligent selection, training supervision and/or retention.   Plaintiff Bradley Roberts ("Roberts") is a transgender man currently employed by Defendant Clark County School District ("CCSD") as a police officer. Amended Complaint ¶14.  He started as a part-time campus monitor in 1992 and was hired as a school police officer in March 1994.  *Id.* ¶¶15-16.  He was born biologically female and identified as female until late-2009 when he began formally transitioning to male.  *Id.* ¶17.

By the beginning of the 2011 school year, he was identifying himself as a male transgender person.  *Id.*  Since then Roberts has been subjected to harassment and humiliation in his CCSD work place which began when he asked to have his records changed.  *Id.* ¶18.  Roberts believes CCSD had no policies or procedures in place for his request to be handled in a respectful and dignified manner, or that supervisory or managerial personnel were ignorant of any policies and procedures.  *Id.*  Roberts was subjected to inappropriate comments pertaining to his sexuality and experience, and to overly intrusive and unnecessary demands for information about his gender and genitalia by CCSD employees including supervisors and managers.  *Id.* ¶19.  There were numerous meetings in the workplace in October and November 2011, with CCSD personnel.  *Id.* ¶ 20.  Roberts was sometimes given conflicting directions and was told others were complaining about him.  *Id.* ¶21.  CCSD allowed complaints to continue, did not address them, and demanded that Roberts produce overly intrusive medical and personal documentation.  *Id.*  Roberts believed that if he did not comply with the requests he would not be permitted to "function and present himself as male." *Id.*

CCSD's actions interfered with his ability to properly perform his duties as a police officer and created troublesome situations which were blamed on him.  *Id.* ¶22.  At one point, Roberts was told he would be required to use the female restroom.  *Id.*  To avoid this awkward situation, Roberts was told to avoid and did avoid using any CCSD restroom facilities.  *Id.*  For a period of time he was forced to use outside commercial facilities.  *Id.*

CCSD's actions resulted in unnecessary disclosure of Roberts' private, personal and/or medical information to his supervisors and co-workers which subjected him to harassment and hostile work environment.  *Id.* ¶23.  In 2012, CCSD issued or instituted policies and procedures

directed at transgender persons. *Id.* The policies seemed to be targeting Officer Roberts. *Id.* A memo prohibited CCSD police department employees from using children's restrooms unless prior authorization was secured from the school principal. *Id.* Officer Roberts was summoned to CCSD police department headquarters and required to sit and read the memo. *Id.* Roberts is aware of no other CCSD police department employee who was required to do so. *Id.*

In the current motion, Roberts seeks to compel CCSD to produce 65 documents withheld on the basis of attorney-client and work-product privilege. All 65 documents were listed in a series of privileged document logs as privileged based on the attorney-client privilege and work-product protection.

## DISCUSSION

### I.   Legal Standards.

#### a.   The Attorney-Client Privilege.

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (quotation omitted), *cert. denied*, 520 U.S. 1167 (1997). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co., v. United States,* 449 U.S. 383, 389 (1981). It serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The privilege applies where legal advice of any kind is sought from a professional legal advisor in her capacity as such, and the communication relates to that purpose, and is made in confidence by or for the client. *Id.* The Ninth Circuit has adopted Dean Wigmore's articulation of the elements of the attorney-client privilege: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are, at that instance, permanently protected, (7) from disclosure by the client or by the legal advisor, and (8) unless the protection

1    is waived.  *In re: Fischel,* 557 F.2d 209, 211 (9th Cir.1977); *Admiral Insurance Co. v. U.S. Dist.*
2    *Ct.,* 881 F.2d 1486, 1492 (9th Cir.1989).

3            "The burden is on the party asserting the privilege to establish all the elements of the
4    privilege." *United States v. Martin,* 378 F.3d 988, 999–1000 (9th Cir.2002).  The party asserting
5    the attorney-client privilege must establish the attorney-client relationship and the privileged
6    nature of the communication. *United States v. Bauer,* 132 F.3d 504, 507 (9th Cir.1997).  A party
7    claiming the attorney-client privilege "must identify specific communications and the grounds
8    supporting the privilege as to each piece of evidence over which privilege is asserted."  *Martin,*
9    278 F.3d at 1000.  Blanket assertions of attorney-client privilege are "extremely disfavored."  *Id.*
10   Additionally, "the communication must be between the client and lawyer for the purpose of
11   obtaining legal advice."  *Id.*  "The fact that a person is a lawyer does not make all
12   communications with that person privileged."  *Id.* at 999.  The party asserting the privilege must,
13   at a minimum, make a prima facie showing that the privilege protects the information the party
14   intends to withhold.  *In re Grand Jury Investigation,* 974 F.2d 1068, 1071 (9th Cir.1992).

15           Not all communications between an attorney and client are privileged.  Information such
16   as the identity of the client, the amount of the fee, the identification of payment by case file
17   name, the general purpose of the work performed, and whether an attorney coached a client in
18   his testimony is not privileged.  *See, e.g., United States v. Carrillo*, 16 F.3d 1046, 1050 (9th Cir.
19   1994); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).  Similarly,
20   when an attorney is merely communicating information, such as an order to appear in court, the
21   communications between the attorney and the client are not privileged.  *United States v. Gray*,
22   876 F.2d 1411 (9th Cir. 1989) (holding attorney-client privilege did not preclude lawyer from
23   testifying he advised client of the sentencing date in prosecution of client for failure to appear);
24   *McKay v. Commissioner*, 886 F.2d 1237 (9th Cir. 1989) (holding testimony of taxpayer's
25   attorney that the gave taxpayer a copy of deficiency notice from the IRS in ample time to file a
26   petition timely did not violate the attorney-client privilege).

27           The attorney-client privilege is a rule of evidence; it has not been held a constitutional
28   right.  *Clutchette v. Rushen*, 770 F.2d 1469, 1471 (9th Cir. 1985).  "Because it impedes the full

4

1   and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v.*

2   *Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1980).  The

3   party asserting the attorney-client privilege has the burden of proving the attorney-client

4   privilege applies. *Id*. at 25.  "One of the elements that the asserting party must prove is that it

5   has not waived the privilege." *Id*.  The attorney-client privilege is waived when communications

6   are made in the presence of third parties. *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.),

7   *cert. denied*, 469 U.S. 1034 (1984).  It is well established that "voluntary disclosure of the

8   content of a privileged attorney communication constitutes a waiver of the privilege as to all

9   other such communications on the same subject." *Id*.  In *Weil*, the Ninth Circuit recognized that

10  waiver of the privilege "may be effected by implication" and by inadvertent disclosure. *Id*.

11  Additionally, "the subjective intent of the party asserting the privilege is only one factor to be

12  considered in determining whether waiver should be implied." *Id*.

13       Any disclosure inconsistent with maintaining the confidential nature of the attorney-client

14  relationship waives the privilege. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987),

15  *rev'd in part on other grounds by* 491 U.S. 554 (1989).  The Ninth Circuit employs a three-prong

16  test to determine whether a waiver of the attorney-client privilege has occurred. *United States v.*

17  *Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).  First, the court considers whether a party is

18  asserting the attorney-client privilege as a result of some affirmative act. *Id*.  Second, the court

19  examines whether the party asserting the privilege through an affirmative act has put the

20  privileged information at issue. *Id*.  Third, the court evaluates whether allowing the privilege

21  would deny the opposing party access to information vital to its case. *Id*.

22       There are many contexts in which the courts have held that a party waives the attorney-

23  client privilege by affirmatively relying on the advice of counsel to support a claim or defense.

24  *See, e.g., Trans World Airlines, Inc. v. Hughes,* 332 F.2d 602, 615 (2nd Cir.1964), *cert. denied,*

25  380 U.S. 248, 85 S.Ct. 934, 13 L.Ed.2d 817 (1965) (attorney client privilege waived where the

26  advice of counsel defense raised in an antitrust case and attorney had submitted an affidavit to

27  the Civil Aeronautics Board); *Livingstone v. North Belle Vernon Boro.,* 91 F.3d 515, 537 (3rd

28  Cir.1996) (civil rights plaintiff who asserted she relied on advice of counsel in waiving the right

5

to sue put advice of counsel in issue and waived privilege); *United States v. Amlani,* 169 F.3d 1189, 1195-96 (9th Cir.1999) (client asserting he discharged attorney for certain reasons cannot invoke the attorney-client privilege to deny government counsel access to the information needed to refute claim); *Tsai-Son Nguyen v. Excel Corp.,* 197 F.3d 200 (5th Cir.1999) (executive deponents claiming during deposition that they relied on advice of counsel to substantiate good faith defense to violation of federal law waived attorney-client privilege, and opposing counsel could depose the attorneys on whose advice deponents testified they relied); *Johnson v. Rauland-Borg Corp.,* 961 F.Supp. 208, 211 (N.D. Ill. 1997) (employer who asserted it acted reasonably by employing outside attorney to investigate Title VII claim waived privilege); *Hernandez v Tanninen,* 604 F 3d. 1095, 1100 (9th Cir. 2010) (attorney-client privilege waived in a race and national origin discrimination lawsuit where Plaintiff relied on communications and notes about Defendant with former attorney to support motion for summary judgement).

### b.  The Qualified Work Product Privilege.

The work-product doctrine is a qualified privilege that protects "certain materials prepared by an attorney acting for his client in anticipation of litigation." *United States v Nobles,* 422 U.S.225, 237-238 (1975) (internal quotation marks omitted).  ("At its core the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").  The work-product doctrine "is an intensely practical one" which protects materials prepared by attorneys and their agents. *Id* at 238-39. Unlike the attorney-client privilege which is waived by voluntary disclosure, the work-product privilege is not waived unless voluntary disclosure to a third party "has substantially increased the opportunities for potential adversaries to obtain the information." *Goff V Harris Operating Co. Inc.,* 240 F.R.D. 659 (D. Nev. 2007) (citations omitted).

### II.    Analysis and Decision.

Applying these principles the court finds that many of the documents CCSD has withheld on the grounds of attorney-client privilege are not privileged or that CCSD has waived any potential privilege by voluntarily disclosing the advice of its counsel relied upon to support its good-faith defense in this case.  It is undisputed that CCSD disclosed some of the documents

withheld in its privileged document logs to the EEOC in its response to Plaintiff's administrative claims.  CCSD relied upon legal advice of in-house counsel and conveyed that legal advice to the EEOC to explain and justify its decision to deny Roberts' use of the men's restroom associated with his gender identity.  Although counsel for CCSD argues that CCSD is not relying on the advice of counsel as a defense to this action, CCSD disclosed the advice of counsel to the EEOC to support its claim that its actions with respect to Bradley were justified and complied with existing law.  CCSD has also asserted an affirmative good-faith defense in its answer which claims its actions were justified and complied with existing law.  Some of the documents merely disclosed factual information gleaned during the course of CCSD's internal investigation which was then communicated either to Bradley and/or the EEOC.   Some of the documents memorialize meetings with Bradley, decisions regarding CCSD's positons on Bradley's request for a name change and use of the men's room, and the rationales for those decisions, which were then communicated to Bradley.  None of these documents are privileged.

Although CCSD has waived its attorney-client privilege on the advice of counsel and communications to Bradley and the EEOC which formed the basis for denying Roberts' use of the men's restroom, it has not waived its qualified work product protection.  The work product protection serves a different purpose than the attorney-client privilege, and is intended to allow the client to retain the benefits of the lawyers' work without intrusion of opposing parties and their counsel.  In reviewing the privileged document logs and documents themselves, very few of the documents qualify for work-product protection.  However, the court finds CCSD has not waived its qualified work product immunity by disclosing some arguably attorney-client privileged documents to the EEOC during its investigation, or by asserting a good-faith defense to the claims in this complaint.

In summary, CCSD has waived the attorney-client privilege on the subject matter of matters disclosed to the EEOC by placing its interpretation of the law and its communications with counsel directly at issue.  It has not waived its work-product protection for materials on the same subject matter, only those materials provided to the EEOC which a plaintiff may obtain when requesting the EEOC file in discovery.

For the reasons explained,

**IT IS ORDERED** that CCSD's Motion to Compel (Dkt. #116) is **GRANTED in part** and **DENIED in part**.

1.  Defendant CCSD shall produce documents listed in it Privileged Logs Nos. 1 through 8, 13 through 15, 18 through 22, 26, 27 (redacted of the last paragraph), 28, 30, 34 through 41, 44 through 47, 52, 54, 63 and 65 no later than May 19, 2016

2.  The motion is denied in all other respects.

Dated this 9th day of May, 2016.

Peggy A. Leen
United States Magistrate Judge