# EXHIBIT 56

Excerpts of Deposition of Jon Okazaki conducted on June 29, 2016, Volume II

**Deposition of:**

Jon Okazaki, Esq.

Volume II, Pages 210 - 394

**Case:**

Bradley Roberts v. Clark County School District
2:15-CV-00388-JAD-PAL

**Date:**

06/29/2016



400 South Seventh Street • Suite 400, Box 7 • Las Vegas, NV  89101
702-476-4500 | www.oasisreporting.com | info@oasisreporting.com

COURT REPORTING | NATIONAL SCHEDULING | VIDEOCONFERENCING | VIDEOGRAPHY

Page 210

1       UNITED STATES DISTRICT COURT

2         DISTRICT OF NEVADA

3  BRADLEY ROBERTS,          )
   individually,             )
4                            )
          Plaintiff,  )
5                            )
       vs.        ) No. 2:15-CV-00388-JAD-PAL
6                            )
   CLARK COUNTY SCHOOL       )
7  DISTRICT; and DOES I      )
   through X, inclusive,     )
8                            )
          Defendants.  )
9  _____)

10

11   CONTINUED DEPOSITION OF DESIGNEE OF CCSD
          ON SUBJECT NOS. 4 AND 6
12       (Pursuant to FRCP 30(b)(6))

13        JON OKAZAKI, ESQ.

14      Volume II, Pages 210 - 394

15    Taken on Wednesday, June 29, 2016

16     By a Certified Court Reporter

17            At 9:32 a.m.

18  At 400 South Seventh Street, Suite 400

19          Las Vegas, Nevada

20

21

22

23

24  Reported by:  MARY COX DANIEL, FAPR, RDR, CRR, CCR 710

25  Job No. 17510A

Page 211

1  APPEARANCES:

2  For Plaintiff:

3      MAIER GUTIERREZ AYON
       BY:  DANIELLE J. BARRAZA, ESQ.
4      400 South Seventh Street
       Suite 400
5      Las Vegas, NV 89101

6      ENGLAND LAW OFFICES
       BY:  KATHLEEN J. ENGLAND, ESQ.
7      630 South Third Street
       Las Vegas, NV 89101

8

9  For Defendants:

10     LITTLER MENDELSON
       BY:  BRUCE C. YOUNG, ESQ.
11     3960 Howard Hughes Parkway
       Suite 300
12     Las Vegas, NV 89169

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 212

1             I N D E X

2  WITNESS:  JON OKAZAKI, ESQ.

3                  PAGE

4  Examination By Ms. England (Continued)    214

5

6        INDEX TO EXHIBITS

7  Exhibit              Page

8   28     Notice of Charge of           236
           Discrimination, Bates labeled
9          CCSD001082-1088

10  29     Letter to Thomas Rodriguez    237
           from DETR, dated January 26,
11         2012, Bates labeled
           CCSD001080-1081
12
    30     Letter to Dennis Maginot from 237
13         CCSD, dated February 8, 2012,
           with attachments, Bates
14         labeled CCSD001074-1079

15  32     Letter to Shelley Chinchilla  290
           from CCSD, dated May 9, 2012,
16         Bates labeled CCSD001066-1067

17  33     Decision, Mia Macy v. Eric    299
           Holder case
18
    34     Printout titled, "The EEOC    308
19         Opens the Door to Title VII
           Protection for Transgender
20         Employees," Bates labeled BR
           048-051
21
    35     Letter to S. Scott Greenberg  319
22         from DETR, dated July 16,
           2012; Notice and Agenda for
23         Public Meeting, Bates labeled
           CCSD001059-1062
24

25

Page 213

1          (Exhibits Continued)

2   36     (There is no Exhibit 36)      323

3   37     Notice of Administrative      323
           Hearing, Bates labeled EEOC
4          008-012

5   38     Notice of Case Withdrawal,    390
           Bates labeled EEOC 006-007

6   39     Instruction Unit List, Bates  349
           labeled CCSD001907-1908
7
    40     E-mail from Juanita (Cha)     356
8          Williams to Alt Pro
           Principals, and others, sent
9          September 21, 2012, with
           attachments, Bates labeled
10         CCSD001910-1914

11  65     Excerpt from Nevada           215
           Legislative Review Communique,
12         September 2011, page 14

13  66     Clark County School District  225
           P-4100, Bates labeled
14         CCSD000330

15  67     Clark County School District  225
           R-4110, Bates labeled
16         CCSD000331-336

17

18

19

20

21

22

23

24

25

Page 214

1  (A discussion was held off the record between the court
2  reporter and counsel, wherein counsel present agreed to
3  waive the reporter requirements as set forth under NRCP
4  Rule 30(b)(4) or FRCP Rule 30(b)(5), as applicable.)
5              JON OKAZAKI, ESQ.,
6  having been first duly sworn to testify to the truth,
7  the whole truth and nothing but the truth, was examined
8  and testified as follows:
9
10            EXAMINATION (Continued)
11 BY MS. ENGLAND:
12    Q   Good morning, Mr. Okazaki.
13    A   Good morning.
14    Q   I wanted to finish up with two questions that
15 related to Subject No. 5 which was the subject of your
16 deposition last time.
17    A   Okay.
18    Q   And during your deposition last time, you
19 mentioned that there were actually three cases which
20 you refer to as case law.  You recognized the Doe case,
21 you recognized and acknowledged Mr. Roberts' case.  But
22 you said there was a case that preceded the Jane Doe
23 case, which was the transgender student who never
24 enrolled in Green Valley High School that was the
25 subject of the decision, the 2008 summary judgment in

Page 215

1  favor of the School District on her Title IX claim
2  against the School District.  Do you recognize that?
3  That's the Jane Doe versus School District case.
4     A   Yes.
5     Q   And you mentioned that there was a case before
6  that that involved a transgender person.  Do you recall
7  what that was?  This was part of the case authority
8  that you were relying on.
9     A   Probably the Minnesota Supreme Court case.
10    Q   So that's the Goins case?
11    A   I'm actually not familiar with -- I can't
12 recall the actual caption of the case.
13    Q   But it was not a School District or a District
14 of Nevada or Ninth Circuit case?
15    A   Correct.
16    Q   And when you offered that up during those
17 discussions on November 22nd, 2011, that the School
18 District had case authority, did you indicate, or were
19 you referring to this Minnesota case?
20    A   One of them, yes.
21    Q   Did you tell the people, the laypeople who
22 were there that the Minnesota case was at that point 11
23 years old?
24    A   No.
25            (Exhibit 65 marked)

Page 216

1  BY MS. ENGLAND:
2     Q   I'll show you what's been marked as
3  Exhibit 65.
4         In connection with number, 30(b)(6)
5  Subject No. 5, I had asked you what sort of activities
6  had you undertaken to familiarize yourself with the new
7  law that was going into effect on October 1st, 2011,
8  that added gender identity and expression to Nevada
9  Fair Employment Practices Act.  Do you recall that I
10 asked you that line of questioning?
11    A   I do not.
12    Q   Did you have any responsibility in the School
13 District's office of legal counsel to review bills that
14 impacted labor and employment matters?
15    A   Only --
16        MR. YOUNG:  I'm just going to object to the
17 extent it exceeds the scope of the Topic No. 5.  I note
18 on the record that to the extent it does exceed
19 Topic No. 5, the response of the witness does not
20 represent the answer of the School District on behalf
21 as a 30(b)(6) designated witness and does not bind the
22 School District.
23        That will be a standing objection.  When
24 Ms. England asks questions that are again outside the
25 scope of the topic, if I indicate "standing objection,"

Page 217

1  that's the objection I'm referring to.
2         THE WITNESS:  I review bills that are assigned
3  to me specifically.
4  BY MS. ENGLAND:
5     Q   Could you open the book and look at AB 211,
6  which is Exhibit 59?
7     A   Exhibit --
8     Q   59.
9         Was that one of the bills assigned to you to
10 review?
11    A   At the time, no.
12    Q   Have you ever reviewed AB 211, which is
13 Exhibit 59?
14    A   Yes.
15    Q   When was the first time you reviewed it?
16    A   I don't recall specifically.  During the time
17 period when this was enacted, I was responsible for
18 assisting in the revision of all of our
19 anti-discrimination language and all of our forms, and
20 so --
21    Q   My question is:  When did you first see --
22    A   So it was --
23    Q   -- AB 211?
24        MR. YOUNG:  And I'm going to -- Ms. England,
25 please wait until the witness is done responding before

Page 218

1  you cut him off and ask your next question.  It would
2  be appropriate for you to allow the witness to make any
3  full response before you interrupt him and ask another
4  question.
5        And I'm just going to make my standing
6  objection to this line of questioning.
7  BY MS. ENGLAND:
8    Q   Mr. Okazaki, my question was not, what is your
9  generalized practice?  My specific was -- you have
10 Exhibit 59 in front of you.  It is AB 211.  I'm asking
11 you when you first saw that.
12   A   Yes.  And I was answering that question.  So
13 my answer is --
14   Q   Do you have a specific recollection?
15       MR. YOUNG:  Again, Ms. England, please, he's
16 attempting to answer the question, and you are very
17 rudely interrupting him with a new question before he
18 is done responding.
19       Were you done responding?
20       THE WITNESS:  No.
21 BY MS. ENGLAND:
22   Q   I'll withdraw all those questions.
23       Do you have a specific recollection of when
24 you first saw AB 211, which you have in front of you as
25 Exhibit 59?

Page 219

1    A   No.
2    Q   Can you state under oath here today that you
3  reviewed AB 211 before November 1st, 2011?
4        MR. YOUNG:  Standing objection.  You can
5  answer.
6        THE WITNESS:  I don't have a specific
7  recollection.  So that would have to be my answer, that
8  I don't have a specific recollection of the exact date
9  in which I reviewed AB 211.
10 BY MS. ENGLAND:
11   Q   And before -- on or before November 1st, 2011,
12 can you specifically state any activities you
13 specifically recall having undertaken to assist Clark
14 County School District in implementing the prohibitions
15 which are contained in AB 211 which went into effect on
16 October 1st, 2011?
17       MR. YOUNG:  Standing objection.
18       THE WITNESS:  I do not have a specific
19 recollection as to the date.  So I can't -- I do not
20 have a specific recollection as to dates.
21 BY MS. ENGLAND:
22   Q   When you walked into the meeting on November
23 22nd, 2011, and indicated to Clark County School
24 District Police Officer Brad Roberts that he would not
25 be allowed to use the men's room until he showed that

Page 220

1  he had a surgical alteration of his genitals, can you
2  unequivocally state that you had read AB 211, Exhibit
3  59?
4        MR. YOUNG:  I'll object to the extent it
5  mischaracterizes prior testimony.  You can answer.
6        THE WITNESS:  I can -- since I don't have a
7  specific recollection of the actual date on which I
8  read AB 211, that would be my answer.  I don't have a
9  specific recollection.  I can testify that I was fully
10 aware of the bill and what it revised.  And so I was
11 aware that gender identity had been recognized as a
12 protected status prior to November 22nd, 2011.
13 BY MS. ENGLAND:
14   Q   Okay.  Can you state under oath here today
15 that you were aware not only was it a bill, AB 211, but
16 that the law itself had gone into effect on October
17 1st, 2011?
18   A   Sure.
19       MR. YOUNG:  Standing objection.
20 BY MS. ENGLAND:
21   Q   And that you knew that before you began --
22 before you stepped into that meeting on November 22nd,
23 2011; right?
24       MR. YOUNG:  Standing objection.
25       THE WITNESS:  Yes.

Page 221

1  BY MS. ENGLAND:
2    Q   And you knew that before you -- or, did you
3  know that before you began advising the police
4  department officials earlier in November that they were
5  to instruct Brad Roberts that he was not permitted to
6  use the men's room even though he identified as male?
7        MR. YOUNG:  Standing objection.
8        THE WITNESS:  Yes.
9  BY MS. ENGLAND:
10   Q   So now I'll ask you to look at Exhibit 65.
11       Do you get this bar journal, the Clark County
12 Bar Communiqué?
13   A   I believe I do.
14   Q   This is the September 2011 issue.  So as a
15 member, you would have received a copy of this?
16   A   In all likelihood, yes.
17   Q   In this magazine sent in September of 2011 to
18 Clark County Bar Association members, there's a
19 legislative update by one of its members.  And it
20 indicates that perhaps the biggest legislative change
21 in employment law was the passage of AB 211.  Do you
22 see that, under the word "gender identity"?
23   A   I see what it says there, "Perhaps the biggest
24 legislative change was the passage of AB 211."
25   Q   So in September of 2011, can you recall any

Page 222

1  activities that you undertook, or the School District,
2  to help the School District prepare for what has been
3  characterized as the biggest legislative change in
4  employment law in the state of Nevada in September of
5  2011?
6      A   As I indicated, I did work on the
7  implementation of AB 211.  I can't remember the exact
8  precise dates.
9      Q   Do you have any documentation in your office
10  in any way, shape, or form that would show that you --
11  when and what activities you undertook to assist the
12  School District in implementing AB 211, the law that
13  went into effect on October 1st, 2011?
14          MR. YOUNG:  Standing objection.
15          THE WITNESS:  Yes.
16  BY MS. ENGLAND:
17      Q   What would those -- what would that
18  documentation consist of?
19      A   It would likely consist of communications and
20  drafts relating to the revision to our
21  anti-discrimination warnings or blurbs that appear in
22  our various publications and possibly website.
23      Q   Who would those communications be with?
24          MR. YOUNG:  Standing objection.
25  /////

Page 223

1  BY MS. ENGLAND:
2      Q   Human resources?
3      A   With whichever department was responsible for
4  the publication that we were revising.
5      Q   So insofar as the new prohibition under Nevada
6  law that went into effect on October 1st, 2011, which
7  department would be in charge of changing those rules
8  and regulations?
9          MR. YOUNG:  Standing objection.
10          THE WITNESS:  It's not rules and regulations.
11  What I'm talking about is -- for example, on our job
12  employment application, we have a blurb indicating that
13  we do not discriminate based upon protected statuses
14  and classes.  And so we had to add -- we had to revise
15  that statement consistent with AB 211.  So in that
16  case, I dealt with human resources for the employment
17  application.  We also had --
18  BY MS. ENGLAND:
19      Q   When was that changed?
20          MR. YOUNG:  Standing objection.
21          THE WITNESS:  I don't have a specific date.  I
22  can't recall.
23  BY MS. ENGLAND:
24      Q   How soon after the law went into effect on
25  October 1st, 2011?

Page 224

1          MR. YOUNG:  Standing objection.
2          THE WITNESS:  I don't have a specific date.
3  It was in 2011, though, I believe.
4  BY MS. ENGLAND:
5      Q   The law went into effect on October 1st, 2011.
6  How soon after that did the School District change its
7  job employment application to add gender identity and
8  expression to the protected statuses on its employment
9  application?
10      A   I don't have --
11          MR. YOUNG:  Standing objection.
12          THE WITNESS:  I don't have a specific
13  recollection of the date.
14  BY MS. ENGLAND:
15      Q   And the School District ultimately changed its
16  policies and procedures on harassment and
17  discrimination, did it not, to reflect the new
18  statuses, protected statuses in the law?
19      A   Our policy and regulation, yes.
20      Q   And the School District did not do that until
21  April of 2012.  So that is six months after the law
22  took effect.  Do you recognize that?
23      A   I believe that's accurate, yes.
24      Q   And so you're saying -- so when did you first
25  become involved in making those changes?

Page 225

1          MR. YOUNG:  Standing objection.
2  BY MS. ENGLAND:
3      Q   Or assisting the School District in making
4  those changes?
5      A   I do not know if I personally was involved in
6  revising the policy and regulation.
7          MS. ENGLAND:  So we'll show you what has been
8  marked for us as -- we need the new ones.
9          (Exhibits 66 and 67 marked)
10          MS. ENGLAND:  Here's 66, and here is 67.
11  Sorry, Bruce.  This one is 66.  Sorry.  And this is
12  number 67.  Sorry, I neglected to write the numbers.
13          MR. YOUNG:  I'm sorry.  I was unaware that you
14  were going to go back and ask questions, because the
15  actual notice for this deposition talked about Topics 4
16  and 6, not Topic 5.  I thought we were done.  So
17  technically, I don't understand why you are going back
18  because the depo notice for today only identified
19  Topics 4 and 6, not 5.  So I don't have a copy of the
20  notice that has Topic No. 5 on it, and I don't have it
21  memorized.  So do you have a document that has
22  Topic No. 5 on it?
23          MS. ENGLAND:  I do.  Do you have Exhibit No. 1
24  in your book?
25          MR. YOUNG:  No, I do not.

Page 226

1    MS. ENGLAND: You may certainly look at mine.
2  There's 5.
3    Would you like for us to wait for you to
4  review it? Mr. Young, would you like us to make a copy
5  of it?
6    MR. YOUNG: No. I'm good. Just give me a
7  second.
8    MS. ENGLAND: Okay. All set?
9    MR. YOUNG: I would just state my objection
10 for the record that you are going back contrary to the
11 Notice of Deposition, continued deposition, that was
12 served on the School District wherein you indicated
13 that the deposition subjects for today would be
14 30(b)(6) Topics No. 4 and 6, and that Mr. Okazaki as a
15 percipient witness deposition would be taken today. I
16 would just object to the fact that you're going back
17 and asking more questions on Topic No. 5.
18 BY MS. ENGLAND:
19   Q  Mr. Okazaki, why don't you let us know when
20 you're finished texting during your deposition?
21   A  I'm not texting.
22   Q  Would you mind putting your phone away during
23 this deposition?
24   A  Okay.
25   Q  Thank you. If there's some emergency issues

Page 227

1  that you need to attend to, I would simply ask that you
2  put your phone on some sort of vibrate to alert you.
3  And if you get an alert of a phone call, or something
4  that you have to attend to, I'll be happy to take a
5  break.
6    A  Okay.
7    Q  So you have in front of you have Exhibits 66
8  and 67?
9    A  Yes.
10   Q  Are these the policies and regulations that
11 you just previously referred to?
12   A  That you referred to? Yes.
13   Q  And these are the ones that implemented and
14 when the School District finally added gender identity
15 and expression to the types of protected class status
16 for which discrimination is prohibited. Do you see
17 that?
18   A  I don't understand the question.
19   Q  Sure. Can you read these policies? Look at
20 Exhibit 66.
21   A  Okay.
22   Q  And can you tell when it was issued in the
23 sense of when it was last revised?
24   A  Yes, April 12th, 2012.
25   MR. YOUNG: I'm just going to make a standing

Page 228

1  objection to this whole line of questioning that it is
2  irrelevant and outside Topic No. 5.
3  BY MS. ENGLAND:
4    Q  And did you participate --
5    MR. YOUNG: And as such, I will consider this
6  to be questions concerning him as a percipient witness
7  and not Topic No. 5.
8  BY MS. ENGLAND:
9    Q  If you look at Exhibit 67, it, too, bears the
10 same revision date?
11   A  Correct.
12   Q  So that means it was issued on April 12th,
13 2012?
14   A  No. That means it was revised on April 12th,
15 2012.
16   MR. YOUNG: And also just for the record, I'm
17 going to indicate that Mr. Okazaki does have an
18 appointment this afternoon, which was previously
19 indicated to you. So you're wasting your own time if
20 you're asking questions that are outside of the topic.
21 And we're not going to agree to any additional time for
22 Mr. Okazaki if you continue to ask questions that are
23 outside the scope of the topics that are indicated.
24 BY MS. ENGLAND:
25   Q  So this means that's when this policy was

Page 229

1  issued --
2    MR. YOUNG: Asked and answered.
3  BY MS. ENGLAND:
4    Q  -- Exhibit 66, and the regulation, Exhibit 67?
5    A  No. That notation indicates when this policy
6  and regulation was revised.
7    Q  So issued in this form?
8    A  I'm going to disagree with the word "issued."
9  It was not issued. It was always in existence, and it
10 was revised on April 12th, 2012.
11   Q  And the forms that you have in front of you,
12 Exhibit 66 and 67, are the ones that are in effect as
13 of April 12th, 2012?
14   A  Correct.
15   Q  And did you participate in the revisions and
16 the language that ended up in the revised policies,
17 Exhibit 66, and the revised regulation, Exhibit 67?
18   MR. YOUNG: Standing objection to the extent
19 that this is allegedly a question pertaining to
20 Topic No. 5.
21   THE WITNESS: I do not recall.
22 BY MS. ENGLAND:
23   Q  And if you had participated in the revisions
24 of the policy, Exhibit 66, and the regulation, 67,
25 which came out six months after the new law went into

Page 230

1  effect, would you have -- would you have documentation
2  that you participated in?  Would there be e-mails to
3  you?  Would there be a charge to you asking you to take
4  a look at this, figure out what needs to be changed?
5  Would there be some memorialization of your
6  participation in the School District's adding the new
7  statuses under Nevada law that went into effect but not
8  doing so until April 12th, 2012?
9       MR. YOUNG:  Standing objection.  Also
10  argumentative.
11       THE WITNESS:  There would definitely be
12  documentation in regards to the revision of this policy
13  and regulation.  Whether there is documentation
14  evidencing my participation in it, I don't know.  It's
15  possible if I was involved, it's possible I kept
16  records or documentation relating to my participation.
17  It's possible that even if I was involved, I did not
18  maintain any of those.
19  BY MS. ENGLAND:
20    Q    So similarly, as you testified before, if
21  indeed you had been asked by e-mail to look at this,
22  you don't currently have e-mails from that era still on
23  your computer to look at, and that would have to be
24  looked at by an IT person?
25       MR. YOUNG:  Standing objection.

Page 231

1       THE WITNESS:  I do not have any e-mails dating
2  back to 2012 --
3  BY MS. ENGLAND:
4    Q    Those have been --
5    A    -- on the computer.
6    Q    On your computer?
7    A    On my computer.
8    Q    So you're unable to access e-mails from 2011
9  and 2012 on your computer at the present time --
10   A    Correct.
11       MR. YOUNG:  Standing objection.
12  BY MS. ENGLAND:
13   Q    -- five years later?
14   A    Correct.
15   Q    But if you were asked to do so, you would
16  defer to the expertise of the IT people who you
17  identified before; is that right?
18   A    Correct.
19   Q    So look at Exhibit 67.  Do you recall, when
20  the Clark County School District was preparing this new
21  district regulation R-4110, did they ask you for
22  information about your experiences in dealing with the
23  gender transition of Officer Roberts?
24       MR. YOUNG:  Standing objection.
25       THE WITNESS:  I do not recall.

Page 232

1  BY MS. ENGLAND:
2    Q    Under the "Sexual Harassment" portion of it,
3  which appears on page 332 of the regulation, which is
4  R-4110, Exhibit 67, under "Sexual Harassment," did they
5  ask you for your expertise and your experiences in
6  dealing with what were sexually-based comments about
7  genitals and other inappropriate comments which have
8  been made to Brad Roberts as a transgender male?
9       MR. YOUNG:  Standing objection.
10       THE WITNESS:  Not that I recall.
11  BY MS. ENGLAND:
12    Q    And did they ask you to provide any examples
13  that could be added to sexual harassment so that
14  transgender people would be protected and examples of
15  the type of conduct which should not be directed to
16  them -- the questions about their genitals, the
17  questions ridiculing them about their genitals?  Did
18  anybody ask you for your experience so that it could be
19  added here and Clark County School District employees
20  could be warned that those are inappropriate comments?
21       MR. YOUNG:  Standing objection.
22       THE WITNESS:  Not that I recall.
23  BY MS. ENGLAND:
24    Q    And in the legal department, who is primarily
25  responsible for assisting the people identified as

Page 233

1  review responsibility for this policy and regulation,
2  which is human resources and executive manager
3  diversity and affirmative action programs?  Who in the
4  legal department is the primary legal advisor to those
5  folks in the district --
6       MR. YOUNG:  Standing objection.
7  BY MS. ENGLAND:
8    Q    -- back -- sorry -- back in this time frame?
9    A    I don't think there was somebody who was
10  primarily responsible.
11   Q    We're done with those.  Thank you.
12       So now, in your previous deposition, I asked
13  you -- which was on Subject No. 5 -- I'd now like to
14  change to Subject No. 4.  Subject No. 4, I'll read it
15  into the record.  It is the revised Subject No. 4, is,
16  as set forth in Exhibit No. 1, is:
17       "CCSD's actions in response to the NERC's May
18  3, 2012, determination that CCSD's then-existing
19  restroom policy prohibiting Plaintiff's use of the
20  men's restrooms at CCSD was illegal and discriminatory
21  under Nevada law, and the timing and reasons for such
22  actions."
23       Have I read that correctly?
24   A    Yes.
25   Q    Now, in your previous deposition at the

Page 234

1  beginning of it, you provided us with a summary of the
2  information that you undertook in preparation to be the
3  30(b)(6) Designee on all three subjects. I'd now like
4  to turn simply to what you already testified to about
5  Subject No. 4, the preparation activities you
6  undertook. Okay?
7      A   Okay.
8      Q   You testified on page 19 of your June 10,
9  2016, deposition, that in the week before your
10  deposition was taken, that Scott Greenberg gave you a
11  summary of the District's response to the May 3rd NERC
12  determination finding probable cause that Clark County
13  School District had committed illegal discrimination.
14  Do you recall that testimony?
15     A   I do not specifically recall that testimony.
16     Q   Do you have any quarrel with it?
17     A   Could you repeat it?
18     Q   Sure. Back then when you -- sorry. Let me
19  start this again and see if I can ask a clearer
20  question.
21         MS. ENGLAND: Bruce, you don't have to answer
22  that. That was your opening.
23  BY MS. ENGLAND:
24     Q   On June 10th, you testified that part of your
25  preparation activities included reviewing a summary

Page 235

1  that Scott Greenberg gave you the week before, and that
2  summary was of the District's response to the May 3rd
3  NERC determination. Do you recall that testimony?
4      A   I do not.
5      Q   Do you, as you sit here today, recall that
6  somewhere in the week before your last deposition,
7  Greenberg gave you a summary of the District's response
8  to the May 3rd NERC determination?
9          MR. YOUNG: I'm just going to object to the
10  extent it mischaracterizes the testimony that we don't
11  have in front of us to know exactly what it is.
12         MS. ENGLAND: Okay. We can get it out.
13  BY MS. ENGLAND:
14     Q   Do you recall Greenberg giving you a summary
15  of what the District --
16     A   No -- well, verbally, I recall him -- I recall
17  reviewing the District's response to the NERC's
18  determination.
19     Q   When you say "I recall reviewing," are you
20  talking about like the -- sort of the request for
21  reconsideration, and the -- the pleadings that they --
22  the informal pleadings they filed in the Nevada Equal
23  Rights Commission as opposed to a separate stand-alone
24  summary that isn't anywhere?
25     A   Correct. I'm not aware of a separate summary.

Page 236

1  What I recall reviewing with Scott Greenberg is NERC's
2  determination, our response letter, their response to
3  our response letter, their notice of public hearing,
4  our motion to dismiss, and those documents.
5      Q   Okay. That's fine. That's all I wanted to
6  know, if there was some sort of separate summary.
7      A   Not that I'm aware of.
8      Q   Now we'll go to -- you may open that
9  Exhibit 28.
10     A   I don't have 28.
11         MR. YOUNG: I don't have 28 either.
12         MS. ENGLAND: That's because we're about to
13  introduce it. Sorry.
14         (Exhibit 28 marked)
15  BY MS. ENGLAND:
16     Q   While we're having the rest of these marked,
17  Mr. Okazaki, please feel free to go through the
18  exhibit.
19         I realize that Subject No. 3 -- excuse me --
20  Subject No. 4 has to do with the Clark County School
21  District actions and response to the May 3rd, 2012,
22  NERC determination that CCSD was committing illegal
23  discrimination. The documents I'm now introducing,
24  which will be number 28, 29, and 30 are all the
25  pleadings and notices from the Nevada Equal Rights

Page 237

1  Commission in that same administrative proceeding where
2  that determination was issued. I'm going to ask you to
3  review them, and then I'm going to ask you a few
4  questions.
5          (Exhibits 29 and 30 marked)
6  BY MS. ENGLAND:
7      Q   Mr. Okazaki, we have now handed you what the
8  court reporter has marked Exhibit 28, you've had an
9  opportunity to look at that. We've handed you
10  Exhibit 29, which you have in front of you. I'll ask
11  you to take a look at that. And we've also handed you
12  Exhibit 30, and we'll ask you to take a look at that.
13         And may I please ask that you take off --
14  we're going to have a number of documents out in front
15  of you. And I think it would be easier if -- may I ask
16  you to remove that notice, and give it back to Bruce?
17  Thanks.
18         Exhibit No. 31 is in your book. And that
19  comes next -- not 21, 31. You can take that out of the
20  book. And we do need a stapler.
21         We'll take a moment. We're going to ask the
22  court reporter to get us a stapler so these -- may I
23  ask that you keep it in the same order right now until
24  she staples it?
25         Madam Court Reporter, we'll take a short

Page 238

1  break.
2      (Recess taken from 10:06 to 10:08)
3  BY MS. ENGLAND:
4    Q   Mr. Okazaki, I believe you testified in the
5  previous session of your deposition on Subject No. 5
6  that as of --
7      MR. YOUNG:  Subject 5?  Are we going back to
8  5?
9      MS. ENGLAND:  No, I'm just harkening back to
10  testimony that he gave.
11  BY MS. ENGLAND:
12    Q   -- that your personal involvement with the
13  issues related to Brad Roberts' gender transition and
14  the actions of the School District, that your personal
15  involvement ended at the end of November after your
16  attendance at the meeting on November 22nd, 2011, and
17  your participation in the development of the
18  announcement which went out on November 30th.  Is that
19  a fair statement?
20    A   I don't recall that exact testimony.  But
21  that's --
22    Q   Is it correct?
23    A   Yes, I believe that is correct.
24    Q   I'll ask you this during your percipient
25  deposition, but you participated in the development of

Page 239

1  the language and the approval of the language which
2  ultimately ended up in the November 30th, 2011,
3  announcement memo?
4    A   Yes.
5    Q   And after that, did you, as in-house legal
6  counsel, participate in any other issues related to
7  Brad Roberts' gender transition, records changes, NERC,
8  or EEOC proceedings?
9    A   I believe I provided a response to
10  Mr. Rodriguez regarding Officer Roberts' NERC
11  Complaint.
12    Q   That was in connection with your memorializing
13  and writing a memo about the activities that you had
14  engaged in in October and November of 2011?  Is that a
15  fair statement?
16    A   Correct.
17    Q   But what I want to know is:  As legal counsel,
18  after November 30th, 2011, your involvement in issues
19  related to Brad Roberts, other than memorializing what
20  you had done before, ended?
21    A   As far as I can recall, yes.
22    Q   So when did you first -- but here today, you
23  are being offered up as Clark County School District's
24  Designee on the Subject No. 4 which has to do with the
25  School District's response to a probable cause finding

Page 240

1  of discrimination.  So you've educated yourself on what
2  the School District's response was so that you are
3  prepared to testify here today?
4    A   Yes.
5    Q   And that included looking at the School
6  District's responses and the paperwork that they filed
7  in the NERC?  Is that a fair statement?
8    A   Yes.
9    Q   That was the summary that you were referring
10  to that Mr. Greenberg offered up to you?
11    A   Yes.  If I used the word "summary," it was
12  probably in regard to Scott Greenberg's verbal summary
13  of the chronology of our response to the NERC's
14  determination.
15    Q   So what was Scott Greenberg's verbal summary
16  of the chronology of the response?  What did he tell
17  you?
18    A   After we received the determination of
19  probable cause, we responded -- they responded by
20  saying thank you, but we respectfully disagree; and
21  we're going to move the case forward; and then we
22  agreed to participate in conciliation; and that took
23  place, but it was unsuccessful; and then after that,
24  the NERC indicated that they were going to hold a
25  public hearing to determine if this matter should be

Page 241

1  set for a public hearing; we filed a motion to dismiss
2  in response to that, that action; then there was
3  correspondence with the Attorney General's Office in
4  regard to our concerns about the procedures; and that
5  thereafter, the District decided to change its position
6  with regard to Officer Roberts' use of restrooms at
7  District facilities; officer Roberts was advised of
8  that change in position; and then there was
9  correspondence with the Attorney General in NERC; and
10  the matter was closed.
11      MR. YOUNG:  We're done.  That's 4 and 6 in a
12  nutshell.
13      MS. ENGLAND:  Nice try, Bruce.
14      MR. YOUNG:  Thanks, Kathy.
15  BY MS. ENGLAND:
16    Q   So let's go back to Exhibit No. 28.  In
17  connection with your being prepared here today, in
18  addition to the verbal summary that Scott Greenberg
19  gave you, did you review these documents, which is the
20  January 19, 2012, notice from the Nevada Equal Rights
21  Commission to Tom Rodriguez, the affirmative action
22  officer of the Clark County School District?
23    A   Yes.
24    Q   Who provided you these, the documents that you
25  reviewed, which are contained within Exhibit 28?

Page 242

1   A   I believe legal counsel.
2   Q   When you say "legal counsel," are you talking
3   about Mr. Greenberg?
4   A   No, Mr. Young.
5   Q   Okay.  These were documents, as you've said, I
6   think you testified that all of the documents that you
7   looked at in preparation for your 30(b)(6) depositions
8   all had Bates stamps on them?
9   A   As I recall, yes.
10  Q   But you did testify that you looked at some
11  other policies and regulations that were actually on
12  the School District website that you would not
13  necessarily produce with Bates numbers on them?
14  A   Correct.
15  Q   So when was the first time you saw the Charge
16  of Discrimination, which is contained in Exhibit 28,
17  which is signed by Officer Roberts on January 11th,
18  2012?
19      MR. YOUNG:  Standing objection.
20      THE WITNESS:  I would assume shortly before my
21  response to Mr. Rodriguez, which I believe is dated
22  February 3rd.  So I believe it would be between our
23  receipt of this on or about January 19th, and, you
24  know, between then and February 3rd.
25  /////

Page 243

1   BY MS. ENGLAND:
2   Q   So Mr. Rodriguez received the notice and the
3   Charge of Discrimination, and at some point in time
4   thereafter -- or, do you know when he got it?
5       MR. YOUNG:  Standing objection.  Also calls
6   for speculation.
7       THE WITNESS:  No, other than the date that
8   it's dated, no, I do not have specific details or
9   recollection of exactly when he received it.
10  BY MS. ENGLAND:
11  Q   But some time between then and the date that
12  you wrote your memo which you provided to him, he sent
13  you a copy of the charge of discrimination?
14  A   Either he sent it to me, or I got it through
15  the Clark County School District Police Department.
16  Q   And when you got the Charge of Discrimination,
17  did you get any of the other paperwork that's contained
18  in Exhibit 28?
19      MR. YOUNG:  Standing objection.
20      THE WITNESS:  I can't recall exactly which
21  documents were enclosed.
22  BY MS. ENGLAND:
23  Q   Okay.  Well, then let's go through it.
24  A   Okay.
25  Q   The January 19th Notice of Charge of

Page 244

1   Discrimination, did you get that?
2       MR. YOUNG:  Standing objection.
3       THE WITNESS:  During that time period back
4   when we are talking about?
5   BY MS. ENGLAND:
6   Q   Back then.
7   A   I have no specific recollection of what
8   documents I received at that time.
9   Q   Okay.  Now looking at it, could you please
10  look at the first page?  It's CCSD001082.  Is that the
11  Bates stamp number --
12  A   Yes.
13  Q   -- on the first page of Exhibit 28?  Now
14  having looked at this, is your memory refreshed as to
15  whether or not you actually got a copy of this page,
16  which is the notice?
17  A   No.
18  Q   Okay.  And then the second page of Exhibit 28,
19  which is Election of Response Form to the Clark County
20  School District, it's a two-page document in
21  Exhibit 28.  Do you see that?
22  A   I do.
23  Q   Do you recall getting that --
24      MR. YOUNG:  Standing objection.
25  \\\

Page 245

1   BY MS. ENGLAND:
2   Q   -- back then?
3   A   I do not have a specific recollection of what
4   I received back then.
5   Q   Does this, looking at this document, refresh
6   your memory in any way as to whether or not you got
7   this Election of Response Form back then in the late
8   January 2012, early February 2012, time frame?
9       MR. YOUNG:  Standing objection.
10      THE WITNESS:  No.
11  BY MS. ENGLAND:
12  Q   Did you participate in the Clark County School
13  District's decision to refuse to participate in the
14  informal settlement conference which is the first event
15  that the Nevada Equal Rights Commission holds?
16      MR. YOUNG:  Standing objection.
17      THE WITNESS:  Not that I recall.
18  BY MS. ENGLAND:
19  Q   So now turn to the fourth page, I think, of
20  Exhibit 28.  This is the Charge of Discrimination.
21  It's two pages long.  Do you recall -- you've already
22  said you got that some time before providing your
23  response on February 3rd to Mr. Rodriguez?  Is that a
24  fair statement?
25  A   Yes.

Page 246

1    Q   And attached to the Charge of Discrimination
2  is a Remedy Request and Settlement Demand.  Do you see
3  that?
4    A   I do.
5    Q   Did you get a copy of that?
6      MR. YOUNG:  Standing objection.
7      THE WITNESS:  I do not recall.
8  BY MS. ENGLAND:
9    Q   In this, Officer Roberts indicates that one of
10 the remedies he is seeking, amongst others, is, "Full
11 acknowledgment of my gender change and use of all male
12 facilities without discriminatory and restrictive
13 guidelines."  Do you see that?
14   A   I do.
15   Q   Do you recall being made aware back in that
16 time frame of Officer Roberts asking in January of 2012
17 that the School District fully accept his gender
18 transition to male?
19     MR. YOUNG:  Standing objection.
20     THE WITNESS:  The district was always aware
21 from the very first time that have Officer Roberts
22 notified us of his gender identity, change in gender
23 identity, that he desired full acknowledgment of his
24 gender identity change.
25 /////

Page 247

1  BY MS. ENGLAND:
2    Q   So who, as the 30(b)(6) Designee on
3  Subject No. 4, who at the School District was in charge
4  of reviewing Officer Roberts' remedy request where he's
5  asking for full acknowledgment of his gender and his
6  ability to use male facilities, but decided in January
7  of 2012 that he was still to be denied that?
8      MR. YOUNG:  Standing objection.
9      THE WITNESS:  The individual responsible for
10 receiving these documents and responding would be Tom
11 Rodriguez.
12 BY MS. ENGLAND:
13   Q   Who made the decision?
14   A   The decision would be a District decision.
15   Q   Who made the decision about what the
16 District's response was going to be to this remedy
17 request, dated January 11th, 2012, provided to the
18 School District by a letter on January 19th, 2012?
19     MR. YOUNG:  Standing objection.  It's outside
20 the scope, Kathy.  You're talking -- Topics 4 says
21 actions in response to the May 3rd, 2012,
22 determination, not anything in response to a remedy
23 request in his charge of discrimination.  So it's
24 totally outside the topic.  And I will make my standing
25 objection.  You can answer if you know anything.

Page 248

1      THE WITNESS:  The answer would be that the
2  decision was a joint decision of all the parties
3  involved which would include --
4  BY MS. ENGLAND:
5    Q   Well, it didn't include Brad Roberts, did it?
6    A   If I can finish --
7      MR. YOUNG:  Objection.  Argumentative.
8      THE WITNESS:  All the CCSD parties involved,
9  which was --
10 BY MS. ENGLAND:
11   Q   Who?
12   A   -- Tom Rodriguez, the legal office, the
13 superintendent --
14   Q   Who at legal office, if not you?
15     MR. YOUNG:  The witness is trying to answer,
16 Kathy.  Can you please just restrain yourself from
17 having to interrupt before he's done answering?
18 BY MS. ENGLAND:
19   Q   Mr. Okazaki, you know that I'm asking you --
20     MR. YOUNG:  Why don't you go ahead and answer,
21 to the extent you can remember, what you were trying to
22 answer the question about, and hopefully Ms. England
23 will be able to restrain herself and not speak over
24 you?
25 /////

Page 249

1  BY MS. ENGLAND:
2    Q   Mr. Okazaki, I'm not asking you for offices.
3  I'm not asking you for departments.  I'm asking you
4  who.  And "who" means name the individuals.  You are
5  here today as the School District's 30(b)(6) Designee
6  on the subject of --
7      MR. YOUNG:  Not the subject that you're asking
8  questions about, Kathy.  That's the problem.  So why
9  don't you ask some questions that are actually about
10 the subject that you identified and that you wrote,
11 because you're asking questions that have nothing to do
12 with that.
13 BY MS. ENGLAND:
14   Q   Mr. Okazaki, the question was who, not which
15 department, not which office, not which agency.  It is
16 who at the School District made the decision what the
17 District's response in the administrative procedure was
18 going to be to Brad Roberts' remedy request asking for
19 full acknowledgment of his gender change and use of all
20 male facilities without discriminatory and restrictive
21 guidelines?  You've identified one human being so far,
22 Mr. Tom Rodriguez.  Who else, if anyone, participated
23 in the School District's decision in response to that
24 remedy request in these administrative proceedings?
25     MR. YOUNG:  Standing objection.

Page 250

1  THE WITNESS: Scott Greenberg and Dwight
2  Jones.
3  BY MS. ENGLAND:
4  Q  And in preparation for your being the School
5  District's 30(b)(6) Designee on these subjects, did you
6  speak with Superintendent Dwight Jones about his
7  participation in any of these three subjects?
8  MR. YOUNG: Standing objection.
9  THE WITNESS: No.
10  BY MS. ENGLAND:
11  Q  And did you review any documentation which
12  showed that, during this time frame, Superintendent
13  Jones did anything other than tell legal counsel that
14  he supported their position --
15  MR. YOUNG: Standing objection.
16  BY MS. ENGLAND:
17  Q  -- that Officer Roberts was to be told he was
18  not allowed to use the men's restroom until he had a
19  surgical change to his genitals?
20  MR. YOUNG: Standing objection.
21  THE WITNESS: No.
22  BY MS. ENGLAND:
23  Q  Did Mr. Greenberg provide you with any
24  additional facts that indicated that in any way, shape,
25  or form Superintendent Jones was involved in this

Page 251

1  decision?
2  MR. YOUNG: Standing objection.
3  THE WITNESS: No.
4  BY MS. ENGLAND:
5  Q  Did anyone provide you with any information
6  that showed that Superintendent Dwight Jones was in any
7  way, shape, or form involved in the actual decision as
8  opposed to approving it after it had already been
9  communicated to Officer Roberts?
10  MR. YOUNG: Standing objection. It's also
11  vague as to what decision you're talking about.
12  THE WITNESS: My answer -- my reference to
13  Superintendent Dwight Jones was in response to your
14  question about who made the decision of the District's
15  response to Brad Roberts' NERC complaint and his
16  recommended -- or his requested remedy. And my answer
17  was Tom Rodriguez, Scott Greenberg, and Dwight Jones.
18  BY MS. ENGLAND:
19  Q  So now I'm asking you: What evidence of any
20  kind did you find that Superintendent Dwight Jones was
21  in any way involved in this decision?
22  A  The e-mail in which he was advised of the
23  position that was being -- that was given to -- the
24  District's position and his agreement with it.
25  Q  Did you find any other evidence of

Page 252

1  Superintendent Jones' involvement besides his e-mail
2  indicating his approval of the position that had
3  already been taken?
4  MR. YOUNG: Standing objection.
5  THE WITNESS: No.
6  BY MS. ENGLAND:
7  Q  We're done with number 28. You can go on to
8  29.
9  Did you have a moment review Exhibit 29? It's
10  a two-page document dated January 26th, 2012, which is
11  addressed by the Nevada Equal Rights Commission to Tom
12  Rodriguez, Affirmative Action Manager of the Clark
13  County School District?
14  A  I did.
15  Q  This confirms that the commission has received
16  an indication from the School District that the School
17  District is declining and waiving its participation in
18  the informal settlement conference which had already
19  been set up by the Nevada Equal Rights Commission.
20  MR. YOUNG: Standing objection.
21  BY MS. ENGLAND:
22  Q  Do you see that?
23  A  I do.
24  Q  Do you know on how many other occasions the
25  School District has declined to participate in the

Page 253

1  informal settlement conference, the first event --
2  MR. YOUNG: Standing objection.
3  BY MS. ENGLAND:
4  Q  -- which is scheduled by the Nevada Equal
5  Rights Commission in a discrimination case?
6  MR. YOUNG: Standing objection.
7  THE WITNESS: No, I do not have exact numbers
8  on how many times that that's happened.
9  BY MS. ENGLAND:
10  Q  Is it a frequent occurrence?
11  A  I don't have any information.
12  Q  Do you go to the Nevada Equal Rights
13  Commission ISMs? Or is someone else in the legal
14  department primarily responsible for those, or not at
15  all? Is it --
16  A  I'm not aware of the attorneys being primarily
17  responsible for attending those.
18  Q  Fair enough. So whose decision was it to not
19  participate?
20  MR. YOUNG: Standing objection.
21  THE WITNESS: It would be Tom Rodriguez. And,
22  again, I'm not -- I didn't prepare for this particular
23  question.
24  BY MS. ENGLAND:
25  Q  Okay.

Page 254

1   A   But I'm assuming -- it's definitely Tom
2   Rodriguez in all likelihood with the -- in consultation
3   with the legal office, Scott Greenberg.
4   Q   And do you recall if it was actually
5   Mr. Rodriguez who made that decision, or if it was
6   Scott Greenberg who told Mr. Rodriguez that that's what
7   we're going to do?
8       MR. YOUNG:  Standing objection.
9       THE WITNESS:  I don't have that specific
10  information.  I know that Mr. Rodriguez typically
11  handles these complaints received and the processes.
12  So I would assume that he would be the one who was
13  primarily responsible for that decision.
14  BY MS. ENGLAND:
15  Q   When you say "he," who are you talking about?
16  A   Tom Rodriguez.
17  Q   Thank you.
18      And now would you go on to Exhibit No. 30?
19  During that small break that we had, did you have a
20  chance to take a look at this?
21  A   I did.
22  Q   Exhibit No. 30 has your February 3rd, 2012,
23  memorandum of which you spoke a few minutes ago; is
24  that correct?
25  A   Correct.

Page 255

1   Q   Is there a signed version of your memorandum?
2   A   I do not know that there is.
3   Q   Is that your normal practice, to sign
4   memorandum, or do they just go out like this with no
5   signature?
6   A   I would think that my normal course would be
7   to initial my name there.  I'm not -- I can't tell you
8   that it's never gone out without it.  This could have
9   been even e-mailed to him.  So I'm not sure.
10  Q   If it's e-mailed to him, it would not have
11  been a scan with your initials on it?  It would have
12  been just the --
13  A   I'm sure it's happened both ways.
14  Q   When did you prepare this February 3rd,
15  2012 --
16  A   I'm sure either --
17      MR. YOUNG:  Standing objection.  You can
18  answer.
19      THE WITNESS:  -- on or before, shortly before
20  February 3rd.
21  BY MS. ENGLAND:
22  Q   This was as a result of your having been
23  provided with a copy of the Charge of Discrimination
24  which was that -- Officer Roberts' Charge of
25  Discrimination, which is contained in Exhibit 28?

Page 256

1       MR. YOUNG:  Standing objection.
2       THE WITNESS:  Correct.
3   BY MS. ENGLAND:
4   Q   This says that you assisted the executive
5   staff of the police department in addressing Officer
6   Roberts' request to use the male restroom.  Officer
7   Roberts' request was far broader than that, was it not?
8       MR. YOUNG:  Standing objection.
9       THE WITNESS:  Yes.
10  BY MS. ENGLAND:
11  Q   And in your e-mail -- excuse me -- in your
12  February 3rd, 2012, memo, you did not document the
13  dates upon which you took each of these actions, did
14  you?
15      MR. YOUNG:  Standing objection.
16      THE WITNESS:  No, there's no dates in this
17  memo.
18  BY MS. ENGLAND:
19  Q   And why is that, Mr. Okazaki?
20      MR. YOUNG:  Standing objection.
21      THE WITNESS:  Probably because I didn't
22  consider it to be relevant.
23  BY MS. ENGLAND:
24  Q   It says in your first paragraph that, as far
25  as you knew at the time you were writing this memo,

Page 257

1   "Everything that was done or said by Chief Ketsaa,
2   Captain York, and/or Lieutenant Young in regard to this
3   issue was reviewed and approved by legal."  Do you see
4   that?
5   A   I do.
6   Q   When you said "by legal," were you referring
7   to yourself, or to Mr. Greenberg, or to both of you?
8       MR. YOUNG:  Standing objection.
9       THE WITNESS:  Myself.
10  BY MS. ENGLAND:
11  Q   So why didn't you say that instead of just
12  saying "by legal"?
13      MR. YOUNG:  Standing objection.
14      THE WITNESS:  Because my action is -- the
15  action of the Office of General Counsel is the action
16  of legal.
17  BY MS. ENGLAND:
18  Q   Did you write this memorandum in the
19  administrative proceedings, or for the administrative
20  proceedings for the express purpose of allowing it to
21  be submitted to the Nevada Equal Rights Commission as
22  part of the documentation of what the School District
23  did in the activities which are the subject matter of
24  the charge?
25      MR. YOUNG:  Standing objection.

Page 258

1    THE WITNESS: No. This was written to provide
2    Tom Rodriguez with the District's actions and position
3    relative, or relative to the complaint filed by Officer
4    Roberts.
5    BY MS. ENGLAND:
6    Q   Well, did you do it with the express purpose
7    that Mr. Rodriguez was then permitted, as part of the
8    School District's filings, to provide it to the Nevada
9    Equal Rights Commission?
10    MR. YOUNG: Standing objection.
11    THE WITNESS: No, I don't know -- I don't
12    recall that that was the express intent or that there
13    was an express understanding that he was going to do
14    that.
15    BY MS. ENGLAND:
16    Q   Did you know he was going to use it as
17    Exhibit A?
18    A   I don't recall whether he was -- or -- I knew
19    that he was or not.
20    Q   And in your memo to Tom Rodriguez, you
21    indicated, "In that regard" -- you see the paragraph
22    that says, "In that regard"?
23    A   Yes.
24    Q   "Officer Roberts was told that due to the fact
25    that he was still biologically female, he would not be

Page 259

1    allowed to use the male restroom."
2    And that's consistent with all the testimony
3    you gave already about the meetings on November 22nd
4    and the advice that you gave School District Police
5    Department officials who then conveyed it to Officer
6    Roberts; is that right?
7    MR. YOUNG: Standing objection.
8    THE WITNESS: Yes.
9    BY MS. ENGLAND:
10    Q   And then it says, "Further because his
11    appearance was of the male gender, we would not require
12    him to use the female restroom." Do you see that?
13    A   I do.
14    Q   Do you recall having a discussion with Officer
15    Roberts about that issue?
16    MR. YOUNG: Standing objection.
17    THE WITNESS: Yes.
18    BY MS. ENGLAND:
19    Q   And wasn't it Brad Roberts who said, "Because
20    I look male and because I identify with the male
21    gender, I am not willing to use the female restroom, or
22    it would be inappropriate for me," that it was Officer
23    Roberts who initiated that?
24    MR. YOUNG: Standing objection.
25    THE WITNESS: I don't recall who initiated

Page 260

1    that.
2    BY MS. ENGLAND:
3    Q   And then you go on to say, "Instead, we
4    promised to always make available to him, and therefore
5    require him to use a gender-neutral or single-occupant
6    restroom until such time that he became biologically
7    male." Do you see that?
8    A   I do.
9    Q   Officer Roberts was not under this prohibition
10    permitted to use a single-occupant male restroom, was
11    he?
12    MR. YOUNG: Standing objection.
13    THE WITNESS: No, he was allowed to use
14    single-occupant restrooms.
15    BY MS. ENGLAND:
16    Q   Was he allowed to use a single-occupant male
17    restroom?
18    MR. YOUNG: Standing objection.
19    THE WITNESS: Yes, our -- my understanding is
20    he was allowed to use single-occupant restrooms.
21    BY MS. ENGLAND:
22    Q   Was he allowed to use a single-occupant
23    restroom that was marked with the male sign?
24    MR. YOUNG: Standing objection.
25    /////

Page 261

1    BY MS. ENGLAND:
2    Q   He wasn't, was he?
3    A   No -- yes, my -- that direction, or my
4    understanding of the District's position communicated
5    to him was that he was allowed to use single-occupant
6    restrooms.
7    Q   If that single-occupant restroom was marked
8    with the male sign, he was not permitted to use it
9    under this ban, was he?
10    MR. YOUNG: Standing objection.
11    THE WITNESS: That's not my understanding.
12    BY MS. ENGLAND:
13    Q   So you're saying that during this period of
14    time, your understanding was that Brad Roberts was
15    permitted to use single-use male restrooms at the
16    School District?
17    MR. YOUNG: Standing objection.
18    THE WITNESS: Yes.
19    BY MS. ENGLAND:
20    Q   Would it surprise you, Mr. Okazaki, that you
21    are the only person who thinks that Brad Roberts was
22    permitted to use single-occupant male restrooms at
23    Clark County School District facilities between October
24    2011 and 2012?
25    A   Yes.

Page 262

1    Q   And, in fact, do you recall that Officer
2  Roberts pointed out on November 22nd, 2011, in that
3  meeting where, in fact, he heard you tell him he can't
4  use single-occupant male restrooms, that he said that
5  the restrooms at that building where you were, both
6  single-occupant ones were -- had gender-specific, and
7  he was not permitted to use those?
8        MR. YOUNG: Standing objection.
9  BY MS. ENGLAND:
10   Q   Do you remember that?
11   A   I do not.
12   Q   And, in fact, at police headquarters where you
13  had the meeting with him on November 22nd, 2011, did
14  you go out and look at the two single-use restrooms
15  that would be available for him?
16   A   I did not go out and look at any restrooms.
17   Q   You say you promised to make it available to
18  him. Do you understand that police headquarters where
19  you had this meeting, where you claim now that you
20  promised to make it available to him, and where you now
21  claim that he was permitted to use single-occupant male
22  restrooms, that there was no restroom in that police
23  headquarters that he was permitted to use --
24       MR. YOUNG: Standing objection.
25  /////

Page 263

1  BY MS. ENGLAND:
2    Q   -- and that everyone who occupied that
3  building has conceded to that fact?
4    A   No.
5        MR. YOUNG: Standing objection.
6  BY MS. ENGLAND:
7    Q   So your direction apparently, now as you're
8  stating it, was not clear enough, and that Brad Roberts
9  was indeed during this year allowed to use single-use
10  male restrooms even though he had not had a sex change
11  operation?
12       MR. YOUNG: Standing objection.
13       THE WITNESS: Yes.
14  BY MS. ENGLAND:
15   Q   But you never committed these directions in
16  writing to Officer Roberts, did you, that, "Brad, it's
17  okay for you to use single-use male restrooms at Clark
18  County School District facilities"?
19       MR. YOUNG: Standing objection.
20       THE WITNESS: No, I didn't -- I didn't -- I
21  don't believe we provided Officer Roberts with
22  anything, any of this in writing in response to -- I
23  remember, you know, Captain York indicating that he'll
24  provide something in writing to Officer Roberts'
25  requests. And then we had the meeting, and we did not

Page 264

1  provide him anything in writing.
2  BY MS. ENGLAND:
3    Q   Okay. And then if you look at page -- you're
4  on Exhibit 30. Did you assist Mr. Rodriguez in
5  providing us, which also has as an exhibit your memo
6  which we were just discussing?
7    A   No, I did not assist Tom Rodriguez in
8  preparing this Exhibit 30.
9    Q   And do you see on page 2 of the School
10  District's response to the Nevada Equal Rights
11  Commission Item No. 6?
12   A   I see an Item No. 6.
13   Q   And it says:
14       "On November 22, 2011, a meeting was attended
15  by Officer Roberts; Ms. Jane Heenan of Equality of
16  Southern Nevada; Sergeant Phil Gervasi, President of
17  the Clark County School District Police Department
18  Union; Mr. Jon Okazaki, Senior Assistant General
19  Counsel; Captain Anthony York; and Lieutenant Kenneth
20  Young to discuss Officer Roberts' transition from
21  female to male. At that meeting, the School District
22  acknowledged Officer Roberts' female to male
23  transgender, acknowledged that Officer Roberts
24  identified with the male gender, acknowledged that he
25  wanted to be called Brad Roberts, and acknowledged that

Page 265

1  Officer Roberts wanted masculine pronouns to be used
2  when referring to him. The School District, however,
3  rejected Officer Roberts' request to use the male
4  restroom. Specifically, Mr. Okazaki advised Officer
5  Roberts that he could not use the male restroom until
6  he had a genital, open paren, sex change surgical
7  procedure. Officer Roberts was advised to use
8  gender-neutral or unisex restrooms."
9        Mr. Okazaki, is it your testimony here today
10  that that statement to the Nevada Equal Rights
11  Commission is inaccurate, and that indeed what you're
12  saying today is that Officer Roberts was indeed allowed
13  to use single-occupant male restrooms?
14       MR. YOUNG: Standing objection.
15       THE WITNESS: Yes, I would say it's
16  incomplete.
17  BY MS. ENGLAND:
18   Q   Okay. We're done with that.
19       I would ask you to go to Exhibit No. 31.
20   A   Okay.
21   Q   Let's go back to Exhibit 30.
22       If this representation to the Nevada Equal
23  Rights Commission is incorrect, and if, as you say,
24  contrary to every other witness who has been deposed,
25  that Brad Roberts was permitted to use male

Page 266

1  single-occupant restrooms during this prohibition
2  period, why is it that you didn't clarify this in all
3  of these submissions to the Nevada Equal Rights
4  Commission?
5        MR. YOUNG:  Standing objection.
6        THE WITNESS:  First of all, I didn't say that
7  this was incorrect.  I said it was arguably incomplete.
8        The District's position on this was that Brad
9  Roberts was not going to be allowed to use the male
10  restroom.  And as an alternative, he had to use either
11  gender-neutral or single-occupancy restrooms.  I do not
12  recall at the meeting on November 22nd there being a
13  question about the only bathroom in the police station
14  single occupancy had gender identifications, and can I
15  use -- can I use male-identified single-occupancy
16  restroom?  The position of the District was that
17  Officer Roberts was not going to be allowed to use a
18  community male restroom until his biology matched that
19  gender.  And he was told that he needed to use
20  single-occupancy, gender-neutral type facilities to
21  avoid that situation.
22  BY MS. ENGLAND:
23     Q   So these things --
24     A   That's what I represented to -- that's my
25  recollection of what was told to Officer Roberts during

Page 267

1  that meeting.  That was my understanding of everybody's
2  understanding, including Officer Roberts.  And then
3  that's what I summarized in my memorandum to Tom
4  Rodriguez.  And I believe that is the -- that was the
5  District's position.
6     Q   Okay.  So go back to Exhibit 30.  Go to your
7  memo, which is the last part of this, and show us, or
8  please read the language where you claim now, in
9  contradiction to everyone else in this case, that
10  Officer Roberts was told that he was permitted to use
11  male single-occupant restrooms.
12        MR. YOUNG:  Standing objection.
13        THE WITNESS:  It says, "We promised to always
14  make available to him, and therefore require him to
15  use, a gender-neutral or single-occupant restroom until
16  such time that he became biologically male."
17        I think the confusion here is that it's not
18  articulated about what if the single-occupancy restroom
19  is designated male?
20  BY MS. ENGLAND:
21     Q   So let's answer that question.  Who created
22  that confusion?
23        MR. YOUNG:  Standing objection.
24        THE WITNESS:  I don't think anybody created
25  it.  I think it's -- if there's an issue now as to

Page 268

1  what -- you know, as to what was intended, or what was
2  received, or what was followed, you know -- but I don't
3  recall there being any confusion at the time that this
4  was being discussed with Officer Roberts.
5  BY MS. ENGLAND:
6     Q   And the person who was discussing it was you?
7     A   In that meeting on November 22nd, yes.
8     Q   And are you certain, as you sit here today,
9  that -- well, strike that.
10        You were the one who was articulating the
11  District's position to Officer Roberts?
12     A   Yes.
13     Q   And so if there was any confusion that was
14  created, it was created by you, was it not?
15        MR. YOUNG:  Objection.  Argumentative.  Also,
16  standing objection.
17        THE WITNESS:  No.
18  BY MS. ENGLAND:
19     Q   And you did not put the specifics of the ban
20  in writing to Officer Roberts, did you?
21     A   No.
22     Q   And now as you're sitting here today, you're
23  saying that Officer Roberts was indeed permitted, and
24  that you told him that he was permitted to use
25  single-use male restrooms?

Page 269

1     A   No, I -- my testimony was I don't recall it
2  being -- the detail of single-occupancy restrooms with
3  a designation of male.  I don't remember that being --
4  that coming up.
5     Q   So you didn't make that clear to Officer
6  Roberts when you told him what the District's position
7  was, did you?
8     A   Correct, because it didn't come up.
9     Q   And as you sit here today, in your mind, you
10  believe that the District's position at that time,
11  which you did not make clear, was that Officer Roberts
12  was permitted at Clark County School District
13  facilities to use a single-occupant restroom that was
14  not gender neutral, that was, in fact, marked "male"?
15  That's your testimony here today?
16     A   Yes.  My understanding of the District's
17  position was that Officer Roberts was allowed to use
18  single-occupancy restrooms.
19     Q   That were -- you keep lopping off the part of
20  the question that I'm asking.  And this is incredibly
21  important, Mr. Okazaki.  So I would appreciate it if
22  you would actually answer the question.
23        Was -- is it your testimony here today that
24  the District's position on November 22nd, 2011, was
25  that Officer Brad Roberts was permitted to use

Page 270

1  single-occupant male restrooms at Clark County School
2  District facilities?
3      MR. YOUNG: Standing objection. Also,
4  argumentative. You can answer.
5      THE WITNESS: Yes.
6  BY MS. ENGLAND:
7   Q   And was it the District's position at the time
8  that Officer Roberts was permitted to use single-use
9  male-specific restrooms even though he had not yet
10 provided medical documentation that he had -- that his
11 genitals had been changed to male?
12     MR. YOUNG: Standing objection.
13     THE WITNESS: Yes.
14 BY MS. ENGLAND:
15  Q   And your testimony here today is that the
16 issue of Brad Roberts being allowed now, as you say, to
17 use single-use male restroom facilities at Clark County
18 School District did not come up during the November
19 22nd, 2011, meeting?
20     MR. YOUNG: Standing objection.
21     THE WITNESS: Correct, not that I recall.
22 BY MS. ENGLAND:
23  Q   Okay. So now we go back to Exhibit 30.
24     Looking at your exhibit -- I'm sorry -- your
25 memo, it says, we were on the line which says,

Page 271

1  "Instead, we promised to always make available to him,
2  and therefore require him to use, a gender-neutral or
3  single-occupant restroom until such time that he became
4  biologically male."
5      Mr. Okazaki, please -- did you undertake or
6  ask anyone in the police department which buildings
7  Officer Roberts routinely went to and whether or not
8  there were facilities he could use?
9      MR. YOUNG: Standing objection.
10     THE WITNESS: Not that I recall.
11 BY MS. ENGLAND:
12  Q   And after the ban was in place which
13 prohibited Officer Roberts from using, as you're now
14 saying, community male restrooms, did you undertake to
15 ascertain in any way whether Officer Roberts was
16 inconvenienced or whether his -- it would have made it
17 more difficult for him to do his job because there were
18 no restroom facilities at the School District's
19 buildings that he was routinely visiting?
20     MR. YOUNG: Standing objection. And object to
21 the extent the question mischaracterizes facts in
22 evidence.
23     THE WITNESS: Could you repeat the beginning
24 of your question? I don't know what the question was
25 to me. Was it -- did -- could you repeat the question?

Page 272

1  BY MS. ENGLAND:
2   Q   Sure.
3      After the ban went in place, did you undertake
4  any survey or undertake to find out any facts about
5  whether or not it was difficult for Officer Roberts to
6  complete his work because this ban was in place which
7  prohibited him from using male restroom facilities at
8  the buildings he routinely visited?
9      MR. YOUNG: Standing objection.
10     THE WITNESS: No.
11 BY MS. ENGLAND:
12  Q   Did you, in that meeting on November 22nd,
13 2011, ask Brad Roberts if this ban about using restroom
14 facilities was going to make it more difficult for him
15 to do his job?
16  A   No.
17     MR. YOUNG: Standing objection.
18 BY MS. ENGLAND:
19  Q   And other than the case law that you were
20 referring to, you did not provide Officer Roberts with
21 any other justification for the ban; isn't that
22 correct?
23     MR. YOUNG: Standing objection.
24     THE WITNESS: I don't know what the rationale
25 behind the position was discussed. The idea that, you

Page 273

1  know, that we're trying to consider everybody's rights,
2  and so when we're talking about going into a
3  community -- see, my understanding has always been
4  that -- and I think this is completely accurate -- that
5  Officer Roberts wanted to use just your general male
6  restroom that are used communally by any male who
7  happens to be by. He wants to use that one. I don't
8  know if the discussion -- if the rationale of trying to
9  respect everybody's rights in that bathroom was
10 discussed with him. I seem to recall there's a
11 possibility that we kind of talked -- that was kind of
12 mentioned -- as when they said, why would you do this,
13 and why would you take this position? The legal one
14 was, you know, because the response was, "Well, you
15 know, NERC has come out with their opinion." And I
16 said, "I'm fully aware of NERC's position on this
17 matter. However, we disagree, and we believe that it's
18 not unlawful discrimination to require this." And then
19 I said -- you know, I probably mentioned that there is
20 case law or legal authority which supports that
21 position.
22 BY MS. ENGLAND:
23  Q   And that case law was the Title IX case where
24 the School District had gotten summary judgment against
25 a transgender student who never enrolled at Green

Page 274

1  Valley High School?
2      MR. YOUNG: Asked and answered, I don't know
3  how many times.
4      THE WITNESS: That was one of them, yeah.
5  BY MS. ENGLAND:
6      Q   And the other one you've now remembered is the
7  Goins case, which is a 2001 Minnesota decision, so some
8  10 to 11 years before this based on Minnesota law --
9      MR. YOUNG: Objection. I believe it's been
10 asked and answered.
11 BY MS. ENGLAND:
12     Q   And Minnesota Fair Employment Practices Law?
13     A   That was another one.
14     Q   And how do you consider yourself respecting
15 Brad Roberts' rights under the new law in that meeting
16 on November 22nd?
17     MR. YOUNG: Standing objection. Also,
18 argumentative.
19     THE WITNESS: The District -- I believe the
20 District was respecting Brad Roberts' gender identity
21 rights by acknowledging that he has -- his gender
22 identity has switched to that of male, and he was going
23 to be treated as a male, and referred to as a male, and
24 that he was not going to be in any way discriminated,
25 or harassed, or in any way treated differently because

Page 275

1  of his gender identity.
2  BY MS. ENGLAND:
3      Q   Well, he was treated differently. He wasn't
4  allowed to use male restrooms at the Clark County
5  School District for a whole year.
6      MR. YOUNG: Objection. Argumentative.
7  BY MS. ENGLAND:
8      Q   Isn't that different treatment?
9      A   No, treated differently than other people
10 similarly situated, is what I -- is usually the -- is
11 what I believe, you know, when you talk about
12 discrimination or unequal treatment, it's being treated
13 differently than people who are similarly situated.
14     Q   And Brad Roberts was not allowed to use
15 restroom facilities at the Clark County School District
16 facilities that he routinely visited as a patrol
17 officer; isn't that correct?
18     MR. YOUNG: Standing objection.
19     THE WITNESS: I'm sorry. Repeat that
20 question.
21 BY MS. ENGLAND:
22     Q   Sure.
23     Brad Roberts, during that year of prohibition,
24 was not allowed to use the male restroom facilities,
25 nor any restroom facilities at the schools he routinely

Page 276

1  patrolled?
2      MR. YOUNG: Standing objection. Also,
3  mischaracterizes facts in evidence.
4      THE WITNESS: Yeah -- no -- I'm not aware --
5  I'm not -- that's not my understanding.
6  BY MS. ENGLAND:
7      Q   And no other employee at the Clark County
8  School District was subjected to this ban, were they?
9      A   At the time, I am not aware of any other
10 gender identity employer -- employee who, based upon
11 gender identity, had requested to use and was denied
12 permission to use a restroom that did not match their
13 biological anatomy.
14     Q   And all other employees were permitted to use
15 the restroom facility of their choice?
16     MR. YOUNG: Standing objection.
17     THE WITNESS: No, that's not correct.
18 BY MS. ENGLAND:
19     Q   Please identify all other employees who the
20 District subjected to the genital check that -- or,
21 genital disclosure that Brad Roberts was subjected to.
22     MR. YOUNG: Standing objection.
23     THE WITNESS: I'm not aware of any employee
24 who was specifically told that they had to use the
25 restroom that matched their biological anatomy.

Page 277

1  BY MS. ENGLAND:
2      Q   And please identify any other employee besides
3  Brad Roberts who was asked by School District officials
4  to disclose the type, the gender specificity of the
5  genitals that they had. Name one other employee
6  besides Brad Roberts.
7      MR. YOUNG: Standing objection. And object to
8  the extent it mischaracterizes facts in evidence.
9      THE WITNESS: I'm not aware of us having to
10 make that request in response to the employee's request
11 to use a restroom that did not match their biological
12 anatomy.
13 BY MS. ENGLAND:
14     Q   And name one other employee who was asked to
15 make a disclosure about their biological anatomy other
16 than Brad Roberts.
17     MR. YOUNG: Standing objection. And also
18 mischaracterizes facts in evidence. You can respond.
19     THE WITNESS: I'm not aware of any other
20 employee who, in response to the request to use a
21 restroom that did not match their biological anatomy,
22 being asked to provide any kind of evidence of their
23 anatomy.
24 BY MS. ENGLAND:
25     Q   So regardless of a request -- take that out --

Page 278

1  name any other employee besides Brad Roberts who was
2  required to disclose the gender specificity of their
3  genitals in order to use the restroom of their choice.
4        MR. YOUNG:  Standing objection.  Also, object
5  to the extent the question suggests that Mr. Roberts
6  was required to disclose anything about his genitals.
7  It mischaracterizes the facts in evidence.
8        THE WITNESS:  I'm not aware of any other
9  employee.
10  BY MS. ENGLAND:
11     Q   So now go to Exhibit 31.  This is the Nevada
12  Equal Rights Commission May 3rd, 2012, Determination,
13  addressed to the Respondent, to Mr. Rodriguez, as the
14  Affirmative Action Manager of the Clark County School
15  District PD.
16        When did you first see this determination?
17     A   Personally, I think the first time I saw this
18  determination -- first time I have a specific
19  recollection of seeing this determination was in my
20  meeting with Scott Greenberg and legal counsel
21  approximately a week before, or a few days before my
22  last deposition.
23     Q   So is it your testimony here today,
24  Mr. Okazaki, that you never saw the Nevada Equal Rights
25  Commission's determination indicating that the School

Page 279

1  District is committing illegal discrimination until
2  June of 2016?
3     A   Yes.
4     Q   And so is that the first time you had a chance
5  to look at it and read it in some detail?
6     A   Yes.
7     Q   And did you in June of 2016, two weeks ago,
8  read it?
9     A   Yes.
10     Q   So you were not called upon to provide the
11  decision, or make any decisions, or provide any advice
12  back in the May 2012 time frame for the School
13  District's response to this?
14     A   No.
15     Q   But you're here today to testify as the School
16  District's 30(b)(6) on what the School District did and
17  thought about this finding of discrimination?
18     A   Yes.
19     Q   And who did you speak to to prepare yourself?
20     A   Scott Greenberg and legal counsel.
21     Q   When you say "Scott Greenberg and legal
22  counsel," who are you talking about now as legal
23  counsel?
24     A   Mr. Young, and I don't know -- I can't
25  remember Ethan's last name.

Page 280

1     Q   Mr. Thomas, Ethan Thomas?
2     A   Ethan Thomas.
3     Q   Did those three men provide you with the
4  information that you're prepared to testify here today
5  as to what the Clark County School District's position
6  was when the Clark County School District was found to
7  have committed illegal discrimination by the Nevada
8  Equal Rights Commission?
9        MR. YOUNG:  I'm going to object.  It
10  mischaracterizes what the actual topic is.  You said
11  its position.  It says these actions in response to,
12  not CCSD's position.  So please be specific -- now that
13  we've actually gotten to Topic No. 4 finally at
14  11:00 -- please ask questions that are specific to the
15  actual topic that you devise and not mischaracterize
16  the nature of the topic, Ms. England.  It's confusing.
17        THE WITNESS:  Yes.
18        MR. YOUNG:  And I believe it's deliberately
19  so.  So please listen carefully to the question.
20        THE WITNESS:  Okay.  Could you repeat the
21  question?
22  BY MS. ENGLAND:
23     Q   You already answered the question "yes."
24     A   Okay.
25     Q   So what was the information that Mr. Greenberg

Page 281

1  provided you, and what was the information that
2  Mr. Young and Mr. Thomas provided you on this topic?
3        MR. YOUNG:  Asked and answered.
4        THE WITNESS:  They provided me the information
5  in regard to the District's response to the
6  determination.
7  BY MS. ENGLAND:
8     Q   And who made the decision about what the
9  District's response was going to be back in May 2012
10  time frame?
11     A   It would be Scott Greenberg, Superintendent
12  Jones, Tom Rodriguez -- those three.
13     Q   As opposed to who it would be, please tell us,
14  as the 30(b)(6) Designee on this topic, who at the
15  School District actually made the decision about what
16  the District's response was going to be to the May 3rd,
17  2012, determination that the School District was
18  committing illegal discrimination against Brad Roberts?
19        MR. YOUNG:  Standing objection.  Outside the
20  scope.
21        THE WITNESS:  Yes, those three people made the
22  decision.
23  BY MS. ENGLAND:
24     Q   Who told you that those three people made that
25  decision?

Page 282

1    MR. YOUNG: Standing objection.
2    THE WITNESS: I'm not sure anybody told me
3  that those three people made the decision.
4  BY MS. ENGLAND:
5    Q    So in preparing to be the 30(b)(6) Designee
6  today, you did not find out exactly who at the District
7  either individually, collectively, made the decision
8  that was going to be the School District's response to
9  the finding of discrimination on May 3rd?
10    MR. YOUNG: Standing objection. The topic
11  says, "CCSD's actions," not "decision." It says
12  "actions."
13    THE WITNESS: Yes, my answer -- my answer on
14  behalf of the Clark County School District is that
15  Scott Greenberg was primarily responsible for preparing
16  the legal response to this determination. I understand
17  that Tom Rodriguez was involved in the process because
18  he is our Affirmative Action Officer primarily
19  responsible for dealing with NERC complaints, and also
20  that Superintendent Jones was aware of the District's
21  position that the legal office and Tom Rodriguez was
22  asserting throughout this entire progress.
23  BY MS. ENGLAND:
24    Q    So Superintendent Jones' involvement was being
25  aware of what the District's position was to be

Page 283

1  communicated to the Nevada Equal Rights Commission?
2    A    Aware of the position and approving it on
3  behalf of the District.
4    MR. YOUNG: And standing objection to this
5  line of questioning.
6  BY MS. ENGLAND:
7    Q    As far as you know, in preparing to be the
8  30(b)(6) Designee here today on Subject No. 4,
9  Superintendent Jones had no substantive involvement in
10  the development of the decision and the actions taken
11  thereafter; rather, it was simply that he was aware of
12  it and that he later approved it? Is that correct?
13    A    Yes.
14    Q    What involvement did Mr. Rodriguez have
15  substantively in the decision and in the actions taken
16  as a result of that decision?
17    MR. YOUNG: Standing objection as to the
18  characterization that the topic includes decision
19  making as opposed to just actions.
20    THE WITNESS: I don't know that Tom Rodriguez
21  had any substantive involvement in the District's
22  response to the determination.
23  BY MS. ENGLAND:
24    Q    So primarily it was Scott Greenberg who
25  developed substantively, made the decision on behalf of

Page 284

1  the School District and developed the actions which
2  would be taken to implement that decision?
3    MR. YOUNG: Standing objection.
4    THE WITNESS: No, I wouldn't agree with that.
5  I would say that Scott Greenberg was primarily
6  responsible for drafting and preparing the District's
7  response to the determination with the approval of the
8  superintendent and Tom Rodriguez.
9  BY MS. ENGLAND:
10    Q    So who at the School District made the
11  decision that the District didn't agree with the Nevada
12  Equal Rights Commission? The Nevada Equal Rights
13  Commission said that the School District is
14  discriminating against Brad Roberts. So who made the
15  decision at the School District that, "We're not going
16  to agree with that"?
17    MR. YOUNG: Standing objection.
18    THE WITNESS: Scott Greenberg, Superintendent
19  Jones, and Tom Rodriguez.
20  BY MS. ENGLAND:
21    Q    Did you speak with Superintendent Jones in
22  preparing yourself to come here today to find out if he
23  did anything other than be aware of it and approve it,
24  that he was actually involved in the decision-making
25  process where the Nevada Equal Rights Commission has

Page 285

1  said the School District is committing illegal Nevada
2  discrimination?
3    A    No.
4    Q    And so what do you know about Superintendent
5  Jones' actual participation or involvement in the
6  decision and the subsequent actions?
7    MR. YOUNG: Standing objection.
8    THE WITNESS: That he was aware of the
9  District's position, and agreed with it, and approved
10  it.
11  BY MS. ENGLAND:
12    Q    So according to this Nevada Equal Rights
13  Commission decision finding discrimination, it
14  indicates that Brad Roberts told the School District
15  that he would be using male restroom or facilities as
16  necessary, and that the School District told Roberts
17  that he could not use the male restroom until he had
18  provided legal documentation stating that he had
19  changed his gender from female to male. You're
20  testifying here today that that's not what Brad Roberts
21  was told, and that, rather, he could use male
22  facilities so long as they were single-use male
23  facilities.
24    You need to be on the first page of
25  Exhibit 31.

Page 286

1   A   No, I said --
2       MR. YOUNG:  First, I'm going to object to
3   counsel's characterization of what Exhibit 31 actually
4   is.  You can go ahead and respond.
5       THE WITNESS:  No, I said that Officer Roberts
6   was told that he could not use the male restroom, and
7   that --
8   BY MS. ENGLAND:
9   Q   And that included single-use male restrooms,
10  did it not?
11  A   No.  I said he was advised that he could not
12  use male restrooms, and was told to use gender-neutral
13  or single-occupancy restrooms.
14  Q   This Exhibit 31 says that, "Respondent told
15  Roberts that he could not use the male restroom until
16  he had provided legal documentation stating that he had
17  changed his gender from female to male."
18      Do you see that sentence?
19  A   I do.
20  Q   And are you saying that that was not the
21  District's position; that the Nevada Equal Rights
22  Commission has completely misstated it; and that, in
23  fact, Brad Roberts was permitted to use a
24  single-occupant male restroom during this year of
25  prohibition?  Is that what your testimony is here

Page 287

1   today, Mr. Okazaki?
2       MR. YOUNG:  I'm going to object to the
3   question to the extent it mischaracterizes or leaves
4   out information pertaining to what is stated on
5   Exhibit 31.
6       THE WITNESS:  No, he was told he could not use
7   a male restroom until he provided evidence of the
8   anatomical change to match the male genital.
9   BY MS. ENGLAND:
10  Q   And that prohibition included single-use male
11  restrooms, did it not?
12  A   No.
13  Q   And then this goes on to say that, "At another
14  meeting on November 22nd, Respondent reiterated its
15  position that Roberts could not use the male restroom
16  until he had a sex change surgical procedure."
17      That is accurate because -- is it not --
18  because that's what you told Brad Roberts on November
19  22nd, 2011?
20  A   I don't know if I used those exact words.
21  But, yes, he was told he was not going to be allowed to
22  use the male restroom until his anatomy matched that
23  gender.
24  Q   And this Nevada Equal Rights Commission
25  determination, you understand that this determination

Page 288

1   indicates that the Nevada Equal Rights Commission has
2   concluded that the School District is committing
3   illegal discrimination?  You recognize that, don't you?
4   A   Yes.
5   Q   And this says, "Respondent does not offer any
6   explanation for its policy other than a previous case
7   in which the court found that requiring a pre-operative
8   male-to-female transgender to use a gender-neutral or
9   single-occupant restroom was not unlawful
10  discrimination."
11      That was the information -- that was the
12  single case that you've talked about, which is the Doe
13  versus School District case, the Mahan decision under
14  Title IX granting summary judgment; right?
15  A   What is the question, that the case they're
16  referring to in that is that case?
17  Q   Yes.
18  A   Yes.
19  Q   And it says, "Although Respondent does not
20  provide any details, it may be referring."  So does
21  that suggest to you that the School District didn't
22  actually identify the case it was relying on, and that
23  the Nevada Equal Rights Commission was left to try to
24  figure it out?
25      MR. YOUNG:  Standing objection.

Page 289

1       THE WITNESS:  No, I have no idea why the
2   Nevada Equal Rights Commission is saying what it's
3   saying in its determination.  That was not the only
4   explanation given, or justification given for its
5   position.  So when the Nevada Equal Rights Commission
6   says that, we don't necessarily agree with that.
7   BY MS. ENGLAND:
8   Q   But the Nevada Equal Rights Commission is
9   saying, "This is all the School District has told us."
10  A   And we don't agree with that.
11      MR. YOUNG:  Standing objection.
12  BY MS. ENGLAND:
13  Q   So it says -- the Nevada Equal Rights
14  Commission says, "It may be referring to a 2008 case in
15  which a pre-operative male-to-female transgendered
16  student sued Respondent when it banned the student from
17  using the communal ladies' room.  However, that case
18  was brought pursuant to Title IX, and it was decided
19  before the Nevada Legislature amended NRS chapters 233
20  and 613 in 2011 to include gender identity or
21  expression as a protected category."
22      Do you see that?
23  A   Yes, I see that.
24  Q   You didn't turn the page on the exhibit.
25  A   I know what it says.

Page 290

1    Q   Okay.  It says, "Courts have recognized the
2  legitimacy of restrooms segregated on the basis of sex.
3  However, to create restrooms for each sex but then to
4  require Roberts to prove his conformity with
5  Respondent's expectations regarding the male anatomy in
6  order to use the men's bathrooms violates Nevada's
7  anti-discrimination law.  Probable cause supports the
8  charge of discrimination based on gender identity and
9  expression."
10       So who decided at the School District what
11  actions would be undertaken by the School District upon
12  a finding that Brad Roberts is being discriminated
13  against in May of 2012?
14       MR. YOUNG:  I'm just going to object.  The
15  finding that there was probable cause to believe that
16  there was a violation, is what the document says.  You
17  can respond.
18       THE WITNESS:  I answered that question.  Scott
19  Greenberg, with the -- with the awareness and the
20  approval of Superintendent Jones and Tom Rodriguez.
21  BY MS. ENGLAND:
22    Q   And what were those actions?
23    A   To file a response.
24       MS. ENGLAND:  Would you mark that Exhibit 32?
25       (Exhibit 32 marked)

Page 291

1  BY MS. ENGLAND:
2    Q   May I ask you to look at Exhibit 32, please?
3       Mr. Okazaki, is this one of the responses that
4  you looked at to prepare yourself here today --
5    A   Yes.
6    Q   -- to be the Clark County School District
7  30(b)(6) Designee on Subject No. 4?
8    A   Yes.
9    Q   And so this was provided to you by either
10  Mr. Greenberg or by counsel?
11    A   Yes.
12    Q   And in this -- what exactly is this document?
13    A   A response to the determination.
14    Q   Is this the Clark County School District's
15  response to the Nevada Equal Rights Commission's
16  determination that the School District is
17  discriminating against Brad Roberts?
18    A   Yes.
19    Q   And so would it be fair to characterize the
20  response, which is, "We are not going to stop doing
21  what we're doing to Brad Roberts, and we're going to
22  fight this and ask the Nevada Equal Rights Commission
23  to reverse themselves"?  Is that a fair statement?
24    A   Yes.
25    Q   And in this response by Mr. Greenberg on

Page 292

1  behalf of the School District, Mr. Greenberg does not
2  point out that Brad Roberts is permitted -- as you've
3  testified here today, contradictory to what everyone
4  else has testified to -- that Brad Roberts was
5  permitted to use single-use male restrooms at School
6  District facilities.  It does not point that out, does
7  it?
8    A   No.
9       MR. YOUNG:  The document speaks for itself.
10  BY MS. ENGLAND:
11    Q   And the only two cases that are mentioned in
12  Mr. Greenberg's challenge on behalf of the School
13  District is the Goins case, which you mentioned
14  earlier, do you see that, and the Title IX case?
15    A   Well, there's another case cited.
16    Q   If you look on the first page, the two cases
17  that are cited in that second paragraph about the
18  ability of an employer to prohibit a particular
19  employee from using the restroom of their gender
20  identity are the two cases, the Title IX case that you
21  previously talked about, and the Goins case, the 2001
22  Minnesota case?
23    A   That paragraph references two cases; correct.
24    Q   And the Goins case is an 11-year-old case that
25  dealt with Minnesota law, did it not, 11 years before?

Page 293

1    A   It looks like the decision date was 2001.
2    Q   And then you said the third case is the one
3  that you're referring to on the second page, which is
4  having to do with OSHA regulations and OSHA regulations
5  requiring, or allowing facilities to have gender
6  segregated restroom or bathroom facilities; right?
7       MR. YOUNG:  I'll object to the extent that the
8  question said "allow" as opposed to "require."
9       THE WITNESS:  Yes.
10  BY MS. ENGLAND:
11    Q   And those OSHA regulations have nothing to do
12  with how a person is permitted, or how much genital
13  scrutiny they have to undergo in order to use a
14  particular sex segregated restroom facility, do they?
15    A   No, I think those OSHA regulations are
16  relevant to the issue of whether somebody who
17  identifies with a gender different than their anatomy
18  should be allowed to use the restroom of the gender to
19  which they identify, or would be required to use the
20  restroom of the gender that they match anatomically.
21    Q   So are you saying the OSHA regulations require
22  the provider of the restroom facilities to make persons
23  undergo genital disclosures before they're permitted to
24  use a restroom facility that's identified as being for
25  a particular gender, either male or female?

Page 294

1    MR. YOUNG: Standing objection.
2    THE WITNESS: No.
3  BY MS. ENGLAND:
4    Q    And, in fact, you don't know what those OSHA
5  regulations say, do you?
6    A    Meaning -- no -- I understand what it says
7  here, and what the --
8    Q    And that's all you know?
9    A    I understand that those OSHA regulations
10  require that bathrooms be segregated for each sex at
11  places of employment, and that these OSHA regulations
12  have been adopted by Nevada.
13    Q    And do you know the current OSHA regulations
14  which deal specifically with this subject which were
15  issued in 2015?
16    MR. YOUNG: Standing objection.
17    THE WITNESS: No.
18  BY MS. ENGLAND:
19    Q    And have you been called upon, Mr. Okazaki, to
20  look at the best practices by the OSHA which deal
21  specifically with this subject and with gender
22  specified restroom facilities?
23    A    No.
24    MR. YOUNG: Standing objection.
25  /////

Page 295

1  BY MS. ENGLAND:
2    Q    And do you know whether Mr. Greenberg, when he
3  was making these representations to the Nevada Equal
4  Rights Commission about OSHA regulations, whether he,
5  in fact, had updated himself and provided accurate and
6  more recent information about what OSHA regulations
7  actually said about sex-segregated facilities?
8    MR. YOUNG: Standing objection. Are you
9  talking about in 2012 what the OSHA regulation said?
10    THE WITNESS: Yes, my -- what Mr. Greenberg
11  stated in this, in his letter is accurate.
12  BY MS. ENGLAND:
13    Q    How do you know that?
14    A    That's the District's position. What Scott
15  Greenberg said in his letter, which is Exhibit 32, is
16  accurate.
17    Q    So was it accurate as of 2012? Was
18  Mr. Greenberg -- did you look in to see whether
19  Greenberg was accurately representing the current best
20  practices as divulged by OSHA and promulgated in 2012?
21  Did you check in and make sure he was using the most
22  accurate ones?
23    MR. YOUNG: Standing objection.
24    THE WITNESS: Me personally? No.
25  /////

Page 296

1  BY MS. ENGLAND:
2    Q    And nowhere in Mr. Greenberg's letter
3  espousing the position to the Nevada Equal Rights
4  Commission does Mr. Greenberg deal with the new Nevada
5  law which had gone into effect over six months before
6  that, does it?
7    MR. YOUNG: Standing objection.
8  Argumentative. You can answer.
9    THE WITNESS: Yeah, other than the reference
10  to the May 3rd determination which was in regard --
11  BY MS. ENGLAND:
12    Q    Mr. Okazaki --
13    A    If I can finish?
14    MR. YOUNG: He's answering the question,
15  Kathy.
16    MS. ENGLAND: Mr. Okazaki --
17    MR. YOUNG: Stop interrupting him.
18    THE WITNESS: I'll finish my answer.
19    MS. ENGLAND: Mr. Okazaki --
20    MR. YOUNG: Go ahead and finish the answer.
21  Speak right over the top of her, Mr Okazaki. She's
22  being rude.
23    THE WITNESS: In regard to -- in regard to --
24  other than the reference to the May 3rd determination,
25  which was clearly in regard to the new AB 211, the

Page 297

1  provisions of AB 211, there is no specific reference in
2  Mr. Greenberg's letter, Exhibit 32, to AB 211.
3  BY MS. ENGLAND:
4    Q    Mr. Okazaki, I stopped you, and attempted to
5  stop you because I believe the court reporter reported,
6  and was able to pick up your subvocalization of your
7  answer to that question which was "yes." And I believe
8  if we asked this court reporter to read it back, she
9  will have picked it up.
10    So my question was: Nowhere in this
11  Exhibit 32 does Mr. Greenberg offer up or discuss the
12  new Nevada law which went into effect over six months
13  before this, i.e., on October 1st, 2011, does it?
14    A    Other than the reference to the May 3rd
15  determination, which was clearly in regard to AB 211,
16  there is no specific reference to that law in
17  Mr. Greenberg's letter.
18    Q    And Mr. Greenberg, on behalf of the School
19  District, does not offer any explanation about why the
20  School District in the face of that new Nevada law has
21  decided that that law does not apply to the School
22  District or to the situation, does it?
23    A    No, he says that based on this other legal
24  authority, it's our position that having this
25  prohibition in regard to restroom use does not

Page 298

1   violate -- does not constitute unlawful discrimination,
2   so we disagree with their determination that it does.
3   So this is in response to the Nevada Equal Rights
4   Commission's determination that by imposing this
5   restriction on Brad Roberts' sexual identity, or gender
6   identity, that we are engaging in unlawful
7   discrimination and violation of Nevada law. We said we
8   disagree. And that based on this legal authority, we
9   don't think that restriction constitutes unlawful
10   discrimination.
11   Q    And so the authority that you're speaking of
12   is a 2001 Minnesota case and a Title IX, and you're
13   saying that the District's position was that a
14   three-year-old Title IX case and a 2001 Minnesota case
15   are more authoritative than the Nevada Equal Rights
16   Commission decision and the new Nevada law which went
17   into effect on October 1st, 2011?
18        MR. YOUNG: Argumentative. And asked and
19   answered numerous times.
20        THE WITNESS: Again, I did not say that our
21   position was that they were more authoritative. Our
22   position was that there was applicable legal authority
23   that held that imposing that restriction did not
24   constitute unlawful discrimination.
25        MS. ENGLAND: We'll have this marked as

Page 299

1   Exhibit 33.
2        (Exhibit 33 marked)
3   BY MS. ENGLAND:
4   Q    Mr. Okazaki, the court reporter has handed you
5   what has been marked as Exhibit No. 33, which is an
6   EEOC decision which preceded the May 3rd, 2012,
7   decision of the Nevada Equal Rights Commission finding
8   probable cause that the School District was committing
9   illegal discrimination under Nevada law against Brad
10   Roberts. This decision was issued by the EEOC on April
11   20th. So it came out almost two weeks before the
12   Nevada Equal Rights Commission determination.
13        Did the School District take this EEOC
14   decision into account when it cited or refused to
15   comply with the determination and refused to stop
16   its -- what the Nevada Equal Rights Commission felt was
17   illegal discrimination against Brad Roberts?
18   A    No, I'm not aware that we -- us specifically
19   considering this case.
20   Q    And so this is even more recent authority than
21   a 2001 Minnesota decision, and a Title IX decision in
22   2008. This is the EEOC, the U.S. Government, EEOC,
23   saying that discrimination against transgender people
24   prohibiting them from using restroom facilities is,
25   among other things, a Title VII violation.

Page 300

1        Was the School District aware of this decision
2   at the time it was refusing to stop the practice which
3   the Nevada Equal Rights Commission found was illegal
4   under Nevada law?
5        MR. YOUNG: I'll object. It mischaracterizes
6   the nature of the holding or the ruling, the limited
7   ruling in Macy v. Holder.
8        THE WITNESS: I am not aware that the District
9   had specific knowledge of this case.
10   BY MS. ENGLAND:
11   Q    And in preparing yourself to be the 30(b)(6)
12   deponent, Designee, for the Clark County School
13   District here today on what actions did the School
14   District take in response to the May 3rd, 2012,
15   determination of discrimination under Nevada law by the
16   Clark County School District, why is it that you didn't
17   find out whether or not the School District knew about
18   the EEOC decision which said transgender discrimination
19   is Title VII discrimination as well, it's a violation
20   of federal law as well? Why didn't you find out
21   whether the School District knew that at the time it
22   was responding and saying, "No, we're still going to
23   prohibit Brad from using restroom facilities"?
24        MR. YOUNG: Standing objection. And it's
25   argumentative.

Page 301

1        THE WITNESS: What I was told by Scott
2   Greenberg, was that he had -- he was aware of the legal
3   authority relating to this issue. And the District's
4   position was as stated in his letter. I do not know
5   whether he specifically reviewed this particular case.
6   And I did not ask him if he reviewed this particular
7   case because I didn't ask him about every possible case
8   there is out there and whether he reviewed that
9   particular case.
10   BY MS. ENGLAND:
11   Q    So you're a lawyer, Mr. Okazaki. What is more
12   authoritative in Nevada, a Ninth Circuit U.S. Court of
13   Appeals case or a Minnesota Supreme Court case?
14   A    Say it again. A Ninth Circuit --
15   Q    You know who the Ninth Circuit is?
16   A    Yes. You're asking me which is more
17   authoritative in Nevada, a Ninth Circuit Court of
18   Appeals case or a Minnesota Supreme Court case?
19   Q    Yes. Which one?
20   A    I guess it would depend on the issue. But in
21   general, the Ninth Circuit.
22   Q    On matters of federal law and the application
23   of federal law, which is more authoritative in Nevada?
24   A    The Ninth Circuit.
25   Q    So look at page 5 of the Macy versus Holder

Jon Okazaki, Esq., Volume II, 6/29/16                          Bradley Roberts v. Clark County School District

Page 302

1  decision, April 20th, 2012.
2       MR. YOUNG:  Come on, Kathy.  Seriously?
3  There's no jury here.  I mean, you're not making any
4  points by arguing what a case says and what it doesn't
5  say.  And it's off topic.  I'm going to make my
6  standing objection.
7  BY MS. ENGLAND:
8    Q    You see note 7?
9    A    Note 7.
10   Q    Do you know how to read --
11   A    Yes, I do.
12   Q    -- do you know how to read headnotes in case
13  law?
14   A    Well, the -- my understanding is -- okay -- if
15  you're looking -- if you're asking me to look at page
16  5 --
17   Q    I did.  And I asked you to look at headnote,
18  or the paragraph that's marked asterisked 7.
19   A    Okay.  So that's not a headnote.  Asterisk 7
20  means, I believe, the page number of the actual
21  decision.  So are you asking me to look at asterisk 7,
22  the paragraph that's marked --
23   Q    Yes, please.
24   A    Okay.
25   Q    It's the first full paragraph on this page.

Page 303

1    A    I'm there.
2    Q    Would you read the first sentence?
3    A    "When an employer discriminates against
4  someone because the person is transgender, the employee
5  [sic] has engaged in disparate treatment," quote,
6  "related to the sex of the victim," unquote.
7    Q    And you used the word the "employee."  You
8  meant the "employer" has engaged, right?
9    A    Yes.  That's what it says, "The employer has
10  engaged."
11   Q    Do you see the citation it gives there?
12   A    Yes.
13   Q    That's the Schwenk case?
14   A    Yes.
15   Q    And if you look on the previous page, page 4,
16  it gives you the cite.  You know how to read a cite,
17  Mr. Okazaki?
18   A    I do.
19   Q    Look at the third full paragraph down.  Do you
20  see the cite for Schwenk?
21   A    I do.
22   Q    That is a Ninth Circuit 2000 decision, is it
23  not?
24   A    Yes.
25   Q    And that is a decision by the Ninth Circuit

Page 304

1  that said that discrimination based on transgender
2  status is disparate treatment under Title VII.  Do you
3  recognize that?
4    A    That's apparently what it says.
5       MR. YOUNG:  Fine.  And it's also a case that
6  was under the Gender Motivated Violence Act, not under
7  Title VII, not under Title IX.  So it's not applicable.
8  And this is arguable to a judge.  And it makes no sense
9  to go over this in this deposition, Kathy.  You are
10  wasting time.
11  BY MS. ENGLAND:
12   Q    Mr. Okazaki, in preparing yourself to be the
13  designated 30(b)(6) on behalf of the Clark County
14  School District about what actions they were taking in
15  May of 2012, by refusing to lift the ban on transgender
16  Police Officer Brad Roberts, did the School District
17  take into account that 12 years before that, the Ninth
18  Circuit had held that discrimination against
19  transgender people was considered discrimination under
20  Title VII, and that three weeks before the May
21  decision, determination by the Nevada Equal Rights
22  Commission, that the EEOC had issued a landmark
23  decision in this very Macy case, which cited that Ninth
24  Circuit decision, and said that employers should not be
25  discriminating against transgender employees?

Page 305

1       MR. YOUNG:  Standing objection.
2  BY MS. ENGLAND:
3    Q    Did you find that out to prepare yourself here
4  today?
5    A    The District was aware of the relevant case
6  law in regard to the issue.
7    Q    And despite that relevant case law, which is a
8  Ninth Circuit decision, the School District continued
9  its illegal prohibition against Brad Roberts which
10  prohibited him from using male restroom facilities;
11  isn't that correct?
12      MR. YOUNG:  Standing objection.
13  Argumentative.  You can answer.
14      THE WITNESS:  No, we do not concede that what
15  we -- the restriction was illegal.  We were aware of
16  relevant case law, and took a position.
17  BY MS. ENGLAND:
18   Q    And then if you'll look on page 5 again, it's
19  referring to the Schwenk versus Hartford decision,
20  which is the 2000 Ninth Circuit decision.  If you'll
21  look at the paragraph that begins, "The court relied on
22  Price Waterhouse" --
23   A    Okay.
24   Q    Are you at that paragraph?
25   A    I am.

Page 306

1  Q   Would you read the second sentence of that
2  paragraph?
3  A   "Accordingly, the Ninth Circuit concluded
4  discrimination against transgender families [sic],
5  i.e." --
6  Q   Does that say "females" or "families"?
7  A   Oh, I'm sorry.  "Females."
8  Q   Would you please start again, and to the best
9  of your ability, would you actually read the sentence
10  accurately?
11  A   Okay.
12      "Accordingly, the Ninth Circuit concluded
13  discrimination again transgender females, i.e.," quote,
14  "as anatomical males whose outward behavior and inward
15  identity," brackets, "do," closed brackets, "not meet
16  social definitions of masculinity," unquote, dash, "is
17  actionable discrimination," quote, "because of sex,"
18  unquote.
19  Q   So the EEOC has issued a decision which
20  pre-dates the Nevada Equal Rights Commission which says
21  that what the School District is doing to Brad Roberts
22  is -- may be considered discrimination under federal
23  law under Title VII; isn't that right?
24      MR. YOUNG: I'll object.  The document speaks
25  for itself.  And the legal ramifications of the

Page 307

1  document are subject to argument.
2      THE WITNESS: Yes, we don't agree that our
3  restriction on Officer Roberts was unlawful
4  discrimination.
5  BY MS. ENGLAND:
6  Q   And you don't agree that it was unlawful
7  discrimination under Title VII?
8  A   Correct.
9  Q   And you base that on -- not on the Macy case
10  that the EEOC has held out, and not on the Ninth
11  Circuit decision in the Schwenk case, but rather based
12  on the dismissal of a Title IX case and the Goins
13  Minnesota case?
14  A   Based on all relevant legal authority.
15  Q   So which is more authoritative, the EEOC's
16  Macy decision, or the Goins decision?
17  A   It would depend on the substance of the
18  case --
19  Q   In this circumstance.
20  A   -- the rulings --
21  Q   In this circumstance, in this circumstance, in
22  May of 2012, which is the more authoritative case, the
23  Macy decision by the EEOC issued on April 20th, 2012,
24  or the Goins decision issued by the Minnesota Supreme
25  Court in 2011?

Page 308

1      MR. YOUNG:  Standing objection.
2      THE WITNESS:  Our position would be Goins.
3  BY MS. ENGLAND:
4  Q   Okay.  We're done with that exhibit.
5      In April of 2012, was Littler Mendelson one of
6  the regular advisors to the Clark County School
7  District legal department --
8      MR. YOUNG:  Standing objection.
9  BY MS. ENGLAND:
10  Q   -- and one of your regular counsel?
11  A   Yes, they were one of our regular counsel,
12  outside counsel.
13      MS. ENGLAND:  We'll have this marked as 34.
14      (Exhibit 34 marked)
15  BY MS. ENGLAND:
16  Q   In preparing for your deposition here today as
17  the Clark County School District 30(b)(6) Designee on
18  what actions the School District took in response to
19  the Nevada Equal Rights Commission determination, first
20  you told us that they did not take into account or
21  implement the holding of the Macy versus Holder
22  decision issued by the EEOC in April; isn't that
23  correct?
24  A   No, I did not say that.
25  Q   And as a result of the Macy decision, the

Page 309

1  Clark County School District did not cease its ban on
2  Brad Roberts which prohibited him from using male
3  restroom facilities at Clark County School District,
4  did it?
5      MR. YOUNG:  Standing objection.
6      THE WITNESS:  No, the Macy case did not change
7  the District's position in regard to Officer Roberts.
8  BY MS. ENGLAND:
9  Q   And even though the Macy decision by the EEOC
10  was issued, it said, "Discrimination against
11  transgender people is discrimination under Title VII,"
12  the School District did not change its position insofar
13  as Brad Roberts was concerned in May of 2012; isn't
14  that correct?
15  A   The District did not change its position in
16  regard to Officer Roberts as a result of Macy.
17  Q   The District in May of 2012, despite the Macy
18  decision, continued its same position and practice
19  against Brad Roberts for another five months, did they
20  not?
21  A   Yes.
22  Q   And Littler Mendelson was one of the School
23  District's contracted counsel to provide legal advice
24  in defense of cases in April and May of 2012?
25  A   Yes.

Page 310

1  Q   And do you know if anyone at the School
2  District looked at Littler Mendelson's website in that
3  time frame to gain any guidance about what the School
4  District's reaction ought to be in light of the Macy
5  decision by the EEOC?
6       MR. YOUNG:  Standing objection.
7       THE WITNESS:  I'm not aware if they have --
8  they did or not.
9  BY MS. ENGLAND:
10  Q   And have you ever seen this part of Littler
11  Mendelson's website which gives employers advice in
12  April of 2012 about what an employer ought to be doing
13  in order to -- because of the issuance of the EEOC's
14  decision in the Macy case?
15      MR. YOUNG:  Standing objection.
16      THE WITNESS:  Personally, I don't know if I
17  ever looked at Littler Mendelson's website.  I've seen
18  their publications, and I've seen their guidance
19  documents.
20  BY MS. ENGLAND:
21  Q   And so in preparing yourself here today, did
22  you find out whether Scott Greenberg, who was making
23  these decisions on behalf of the School District, if he
24  ever went and got outside guidance about the
25  implications of the Macy decision?

Page 311

1  A   No.
2  Q   Did you ever ask Mr. Greenberg if he went and
3  got guidance from someone other than the Goins decision
4  and the Jane Doe Title IX decision?
5       MR. YOUNG:  Standing objection.
6       THE WITNESS:  No, I didn't ask him whether he
7  had gone outside.  He told me that it was his review of
8  the legal authority that was the basis for the
9  District's position.
10  BY MS. ENGLAND:
11  Q   And the only legal authority he told you about
12  was the Title IX decision in the Jane Doe versus School
13  District case and the Goins decision?  He didn't tell
14  you about the Macy decision; he didn't tell you about
15  the Littler decision; he didn't tell you about the
16  Schwenk Ninth Circuit decision; did he?
17      MR. YOUNG:  Objection.  Argumentative.
18  Standing objection.
19      THE WITNESS:  Yeah -- no -- he didn't -- he
20  didn't cite cases that did not support our position.
21  He advised me that he was aware of the legal authority
22  that was relevant to the issue, and that the District's
23  position was that the prohibition imposed upon Officer
24  Roberts in regard to bathroom use was not unlawful
25  discrimination.

Page 312

1  BY MS. ENGLAND:
2  Q   And he did not tell you how the District's
3  position could somehow in any way, shape, or form be
4  squared with the Macy decision?  He only cited to you
5  case authority that supported the District's position?
6       MR. YOUNG:  Standing objection.
7  BY MS. ENGLAND:
8  Q   Isn't that correct?
9       MR. YOUNG:  Standing objection.
10      THE WITNESS:  No, I don't think he -- I don't
11  recall him listing any specific case.  But he did say
12  that there's -- that in his review of legal authority
13  out there, that, you know, that relevant legal
14  authority supported the District's position.
15  BY MS. ENGLAND:
16  Q   And the only relevant legal authority that he
17  told you about was legal authority that concluded the
18  same way the District, or supported the District's
19  decision, that Brad Roberts would be banned from using
20  male restroom facilities until he had sex change
21  operations and provided proof to the department?
22  A   The only legal authority he specifically
23  advised me of was the legal authority that he
24  referenced in his letter to the Nevada Equal Rights
25  Commission.

Page 313

1  Q   And that's the Goins and the Title IX case?
2  A   And the OSHA regulations, and the cases
3  indicating that Nevada has adopted those regulations.
4  Q   And it does not include the Macy decision?
5  Does not include the Schwenk decision?
6       MR. YOUNG:  Argumentative.  Asked and
7  answered.
8       THE WITNESS:  No.
9  BY MS. ENGLAND:
10  Q   No, it does not; isn't that correct?
11  A   Yeah, I told you that he did not advise me of
12  any specific case that did --
13  Q   Went the other way?
14  A   -- that did not support the School District's
15  position.  He told me he was -- he had reviewed the
16  relevant case law.  So he had reviewed all relevant
17  case law.
18  Q   Did he review the Macy decision?
19  A   I didn't ask him specifically whether he did
20  or not.
21  Q   You said he reviewed all relevant case law.
22  Did he review the Macy decision --
23  A   I don't know.
24  Q   -- that came out in April of 2012?
25  A   I don't know.

Page 314

1       MR. YOUNG:  Standing objection.
2   BY MS. ENGLAND:
3       Q    Fair enough.
4       Would you look at the second page of
5   Exhibit 34?
6       In April 2012, as a result of the Macy
7   decision, Littler Mendelson, Clark County School
8   District's Defense Counsel, provided this sort of
9   information on its website that is printed here today.
10  So I'll ask you to read the paragraph that starts with
11  "because."  It's about mid-page.
12      A    I don't see a paragraph that starts with
13  "because."  Second page, you asked me to look at?
14      Q    I did.  It's right below the last dotted
15  bullet.  Look at the last bullet that says, quote --
16      A    You're on the third page.
17      Q    Oh, sorry.  Okay.  Third page.  You see the
18  bullets?
19      A    I do.
20      Q    Would you read -- this says that, "As a
21  result, both public and private employers should review
22  and consider revising their policies and practices to
23  confirm to the EEOC's decision in Macy.  The policies
24  and procedures that should be reviewed include, but are
25  not limited to" -- the first bullet is,

Page 315

1   "Non-discrimination, harassment, and EEO policies."  Do
2   you see that?
3       A    Yes.
4       Q    And then the last bullet that Littler
5   Mendelson is telling the public, and especially
6   employers that they should be looking at is what?
7       A    The last bullet says, "Policies governing the
8   use of restrooms, locker rooms, and other
9   gender-specific facilities."
10      Q    And as of April and May of 2012, Clark County
11  School District has not done it; isn't that correct?
12      MR. YOUNG:  Standing objection.
13      THE WITNESS:  No, I -- we reviewed the policy
14  and regulation relating to -- we reviewed Policy 4110
15  and Regulation 4110 and actually revised them.
16  BY MS. ENGLAND:
17      Q    That has nothing to do with restrooms, locker
18  rooms, or gender-specific facilities, does it?
19      MR. YOUNG:  That wasn't what you limited your
20  question to, Kathy.  You talked about
21  non-discrimination, harassment, and EEOC policies
22  first.
23  BY MS. ENGLAND:
24      Q    I'm talking about the last bulleted point.
25      A    No, I -- we -- the District took into

Page 316

1   consideration all of the relevant factors and issues
2   involved in gender identity and AB 211's inclusion of
3   that status as a protected status or class, and revised
4   its policy and regulation accordingly.
5       Q    And then would you read the sentence that
6   begins with "because"?
7       A    "Because not all transgender people elect to
8   have sex-reassignment surgery, employers should apply
9   their policies and procedures equally to all
10  transgender employees, regardless of surgical status."
11      Q    And at that point in time, in April and May of
12  2012, Clark County School District was still
13  prohibiting Brad Roberts from using male restroom
14  facilities at Clark County School District facilities,
15  weren't they?
16      MR. YOUNG:  Standing objection.
17  Argumentative.
18      THE WITNESS:  Yes.
19  BY MS. ENGLAND:
20      Q    And if, as you instructed him, in November of
21  2011, if Brad Roberts had provided the School District
22  with medical documentation that he had had sex change
23  operation, he would have then been permitted to use
24  male restroom facilities at School District properties?
25      MR. YOUNG:  Standing objection.

Page 317

1       THE WITNESS:  Yes.
2   BY MS. ENGLAND:
3       Q    And because he had failed to do so, he was not
4   permitted to use male restroom facilities at Clark
5   County School District facilities?
6       A    Yes.
7       Q    And he was forced to use restroom facilities
8   that were outside the District property?
9       MR. YOUNG:  Standing objection.
10      THE WITNESS:  No.
11  BY MS. ENGLAND:
12      Q    Well, I guess his alternative was to never
13  urinate or defecate all day long during his eight-hour
14  shift?
15      MR. YOUNG:  Standing objection.
16  BY MS. ENGLAND:
17      Q    So he could either choose not to engage in
18  those bodily functions throughout his shift, or he was
19  forced to use facilities outside the District property;
20  isn't that correct?
21      MR. YOUNG:  Standing objection.
22  Argumentative.  Mischaracterizes facts in evidence.
23  You can answer.
24      THE WITNESS:  No.
25  /////

Page 318

BY MS. ENGLAND:

Q   And this guidance or instruction to employers from Littler Mendelson, the School District's Defense Counsel, is directly contradictory to what practice the School District was then imposing on Brad Roberts, that is, they were treating him differently because he had not had sex reassignment surgery or would refuse to disclose it?

MR. YOUNG: Standing objection.

BY MS. ENGLAND:

Q   Isn't that correct?

A   No.  I don't agree.

Q   So you knew that Brad Roberts had not disclosed whether or not he had had sex reassignment surgery and, therefore, he was not permitted to use male restrooms; right?

A   Yes.

Q   We're done with that.  Go to Exhibit --

MR. YOUNG: It's approximately noon.  Were you planning on breaking for lunch?

MS. ENGLAND: Yes, at 12:30.

MR. YOUNG: Okay.  Thank you for letting me know.

MS. ENGLAND: Oh, sorry.

Here's 35.

Page 319

(Exhibit 35 marked).

BY MS. ENGLAND:

Q   Exhibit 35, which is a July 16, 2012, letter from the Nevada Equal Rights Commission Administrator to Mr. Greenberg, is this one of the documents that you reviewed to prepare to be the 30(b)(6) Designee today?

A   Yes.

Q   And in this letter, Ms. Chinchilla, the administrator, confirms that, to Mr. Greenberg, that, "As you know, we held a conciliation on June 19, 2012, in the above-referenced case which was unsuccessful."

Is that what you understand the state of events was as of June 2012, from the School District's perspective?

MR. YOUNG: July, you mean?

BY MS. ENGLAND:

Q   Excuse me.

A   Yes.

Q   What was the position which was articulated at the conciliation on June 19, 2012, by the District, and by whom was it espoused?

A   That it was not unlawful discrimination to require Brad, Officer Roberts, to use the restroom of the gender that he matched anatomically.

Q   And so are you saying that it was the

Page 320

District's position in June of 2012 --

MR. YOUNG: July?

MS. ENGLAND: No.  Excuse me.  I'll start the question again.

BY MS. ENGLAND:

Q   Is it your understanding that the District's position in June of 2012 was that Brad Roberts was supposed to be using the women's restroom, which is what the District understood was the gender that matched his anatomical gender?

A   No.

Q   But the ban, that is the School District's practice that banned Brad Roberts from using men's room facilities at Clark County School District was still in effect in June of 2012?

A   Yes.

Q   And was it your understanding that the School District came to the conciliation and said that was their position, they weren't going to change it, and they weren't going to lift the ban?

A   Yes.

Q   And so he was not allowed to use the women's room because he looks like a man; right?

A   He was not going to be required to use the women's restroom.

Page 321

Q   So he was free -- looking as an adult male, he was free to go into the women's restrooms at Clark County School District facilities?  Are you saying that?

A   Sure.

Q   What could go wrong?

A   I don't understand.

MR. YOUNG: Objection.  Calls for speculation.  Also, standing objection.  Outside the scope.

BY MS. ENGLAND:

Q   Did the School District take into account what might go wrong if Brad Roberts, who looks like a male, uses women's restroom facilities?

MR. YOUNG: Standing objection.

BY MS. ENGLAND:

Q   And if so, who took it into account, and what did they conclude?

MR. YOUNG: Standing objection.

THE WITNESS: Yes, I believe we took into -- well, first of all, the School District's instructions to Officer Roberts was that he would not be required to use the female-identified restroom.  We were fully aware that if, with his male appearance, if he used that, there could be some concerns by other occupants of the restroom that a male was using the

Page 322

1 female-identified restroom.  And then we would have to
2 explain or deal with those people as to that, you know,
3 that individual is not doing anything wrong or
4 inappropriate by doing that.
5 BY MS. ENGLAND:
6    Q  So in June of 2012 at the conciliation
7 meeting, the School District did not change in any way,
8 shape, or form its practice and the ban on Brad Roberts
9 that was then in existence?
10   A  No.
11   Q  That's "no," they didn't change?
12   A  No, they did not change.
13   Q  So whatever the ban was, as confusing as
14 apparently now it is, whatever the ban was, it was to
15 continue?
16   A  Yeah, I don't agree that it was necessarily
17 confusing, but, yes, what the District's position as
18 communicated to Officer Roberts back in November of
19 2011 --
20   Q  By you?
21   A  -- yes, continued through June of 2012.
22   Q  And this is despite now the Macy decision and
23 the finding by the Nevada Equal Rights Commission that
24 it was illegal under Nevada law as well?
25       MR. YOUNG:  Objection.  Argumentative.  And

Page 323

1 standing objection.
2       THE WITNESS:  I don't agree that those --
3 that's what those cases say, but -- or that's what
4 those authorities say, but, yes, despite the Macy
5 decision and the Nevada Equal Rights determination, the
6 District's position remained the same.
7    Q  Okay.  We're done with that.  We'll have
8 Exhibit 37.
9       (Exhibit 37 marked).
10      MS. ENGLAND:  Please put in the record that 36
11 is blank.  That way it's accounted for.
12 BY MS. ENGLAND:
13   Q  Mr. Okazaki, when did you first see the notice
14 by the Nevada Equal Rights Commission to the Clark
15 County School District in which the NERC notified the
16 District that it was going to conduct a public hearing
17 on the discrimination which the Nevada Equal Rights
18 Commission believed the School District was committing
19 against Officer Roberts?
20   A  In the same meeting with Scott Greenberg and
21 legal counsel a few days before the last deposition.
22   Q  So you did not see this notice until June of
23 2016?
24   A  Correct.
25   Q  Now, when the Nevada Equal Rights Commission

Page 324

1 issued its determination back in May of 2012, did the
2 District announce that determination, and that it had
3 been found to believe -- that the Nevada Equal Rights
4 Commission believed it was committing illegal
5 discrimination?
6    A  Announce to who?
7    Q  The School District --
8    A  No.
9    Q  -- employees?
10   A  No.
11   Q  Did someone make a decision that the people
12 involved -- such as yourself, Captain York, Lieutenant
13 Young, Chief Ketsaa -- that they would not be told that
14 the policy and the practice that they were enforcing
15 against Brad Roberts had been found to be illegal by
16 the Nevada Equal Rights Commission?
17       MR. YOUNG:  Standing objection.
18 Mischaracterizes the nature of the determination.  You
19 can answer.
20       THE WITNESS:  There was no decision not to
21 inform somebody.
22 BY MS. ENGLAND:
23   Q  Did you discuss this with Mr. Greenberg to be
24 prepared to speak here today?
25       MR. YOUNG:  Standing objection.

Page 325

1 BY MS. ENGLAND:
2    Q  Are you just espousing this?
3    A  I am aware that we did not -- the Clark County
4 School District did not announce to anybody that --
5 announce the NERC determination --
6    Q  I already asked you that question, and you
7 already said --
8    A  Let me finish.  Let me finish.
9       MS. ENGLAND:  No --
10      MR. YOUNG:  Go ahead and finish.
11      MS. ENGLAND:  No, Mr. Okazaki.  You need to --
12      MR. YOUNG:  Go ahead and speak over her.
13      THE WITNESS:  Yes, I need to answer the
14 question.
15 BY MS. ENGLAND:
16   Q  Mr. Okazaki --
17   A  Your question was --
18   Q  -- my question was:  Who made the decision,
19 not --
20   A  So my answer was not that there was no
21 decision to not announce NERC's determination.  I'm
22 aware that there was no announcement of the
23 determination.  And so what I'm saying is that the
24 people involved -- Scott Greenberg, Tom Rodriguez, the
25 superintendent -- who made the decision on how to

Page 326

1  respond to the determination did not make an
2  announcement, or did not make a decision to announce.
3  I don't think there was a decision to not announce.  A
4  decision either way was not made.
5      Q   And who made the decision to not make a
6  decision?
7      A   Scott Greenberg, Tom Rodriguez -- and
8  actually, I don't know if the superintendent was -- did
9  not -- there's no -- the superintendent was not
10 involved in any decision or non-decision to announce
11 NERC's determination to anybody.
12     Q   Okay.  So tell us about your conversation in
13 the last two weeks when you first found out that there
14 was a Nevada Equal Rights Commission determination, and
15 you were preparing yourself to come here today as the
16 30(b)(6) Designee, tell us what Scott Greenberg told
17 you about the decision to not announce that the Nevada
18 Equal Rights Commission had found against the School
19 District and that its practice, its ban on Brad Roberts
20 was illegal.
21     MR. YOUNG:  Standing objection.  Also object
22 that the question mischaracterizes the effect and
23 nature of the determination.  You can answer.
24     THE WITNESS:  I did not say that there was a
25 decision not to announce.  I specifically said that no

Page 327

1  decision was made one way or the other.
2  BY MS. ENGLAND:
3      Q   My question was:  Tell us what Mr. Greenberg
4  told you that allows you to come here today and testify
5  to what you just said as the 30(b)(6) Designee.
6      A   Because I asked him, "What did the District do
7  in response to the determination?"  And he said, "The
8  only thing that we did was write the responsive
9  letter."
10     Q   Okay.  So now turning to Exhibit 37, do you
11 have that in front of you?
12     A   I do.
13     Q   You said the first time you saw this was two
14 weeks ago in preparing for your deposition?
15     A   Yes.
16     Q   And this says, "Statement of matters
17 asserted," is that -- I'll go down to line 24 -- "At
18 the November 14, 2011, meeting, Roberts was told that
19 he could not use the male restroom until he provided
20 legal documentation that he changed his gender from
21 female to male."
22     That is an accurate statement of what the
23 School District told the Nevada Equal Rights Commission
24 what the ban was comprised of; isn't that correct?
25     A   I don't know if it -- I don't -- I can't agree

Page 328

1  with the term "legal documentation."  I believe he was
2  told that unless he provides evidence that he had
3  changed his biology, he would not be allowed to use the
4  male restroom.
5      Q   And then the Nevada Equal Rights Commission
6  goes on to base its Notice of Administrative Hearing of
7  the practices that it considers illegal to say -- and I
8  quote -- "A second meeting was held on November 22,
9  2011, during which CCSD" -- you need to go onto the
10 first page because that's where I am -- "during which
11 CCSD rejected Roberts' request to use the male restroom
12 because he was still biologically female and told him
13 that he could not use the male restroom until he had a
14 genital," open paren, "sex change," end paren,
15 "procedure."
16     That is an accurate statement of the CCSD's
17 position?
18     A   Yes.
19     Q   And that was the position which you
20 articulated to Brad Roberts on November 22nd?
21     A   Yes.
22     Q   And that was the position of the department
23 unchanged in June of 2012?
24     A   Yes.
25     Q   And it was the position as well unchanged in

Page 329

1  September of 2012 when this notice was issued?
2      A   Yes.
3      Q   And were you -- then it goes on to say, on the
4  second page:
5      "After an investigation, the Commission's
6  administrator issued a determination on May 3, 2012,
7  that probable cause supported the change of
8  discrimination based on gender identity or expression.
9  CCSD's policy" -- you're saying it wasn't a policy, it
10 was just a position, right?
11     A   Correct.
12     Q   -- "requiring Roberts to prove his conformity
13 with CCSD's expectation regarding the male anatomy in
14 order to use the men's bathrooms violated Nevada's
15 anti-discrimination law."
16     Do you see that?
17     A   I do.
18     Q   And the School District didn't agree with
19 that?
20     A   Correct.
21     Q   And now it is here four months later
22 continuing to do what the NERC has said the illegal
23 under Nevada law; right?
24     A   Yes.
25     MR. YOUNG:  Objection.  Argumentative.

Page 330

BY MS. ENGLAND:

Q   And additionally, it is doing what the EEOC has declared is illegal under federal law?

A   No.

Q   And CCSD's position was that if Roberts showed that he had a penis, then he would be allowed to use the men's restroom?

MR. YOUNG:  Objection.  Mischaracterizes the facts in evidence.  You can answer.  It's argumentative, also.

THE WITNESS:  I'm not -- yeah, I -- we never used the word "penis," and I'm only saying that because I'm not sure what constitutes male anatomy.  And so we would just rely on whatever documentation from a medical provider, you know, the medical documentation indicating that they were anatomically male.  That's all we would have required.  That's all we needed.

BY MS. ENGLAND:

Q   Nonetheless, in September of 2012, the School District's position at odds with declared federal law by the EEOC, and declared Nevada law declared by the Nevada Equal Rights Commission, was that Brad Roberts had to show having male anatomy in order to use the men's room at the School District facilities?

MR. YOUNG:  Standing objection.

Page 331

Argumentative.  You can answer.

THE WITNESS:  Yeah, without agreeing to the preface of that that it's in contrary to EEOC law, it's definitely contrary to NERC's determination, yes, CCSD's position was that Officer Roberts was not going to be allowed to use the male restroom until his anatomy matched that gender.

BY MS. ENGLAND:

Q   And what do you know about Officer Roberts' anatomy today?

MR. YOUNG:  Objection.  Standing objection.

THE WITNESS:  I do not know that -- I do not know that his gender, his anatomy has changed.

BY MS. ENGLAND:

Q   And he's allowed to use the men's restroom, is he not?

A   Yes.

Q   And he's been allowed to use the men's restroom for over three years?

A   Approximately, yes.

MS. ENGLAND:  I think this would be a good time to take a quick lunch break.  Then we'll go on to No. 6.

(Lunch recess taken from 12:15 to 1:10 p.m.)

\\\

Page 332

MS. ENGLAND:  What time is it?

THE REPORTER:  1:10.

BY MS. ENGLAND:

Q   Mr. Okazaki, you recognize and accept that you're still under the oath that you took at the beginning of today?

A   Yes.

Q   Great.

We'll now move on to Subject No. 6, which is:

"CCSD's decision to change the October-November 2011 restroom policy announced and imposed on Plaintiff, and the reason for the policy change, the participation of all persons involved in the decision to change the policy, the wording, content, complication, dissemination, implementation, and enforcement of the policy, and the decision of how and when to communicate the new policy to Plaintiff and why."

Are you prepared to be the CCSD Designee on that subject?

A   Yes.

Q   You were not personally involved in those matters back in the 2011 time frame, were you?

A   No.

Q   In fact, it was Mr. Greenberg, was it not,

Page 333

who, on behalf of the Clark County School District in-house legal counsel who was involved in those matters from your office?

A   Yes.

Q   And you have indicated that the policy that's referred to here is not actually a policy, it was a position?

A   Correct.

Q   You used the term "policy" as a term of art in the School District lingo, which is, a policy is something which is passed by the School Board and issued as a, quote, unquote, policy?

A   Yes.

Q   But in preparing yourself today, you understood that that term was used in its more layperson's sense, which was the policy that you're here prepared to testify about, or which is the subject matter of No. 6 is the policy which banned Officer Brad Roberts from using, and only Brad Roberts, from using male restroom facilities at Clark County School District facilities for the year October 2011 to October 2012?

A   Yes.

Q   And so we should call it the District's position, as you've articulated it; right?

Page 334

1    A   Yes.
2    Q   So who made the decision to change the
3  District's position which banned Officer Brad Roberts,
4  and had banned Officer Roberts from using male restroom
5  facilities at Clark County School District from October
6  2011 until the ban was lifted in October 2012?
7    A   The people involved in that decision was Scott
8  Greenberg, Carlos McDade, who was the general counsel,
9  and I believe -- I'm trying to think -- so
10 Superintendent of Instruction, which I think -- I
11 believe it was Dr. Barton.
12   Q   Doctor whom?
13   A   Barton.
14   Q   He or she was the associate superintendent for
15 what?
16   A   For the Instruction Unit.
17   Q   Who initiated the idea that the District's
18 position, which was the year-long prohibition for Brad
19 Roberts from using any male restroom facilities, who
20 initiated or started the possibility that it was going
21 to be changed?
22   A   Scott Greenberg.
23   Q   When did Mr. Greenberg do that?
24   A   After receipt of the notice of public hearing
25 from the Nevada Equal Rights Commission.

Page 335

1    Q   Did you discuss this with Mr. Greenberg
2  recently to prepare yourself to come here today and
3  speak on No. 6?
4    A   Yes.
5    Q   What did Mr. Greenberg tell you when it was
6  that he decided that the policy should be -- the
7  position should be changed?
8    A   That upon receipt of the notice of public
9  hearing, and filing the motion to dismiss, and getting
10 the response, that they were not going to consider the
11 motion, and that it was going to be forward with a
12 public hearing, that was the -- that was what triggered
13 the ultimate decision to change the position.
14   Q   Well, if you look back at Exhibit 37, which I
15 believe might be on the very top --
16   A   Okay.
17   Q   The Deputy Attorney General who mailed this
18 out indicated that it was mailed on September 6th,
19 2012.  Do you see that --
20   A   I do.
21   Q   -- on the last page, EEOC 012?
22   A   Yes.
23   Q   When did Mr. Greenberg receive this since it
24 is addressed to him?
25   A   I did not have the specific date.

Page 336

1    Q   Did you ask him in order to be prepared here
2  today to testify about Subject No. 6?
3    A   No.
4    Q   Did you and Mr. Greenberg discuss this notice
5  within the last two weeks as you were preparing to be
6  the Subject No. 6 Designee?
7    A   Yes.
8    Q   Did you have it in front of you?
9    A   Yes.
10   Q   So did you ask Mr. Greenberg, "So if they
11 mailed it, Scott, when did you get it, and when did you
12 start formulating the idea that the District needed to
13 change its position?"
14   A   No.
15   Q   Was the District -- did the District hope to
16 avoid a public hearing by changing its policy?
17   A   Yes.
18   Q   And did you and Mr. Greenberg discuss how
19 unusual it was that the Nevada Equal Rights Commission
20 was, in fact, even holding a public hearing?
21   A   Yes, yes.  It was -- we considered it to be
22 unusual.  We considered it to be inappropriate.  We
23 filed a motion to dismiss, and communicated with the
24 Attorney General's Office.  But, yes, so we thought it
25 was an unusual step.

Page 337

1    Q   The way that this is styled, it is the Nevada
2  Equal Rights Commission versus -- it's the
3  Administrator versus the School District.  It's not the
4  charging party, is it?
5    A   Correct.
6    Q   So this is the Nevada Equal Rights Commission
7  bringing Clark County School District to task for what
8  the Nevada Equal Rights Commission considers an illegal
9  position as it is being enforced against Brad Roberts?
10       MR. YOUNG:  I'll object.  Lack of foundation
11 to the extent it calls for speculation as to what that
12 document means.
13       THE WITNESS:  Yes, I believe this stems from
14 the Nevada Equal Rights determination that the
15 District's restrictions on Officer Roberts constituted
16 unlawful discrimination, and then Clark County School
17 District's position that it was going to stay with its
18 position.  And so they were going to -- but my
19 understanding of the public hearing was that they were
20 going to go to a public hearing to decide whether it
21 should -- the underlying case and concerns should go to
22 the public hearing, or should it go to a Hearing
23 Officer.  But, yes, it was all based on the idea that
24 the Nevada Equal Rights Commission believed that the
25 restriction reimposed on Officer Roberts was unlawful

Page 338

1  discrimination.
2  BY MS. ENGLAND:
3      Q    The distinction you've made about whether this
4  would go before the Commissioner or a Hearing Officer,
5  that was already decided by the Nevada Equal Rights
6  Commission on July 31st, 2012, when the Commission
7  itself voted to conduct a public hearing about what it
8  considered to be the illegal discrimination being
9  committed, then being committed by the Clark County
10  School District.  Did Mr. Greenberg tell you he
11  attended that meeting and heard the decision of the
12  Commission to not go to a Hearing Officer, but that
13  this would be held before the Nevada Equal Rights
14  Commission?
15      A    Yes.
16      Q    Did Mr. Greenberg tell you that this is a
17  matter of -- was a matter of great import to the Nevada
18  Equal Rights Commission, which was demonstrated by the
19  fact that they're not sending us to a Hearing Officer,
20  they're going the fifth largest school district in the
21  country to a public hearing because the Commission
22  claims that the school district is, in fact, still
23  committing illegal discrimination?  Did you and
24  Mr. Greenberg discuss that recognition?
25          MR. YOUNG:  Objection to the question to the

Page 339

1  extent that it's compound; and, number two, that it
2  requires speculation on the witness' behalf as to what
3  the Nevada Equal Rights Commission was thinking.
4          If you can answer that question, go ahead.
5          THE WITNESS:  No.
6  BY MS. ENGLAND:
7      Q    Well, in your previous answer, you said
8  something about a Hearing Officer versus the
9  Commission.  Who gave you that information?
10      A    It's in the notice.
11      Q    And did you and Mr. Greenberg discuss the fact
12  that this issue was so important to the Nevada Equal
13  Rights Commission as demonstrated by the meeting
14  Mr. Greenberg attended, that the Commission itself
15  voted to conduct a hearing?
16      A    We did not discuss your assertion that it was
17  so important to the Nevada Equal Rights Commission.
18      Q    Did you look at the minutes of the meeting on
19  July 31st of the Nevada Equal Rights Commission --
20      A    No.
21      Q    -- so that you could see what the Nevada Equal
22  Rights Commission said about why they were proceeding
23  against the fifth largest school district in the
24  country for illegal discrimination?
25          MR. YOUNG:  Standing objection.

Page 340

1          THE WITNESS:  I did not look at the minutes.
2  BY MS. ENGLAND:
3      Q    Did you not believe that that was appropriate
4  and necessary for you to come here today and testify as
5  the 30(b)(6) Designee?
6      A    No.
7      Q    Not important to you as -- is it as
8  unimportant to you to make that preparation as it was
9  for the Clark County School District?
10          MR. YOUNG:  Objection.  Argumentative.
11          THE WITNESS:  I don't understand the question.
12  BY MS. ENGLAND:
13      Q    What did Mr. Greenberg convey to you about the
14  likelihood that the Nevada Equal Rights Commission was
15  going to vote and find again that the Clark County
16  School District was committing illegal discrimination?
17          MR. YOUNG:  Objection to the question as to
18  the use of the term "again."
19          THE WITNESS:  I don't think the District had
20  any doubt that the Nevada Equal Rights Commission would
21  maintain its position on the issue.  We talked about
22  the fact that they were going to go to a public
23  hearing.  So that's the information that I'm bringing
24  on behalf of the District, that we understood they were
25  going to go to a public hearing, we understood that

Page 341

1  there would be no reason for them to change their
2  position on the issue.
3  BY MS. ENGLAND:
4      Q    When you say that the School District
5  understood that there was no reason for the Commission
6  to change its position, does that mean that the School
7  District had no evidence to present at the upcoming
8  public hearing which would show or sway the Commission
9  that they weren't committing illegal discrimination?
10      A    No.
11      Q    What evidence did you find out from
12  Mr. Greenberg in preparing you to come here today --
13  what evidence was the School District going to present
14  at this commission which would show that they were not
15  committing illegal discrimination under Nevada law?
16      A    We never came to a conclusion or a decision as
17  to what evidence or arguments we would present at the
18  Nevada Equal Rights Commission public hearing.
19      Q    Well, in July and September, what evidence did
20  the School District have that it intended to present at
21  the Nevada Equal Rights Commission hearing that would
22  show that they were not discriminating against Brad
23  Roberts?
24          MR. YOUNG:  Asked and answered.
25          THE WITNESS:  We did not come to a decision as

Page 342

1  to what would be presented at that hearing.
2  BY MS. ENGLAND:
3     Q   I didn't ask you if you came to a decision
4  about what would be presented.  I said, what evidence
5  did the School District have, not what --
6        MR. YOUNG:  You said what evidence does the
7  School District have that it intended to present at the
8  hearing, is the question that you asked?  And he had
9  already answered that question.
10       MS. ENGLAND:  So, fine.
11 BY MS. ENGLAND:
12    Q   In August of 2012, what evidence did the
13 School District have --
14       MR. YOUNG:  Standing objection.
15 BY MS. ENGLAND:
16    Q   -- that it was not committing illegal Nevada
17 discrimination?
18       MR. YOUNG:  Standing objection.  Asked and
19 answered.
20       THE WITNESS:  The legal authority that we had
21 always presented.
22 BY MS. ENGLAND:
23    Q   Mr. Okazaki, you're a lawyer; right?
24    A   Yes.
25    Q   You know the difference between evidence and

Page 343

1  authority?
2     A   Sure.
3     Q   So what evidence, what tangible evidence did
4  the School District have in August of 2012, not what
5  legal authority, but what evidence as perhaps suggested
6  by that legal authority?
7        MR. YOUNG:  Standing objection.
8        THE WITNESS:  Evidence of what was stated to
9  Officer Roberts what the position was, what was
10 communicated to him.  I think those would be the
11 relevant facts relating to the issue.
12 BY MS. ENGLAND:
13    Q   My question was:  What evidence?
14    A   Yeah, those are all evidence -- we would have
15 evidence of what was said in the meeting of November
16 22nd, what was communicated to him, what the position
17 was, what his restrictions were.
18    Q   So it would be -- the evidence would be the
19 documents that have been presented and you've testified
20 about; right?
21    A   Some of them.
22       MR. YOUNG:  Standing objection.
23 BY MS. ENGLAND:
24    Q   And you never put the documents -- I'm sorry.
25       You never committed in writing to exactly what

Page 344

1  the District's position was and sent it to Officer
2  Roberts, did you?
3     A   No.
4     Q   So that enables you to come here today, for
5  example, this morning, and testify to a position, a
6  part of that position which is completely at odds with
7  what every other witness has testified to?
8        MR. YOUNG:  Objection.  Argumentative.
9        THE WITNESS:  No.
10 BY MS. ENGLAND:
11    Q   Did you purposefully not commit the position
12 as you articulated it to Officer Roberts on November
13 22nd, 2011, so that you would be able to argue it
14 differently later on?
15    A   No.
16       MR. YOUNG:  Objection.  Argumentative.  Go
17 ahead and answer again.
18       THE WITNESS:  No.
19 BY MS. ENGLAND:
20    Q   And you never wrote down or took any notes in
21 any of the meetings that you attended that had to do
22 with Officer Roberts and this year-long ban of his use
23 of male restroom facilities at Clark County School
24 District?
25       MR. YOUNG:  Standing objection.

Page 345

1        THE WITNESS:  No.
2  BY MS. ENGLAND:
3     Q   So back to Subject No. 6:  You said that --
4  did you have a discussion, did Mr. Greenberg tell you
5  who at the Instruction Unit he directed to create the
6  new policy which was to come out?
7     A   No, there was no instructions to create a new
8  policy.
9     Q   Well, how did -- there was no adult restroom
10 policy in September of 2012; isn't that right?
11       MR. YOUNG:  Standing objection.
12       THE WITNESS:  I don't understand the question.
13 BY MS. ENGLAND:
14    Q   Sure.  Let's take it in August of 2012, there
15 was no policy at the School District about adult
16 restroom use?
17       MR. YOUNG:  Standing objection.
18       THE WITNESS:  A formal policy?  No.
19 BY MS. ENGLAND:
20    Q   And you're here on the subject of the new
21 policy that comes out.  Do you understand that?
22    A   No.
23       MR. YOUNG:  No.  Topic No. 6 dealt with what
24 you called a restroom policy announced and imposed on
25 Plaintiff in October and/or November of 2011.  That was

Page 346

1  the policy that No. 6, Subject 6 is about.  And
2  then any decision to change that -- quote, unquote --
3  policy that we have defined as a position that was
4  taken with regard to Officer Roberts' restroom use.
5  That is the topic that you identified for No. 6.
6  You're talking about something completely different
7  now, Kathy.
8  BY MS. ENGLAND:
9      Q   Mr. Okazaki, you have to answer my questions.
10     A   I'm answering every question you present to
11  me.
12     Q   Great.  Let's continue to do so then, okay?
13     A   Sure.
14     Q   So in August of 2012, the School District --
15  and you've already talked about this Instruction Unit
16  working in connection with Mr. Greenberg, you've said
17  that they worked up a policy.  And you identified
18  Dr. Barton, I believe it was, as the head of the
19  Instruction Unit.  I asked you who initiated the idea
20  that there was going to be a new position imposed on
21  Brad Roberts.  And you said the initiation came from
22  Scott Greenberg after the receipt of the notice of the
23  hearing, and instructions went to the Instruction Unit
24  to do so.
25     A   No, that's not what I said.

Page 347

1      Q   Okay.  So what did you say?
2      A   I said -- you asked me who was involved --
3      Q   Why don't you tell me what you said?
4      A   I don't remember what I said.  I know I didn't
5  say that.
6      Q   Okay.  Tell me what you said.
7      A   Actually, I'm trying to repeat what I said.  I
8  said that the decision to change the District's
9  position in regard to Officer Roberts came after the
10  notice of -- after we realized that the matter was
11  going to go to a public hearing, that it was initiated
12  by Scott Greenberg, and that Carlos McDade and, I
13  believe Dr. Barton was involved in that decision.
14  That's all I said.
15     Q   What was Dr. Barton's -- you said Dr. Barton
16  was the head of the Instruction Unit at the time?
17     A   Correct.
18     Q   What was Dr. Barton's involvement?
19     A   His involvement was to memorialize in writing
20  a longstanding policy in regard to restroom use at
21  school sites.  If I said "policy," I misspoke.  A
22  longstanding practice or rule regarding restroom use at
23  school sites.
24     Q   And you say that was Dr. Barton at the
25  Instruction Unit who was tasked with that, by whom?

Page 348

1      A   Scott Greenberg asked the Instruction Unit to
2  confirm in writing that this was our -- this was the
3  rule at school sites.
4      Q   And how did Scott Greenberg ask the
5  Instruction Unit to confirm in writing that that was
6  the practice at school sites?  By e-mail?
7      A   I don't know.
8      Q   Did you ask Mr. Greenberg how he did that so
9  you could be prepared to come here today and tell us?
10     A   No.
11     Q   And when did Mr. Greenberg do that?
12     A   Some time before the written confirmation of
13  the rule was issued, and after the Exhibit 37, the
14  notice of the administrative hearing.
15         MR. YOUNG:  I'm going to impose the standing
16  objection on that question.  Sorry that was late.
17  BY MS. ENGLAND:
18     Q   So some time after the September 6th, 2012,
19  notice but before the issuance of the actual -- you
20  first stalled it a "policy," now you've downgraded it
21  to "practice" or "rule."
22     A   Correct.
23     Q   And before the practice or rule was issued --
24     A   In writing.
25     Q   -- in writing, there was no written practice

Page 349

1  or rule regarding school adult restroom use, was there?
2      A   No.
3         MS. ENGLAND:  I'll show you what we'll have
4  marked as Exhibit 39.
5             (Exhibit 39 marked)
6  BY MS. ENGLAND:
7      Q   Mr. Okazaki, in connection with your
8  preparation on Subject No. 6, you did not ask
9  Mr. Greenberg to see the e-mail or other communication
10  that you say occurred some time after September 6th but
11  before October 1st where he asked Dr. Barton or
12  instructed -- excuse me -- asked Dr. Barton to have the
13  Instruction Unit confirm in writing what was the
14  practice or the rule about school adult restroom use?
15         MR. YOUNG:  Standing objection.
16         THE WITNESS:  Correct.
17         MS. ENGLAND:  And, Mr. Young, we'll ask the
18  School District to produce that e-mail or other
19  communication or memorialization about exactly when
20  Scott Greenberg asked Dr. Barton of the Instruction
21  Unit to confirm in written form the school adult
22  restroom use practice or rule.
23         MR. YOUNG:  On what basis?
24         MS. ENGLAND:  On the basis of this witness
25  should have been prepared to testify to that.

Page 350

1    MR. YOUNG: I'll disagree.  And I'll reimpose
2    the standing objection.
3    BY MS. ENGLAND:
4        Q    So you can't pinpoint the date when Scott
5    Greenberg did it?
6        A    I cannot.  I can't even pinpoint whether it
7    was Dr. Barton, or -- now that I'm looking at this
8    document, it refreshes my recollection that Pat
9    Skorkowsky at the time was actually the deputy
10   superintendent over instruction, and Mike Barton was
11   the associate superintendent.  All I know is that
12   the --
13       Q    What did Mr. Greenberg tell you?
14       A    -- communication went to the Instruction Unit
15   because the Instruction Unit was the one who issued the
16   written confirmation of the school rule.
17       Q    Who told you that the communication went from
18   Scott Greenberg to the Instruction Unit?
19       A    Scott Greenberg.
20       Q    And Mr. Greenberg told you this when?
21       A    During our meeting in preparation for the
22   first deposition.
23       Q    Two weeks ago?
24       A    Whatever date that was.
25       Q    In the month of June?

Page 351

1        A    Yes.
2        Q    Of 2016?
3        A    Yes.
4        Q    When Mr. Greenberg, preparing you to testify
5    here today as the 30(b)(6) Designee, told you that he
6    communicated with someone in the Instruction Unit, did
7    you ask him the follow-up questions:  Did you ask him:
8    When did you communicate?  Who did you communicate?
9    What did you tell them?  Can I see the e-mail?  Has it
10   been memorialized?
11       Did you ask Mr. Greenberg any of those
12   follow-up questions so that you could come here today
13   and be fully prepared to tell us when Mr. Greenberg
14   undertook initiating the -- what ended up being the
15   written School Adult Restroom Rule?
16       MR. YOUNG:  Standing objection.
17       THE WITNESS:  Yes.  I asked him, what was the
18   communication?  What did you ask the Instruction Unit
19   to do?  What was their involvement in this?  And he
20   indicated that there was a need to have evidence that
21   there was this longstanding rule, and the intent to put
22   it in writing.  And so they -- he communicated that to
23   the Instruction Unit.  The Instruction Unit said, sure,
24   fine.  They drafted that up, and they distributed it.
25   /////

Page 352

1    BY MS. ENGLAND:
2        Q    So did you ask Mr. Greenberg in preparing to
3    come here today, did you ask him to see the e-mail or
4    the other communication he used to communicate to the
5    Instruction Unit that they need to have evidence of
6    this longstanding rule?
7        A    No.
8        Q    Did anyone tell you it was your obligation in
9    order to be able to speak to this today to go find that
10   out, to take a look at those documents, or to otherwise
11   ask Dr. Barton, or now Superintendent Skorkowsky, if
12   they indeed were at the receiving end of the
13   instruction?
14       MR. YOUNG:  Standing objection.
15       THE WITNESS:  No.
16   BY MS. ENGLAND:
17       Q    Did you ask Mr. Greenberg, who was providing
18   you with information so that you could be the 30(b)(6)
19   Designee, did you ask him how he knew what this
20   longstanding rule or practice was, where did he get the
21   information about its existence even if it wasn't
22   written?
23       MR. YOUNG:  Standing objection.
24       THE WITNESS:  Yes.  He got that from the
25   Instruction Unit.  So he received from the Instruction

Page 353

1    Unit what the rule would be at schools in regard to
2    adult restroom use.  And then he said he asked them,
3    "Will you put that in writing so we will have evidence
4    of that longstanding rule in writing?"
5    BY MS. ENGLAND:
6        Q    So when you say "he," you're talking about
7    Mr. Greenberg received from the Instruction Unit what
8    the rule was, and then Mr. Greenberg asked the
9    Instruction Unit to put it in writing?
10       A    Correct.
11       MR. YOUNG:  Standing objection.
12   BY MS. ENGLAND:
13       Q    Who did Mr. Greenberg, and when did
14   Mr. Greenberg receive this information from the
15   Instruction Unit verbally that told him what the rule
16   was --
17       MR. YOUNG:  Standing objection.
18   BY MS. ENGLAND:
19       Q    -- before he asked them to put it in writing?
20       A    After receipt of the notice of public hearing,
21   and prior to the distribution of it in writing.
22       Q    Who did Mr. Greenberg talk to at the
23   Instruction Unit who verbally told him what the rule
24   was?
25       MR. YOUNG:  Standing objection.

Page 354

1    THE WITNESS: I don't know.
2  BY MS. ENGLAND:
3    Q   Did you not know it was your obligation to
4  come here today and to testify to that?
5    MR. YOUNG: Standing objection.
6    THE WITNESS: Yeah, I do not understand that
7  to be my obligation.
8  BY MS. ENGLAND:
9    Q   Did you ask Mr. Skorkowsky?
10   A   No.
11   Q   Did you ask Mr. Barton?
12   A   No.
13   Q   Did you ask anyone in the Instruction Unit?
14   A   Ask them what?
15   Q   The subject we were just talking about: Who
16 got the call from Scott Greenberg where Scott Greenberg
17 asked the Instruction Unit what the school -- adult
18 school restroom use rule was?
19   A   I did not ask anybody that question.
20   Q   And despite the fact that two weeks ago
21 Mr. Greenberg told you that he called the Instruction
22 Unit, you didn't ask him who he talked to who told him
23 what the rule was?
24   MR. YOUNG: Standing objection.
25   THE WITNESS: He didn't tell me he called.  He

Page 355

1  understood -- he related to me that he received notice
2  from the Instruction Unit -- and by "notice," I don't
3  mean anything kind of formal -- that he received
4  information from the Instruction Unit as to the
5  unwritten rule of adult restroom use at school sites,
6  and then he subsequently asked them to put that in
7  writing.
8  BY MS. ENGLAND:
9    Q   And he didn't tell you -- Scott Greenberg
10 didn't tell you who he got this information from at the
11 Instruction Unit?
12   A   No.
13   MR. YOUNG: Standing objection.
14 BY MS. ENGLAND:
15   Q   And he didn't tell you when he got this
16 information from the Instruction Unit?
17   MR. YOUNG: Standing objection.
18   THE WITNESS: No.
19 BY MS. ENGLAND:
20   Q   And you didn't undertake any additional
21 preparation measures to find out who told Scott
22 Greenberg and when they told him?
23   A   No.
24   Q   And similarly, you didn't find out when Scott
25 Greenberg told them and who he told in the Instruction

Page 356

1  Unit to put it together in a written rule?
2    MR. YOUNG: Standing objection.
3    THE WITNESS: No.
4  BY MS. ENGLAND:
5    Q   So now having looked at Exhibit 39, which was
6  revised on September 13th, 2012, of the people on here,
7  you've identified that possibly it was Pat Skorkowsky,
8  the deputy superintendent, that Mr. Greenberg --
9  although you didn't find out -- that Mr. Greenberg
10 might have gotten the information from, or it might
11 have been Mike Barton, the associate superintendent?
12   MR. YOUNG: Standing objection.
13 BY MS. ENGLAND:
14   Q   Anybody else on here?
15   MR. YOUNG: Standing objection.  Also,
16 argumentative.
17   THE WITNESS: No, those are the two parties
18 that I believe -- either one of those were the ones
19 that were involved.
20   MS. ENGLAND: Okay.  We're done with that.
21 Here's 40.
22   (Exhibit 40 marked)
23 BY MS. ENGLAND:
24   Q   Mr. Okazaki, we've given you what's been
25 marked as Exhibit 40.  Do you know what this is?

Page 357

1    A   Yes.
2    Q   What is it?
3    A   This is a correspondence that is distributed
4  to our alternative program principals, as well as
5  copied to the assistant elementary school principals.
6    Q   Is it like a newsletter?
7    A   Yes, with a -- not a newsletter, but, yes, an
8  informational communication about various issues and
9  topics.
10   Q   It appears that this goes out to elementary
11 schools on a weekly basis?
12   A   Yes.  Yes.
13   Q   See where it says, "Subject: Elementary
14 Schools - Weekly" --
15   A   Right.
16   Q   -- "September 21, 2012"?
17   A   Correct.
18   Q   Do you see that?
19   A   Yes.
20   Q   Juanita Cha Williams, is Ms. Williams a School
21 District official?
22   A   No, I don't believe she's an official.  I
23 believe she's a support staff employee who is
24 responsible for just actually putting this into an
25 InterAct, and then e-mailing it to these groups of

Page 358

1 people.
2 Q   So does Ms. Williams work for a School
3 District official who tells her or oversees what's
4 supposed to go into these newsletters?
5 A   Yes.
6 Q   Who does she work for?
7 A   I don't know her immediate supervisor.
8 Q   But in general?
9 A   Yeah, Instruction Unit.  This comes out of the
10 Instruction Unit.
11 Q   So does Ms. Williams work for the Instruction
12 Unit?
13     MR. YOUNG:  Standing objection.
14     THE WITNESS:  Yes, I believe she does.
15 BY MS. ENGLAND:
16 Q   So this indicates -- if you look on the second
17 page, CCSD 001911 --
18 A   Okay.
19 Q   -- it's listed under "Must Know."  Do you see
20 that?
21 A   Yes.
22 Q   "School Adult Restroom Use"?
23 A   Yes.
24 Q   And it says, "Please see the attachment titled
25 School Adult Restroom Use."  Is that the restroom use

Page 359

1 rule or practice of which you were speaking, which is
2 what came out of the Instruction Unit in September of
3 2012 after Mr. Greenberg initiated it being reduced to
4 writing?
5     MR. YOUNG:  Standing objection.
6     THE WITNESS:  Yes.
7 BY MS. ENGLAND:
8 Q   And this adult restroom use, you're saying
9 from your discussion with Mr. Greenberg, was nothing
10 more than committing what was the rule or practice to
11 writing?
12 A   Yes.
13 Q   Didn't change anything?  It's not a policy.
14 It didn't change anything.  It was just that now the
15 Instruction Unit was issuing it in written form what
16 you, the School District, understood to be the actual
17 practice existing in the District at the time?
18     MR. YOUNG:  Standing objection.
19     THE WITNESS:  Yes.
20 BY MS. ENGLAND:
21 Q   And this says --
22     MR. YOUNG:  I'm sorry.  Before you ask another
23 question, I need to take a break.
24     MS. ENGLAND:  Of course.
25     (Recess taken from 1:44 to 1:50)

Page 360

1 BY MS. ENGLAND:
2 Q   Mr. Okazaki, we're on Exhibit 40, on the page
3 2 of the exhibit which is 1911.
4 A   Okay.
5 Q   It says, "Please see the attachment entitled
6 School Adult Restroom Use."  Do you see that the
7 alternative and elementary school principals are being
8 told that this is a new entry in the Instruction Unit
9 Administrative Reference?
10 A   Yes.
11 Q   Does that mean this is the first time this
12 rule is being issued in written form?
13 A   No.  That means that it's the first time that
14 it's going to be included in the Instruction Unit
15 Administrative Reference document.
16 Q   Where would -- well, it didn't exist in
17 written form before this September 2012 time frame;
18 isn't that right?
19     MR. YOUNG:  Standing objection.
20     THE WITNESS:  That's correct.
21 BY MS. ENGLAND:
22 Q   And what you're saying -- what does this mean?
23 Does it mean that it's being issued -- this practice
24 has been reduced to writing, and it's now going to be
25 issued in written form, but it also is going to become

Page 361

1 part of the Instruction Unit Administrative Reference?
2     MR. YOUNG:  Standing objection.
3     THE WITNESS:  Yes.
4 BY MS. ENGLAND:
5 Q   So what kinds of things are included in this
6 Instruction Unit Administrative Reference?
7     MR. YOUNG:  Standing objection.
8     THE WITNESS:  All various types of things in
9 regard to the operation of the school.  So they're
10 numerous.
11 BY MS. ENGLAND:
12 Q   And then it says, "Principals must ensure that
13 the school follows the procedure."  Whose idea was it
14 that principals would be responsible for this?
15     MR. YOUNG:  Standing objection.
16     THE WITNESS:  The Instruction Unit included
17 that, that part.  So the Instruction Unit, who is the
18 administrative head of all the principals, is directing
19 them to ensure that they follow the procedure.
20 BY MS. ENGLAND:
21 Q   When you say the Instruction Unit is the
22 administrative head of all the principals, does that
23 mean that that Instruction Unit is the layer of the
24 hierarchy of the School District that oversees all of
25 the schools?

Page 362

1    MR. YOUNG:  Standing objection.
2    THE WITNESS:  Yes, for instruction and school
3  operation purposes, so anything regarding instruction
4  curriculum that the principals would answer up the
5  chain of the Instruction Unit.
6  BY MS. ENGLAND:
7    Q    So Mr. Skorkowsky, who is now the
8  Superintendent of Schools, but when he was head, as
9  you've seen in the earlier document, when he was head
10  of the Instruction Unit, to whom did he report?
11    MR. YOUNG:  Standing objection.
12    THE WITNESS:  The superintendent.
13  BY MS. ENGLAND:
14    Q    Was that a direct report from Mr. Skorkowsky
15  as the deputy superintendent, head of Instruction Unit,
16  directly to Superintendent Jones?
17    MR. YOUNG:  Standing objection.
18    THE WITNESS:  Yes.
19  BY MS. ENGLAND:
20    Q    There's no associate -- there's no
21  intermediary between Mr. Skorkowsky as deputy
22  superintendent and the superintendent himself or
23  herself; right?
24    MR. YOUNG:  Standing objection.
25    THE WITNESS:  No.

Page 363

1  BY MS. ENGLAND:
2    Q    So then go on and look at the last page, which
3  is the actual policy.  Do you see it says date of
4  revision, September 12th, 2012?
5    A    Yes.
6    Q    So that's the date it's actually issued, is it
7  not?  It's not revised from an earlier one?
8    A    Yes.  I mean, I think it's the first time that
9  this was -- this rule is actually put in writing.
10    Q    So it actually shouldn't say "date of
11  revision."  It should say "date of issuance" to be more
12  accurate, should it not?
13    MR. YOUNG:  Standing objection.
14    THE WITNESS:  Well, depends, I guess, like I
15  indicated --
16  BY MS. ENGLAND:
17    Q    On this policy?
18    A    Well, it's not a policy.
19    Q    Excuse me.
20    A    It's a rule.  And if the idea that it's being
21  revised to be put into writing, then that happened on
22  September 12th, 2012.
23    Q    But there is no prior iteration of this in
24  writing?
25    A    Correct.

Page 364

1    MR. YOUNG:  Standing objection.
2  BY MS. ENGLAND:
3    Q    So it's inaccurate to call -- to suggest that
4  there's a previous written version by calling this
5  "date of revision."  The first time this is issued
6  in writing, is it not?
7    A    I believe so.
8    MR. YOUNG:  Standing objection.  Compound.
9  You can answer.
10    THE WITNESS:  I believe so.
11  BY MS. ENGLAND:
12    Q    And where in this rule issued by the
13  Instruction Unit does it say anything about gender
14  specific use of restrooms?
15    A    It does not.
16    Q    And where in this restroom use rule does it
17  indicate that Brad Roberts, a transgender male, is
18  permitted to use male restroom facilities from which he
19  had been banned at School District property for the
20  past year?
21    MR. YOUNG:  Standing objection.
22    THE WITNESS:  I'm sorry.  Can you repeat that
23  question?
24    MS. ENGLAND:  Sure.
25  / / / / /

Page 365

1  BY MS. ENGLAND:
2    Q    Where in this School Adult Restroom Use Rule
3  does it indicate that Brad Roberts, a transgender male
4  employee, is now permitted to use male restrooms?
5    MR. YOUNG:  Standing objection.
6    THE WITNESS:  This does not specifically
7  reference transgender or gender identity employees.
8  BY MS. ENGLAND:
9    Q    And this rule, School Adult Restroom Use Rule,
10  does not at all address anything to do with
11  gender-specific restrooms facility, does it?
12    MR. YOUNG:  Standing objection.
13    THE WITNESS:  No.
14  BY MS. ENGLAND:
15    Q    And it says that, "Clark County School
16  District employees assigned to work in a school
17  facility are supposed to be using the adult restrooms
18  provided."
19    Did you understand that that was the general
20  practice throughout the School District --
21    A    Yes.
22    Q    -- that adult employees don't use children's
23  restrooms in school facilities in general?
24    MR. YOUNG:  Standing objection.
25    THE WITNESS:  That was our rule.  That was our

Page 366

1  longstanding rule and practice that adults should not
2  be using the student restrooms.
3  BY MS. ENGLAND:
4     Q   And what was -- what schools were Brad Roberts
5  assigned to during the year of prohibition?
6        MR. YOUNG:  Standing objection.
7        THE WITNESS:  I don't know.
8  BY MS. ENGLAND:
9     Q   You've already said that you did not
10 undertake, and you know of no one undertaking a survey
11 to see if the schools to which Brad Roberts was
12 routinely assigned had facilities that he could use for
13 the purposes of urinating and defecating?
14       MR. YOUNG:  Standing objection.
15       THE WITNESS:  Yes, I did not -- I testified
16 that I did not do a survey or any kind of poll, or
17 anything.  I would say aware that all of our schools
18 have single-occupancy and/or gender-neutral facilities.
19 BY MS. ENGLAND:
20    Q   Did you inspect the schools that Brad Roberts
21 was regularly assigned to?
22    A   No.
23       MR. YOUNG:  Standing objection.
24 BY MS. ENGLAND:
25    Q   And when you say, "I was aware that all

Page 367

1  schools have these facilities," you were not aware that
2  some of the schools that he was regularly assigned to
3  didn't have those facilities, were you?
4        MR. YOUNG:  Standing objection.  Misrepresents
5  facts in evidence.  You may answer.
6  BY MS. ENGLAND:
7     Q   You were not aware of that?
8     A   I don't believe that's true.  So, no, I was
9  not aware of that.
10    Q   When Brad Roberts told you in that meeting on
11 November 22nd, 2011, that not all the schools that he's
12 assigned to have those facilities, you never responded
13 to him, did you?
14       MR. YOUNG:  Standing objection.
15       THE WITNESS:  I don't recall Brad Roberts
16 making that statement to me.
17 BY MS. ENGLAND:
18    Q   And you didn't write it down or check into it,
19 did you, when he protested and said not every school
20 has those facilities?
21    A   I don't recall him making that statement.
22       MR. YOUNG:  Standing objection.
23 BY MS. ENGLAND:
24    Q   And so others who remember him making that
25 statement and others who remember challenging, they're

Page 368

1  not lying, you just don't recall; isn't that correct?
2  You didn't take any notes?
3        MR. YOUNG:  Standing objection.
4        THE WITNESS:  I did not take any notes.
5  BY MS. ENGLAND:
6     Q   Okay.  We're done with 40.
7        Could you turn to 41, please, which I believe
8  is in the book?
9        So the high school principals, according to
10 Exhibit 40, have been told on September 21st about the
11 now written rule for school adult room use.  And this
12 shows Scott Greenberg telling the chief of police of
13 the School District Police Department, telling them for
14 the first time that the Instruction Unit written rule
15 for bathroom use at school is now being attached.  Do
16 you see that?
17    A   I see it says, "Attached."  I'm not sure where
18 you're getting the reference to the first time that
19 it's being attached.
20    Q   Okay.  So when did Scott Greenberg first tell
21 the police department about the school adult restroom
22 use policy --
23       MR. YOUNG:  Standing objection.
24 BY MS. ENGLAND:
25    Q   -- since you are the 30(b)(6) Designee who is

Page 369

1  supposed to come here today and tell us about when the
2  police department found out about this now written
3  rule?
4        MR. YOUNG:  Standing objection.
5        THE WITNESS:  I'm not -- I didn't -- I have no
6  idea when or if Scott Greenberg verbally told the chief
7  of police about the longstanding rule and practice at
8  schools in regard to adult restroom use.
9  BY MS. ENGLAND:
10    Q   So you came here today --
11    A   I know that in this e-mail, he is -- he is
12 saying, "Attached is the written rule for bathroom use
13 at schools."
14    Q   And that occurred on what date?
15    A   September 25th, 2012.
16    Q   So that's almost two weeks after it was issued
17 by the Instruction Unit, is it not?
18       MR. YOUNG:  Standing objection.
19       THE WITNESS:  No, it doesn't look like it's
20 that long.
21 BY MS. ENGLAND:
22    Q   You're not looking at the right page.
23    A   Which page number are you looking at?
24    Q   If you're on Exhibit 40, you should be looking
25 at the actual policy.  You're looking at how quickly

Page 370

1  the elementary schools got it out to its principals.
2  Now I'm asking about how quickly the legal department
3  told the police department about it.
4         MR. YOUNG: Standing objection.
5         THE WITNESS: Again, it's not a policy, but --
6  BY MS. ENGLAND:
7     Q   Excuse me. The rule.
8     A   Yes, the rule was put in writing on September
9  12th, 2012. And Mr. Greenberg e-mailed the written
10 rule, that written rule to the chief of police on
11 September 25th.
12    Q   So that's almost two weeks later?
13    A   13 days.
14    Q   Would you agree with me that's almost two
15 weeks?
16    A   Almost, yes.
17    Q   And in preparation for your testimony here
18 today as the 30(b)(6) Designee, you looked at no
19 evidence that Mr. Greenberg sent it to the police
20 department any sooner than the document you have in
21 front of you, which is 41?
22        MR. YOUNG: Standing objection.
23        THE WITNESS: Yeah, I'm not aware of him
24 sending it -- oh, I'm sorry.
25        MR. YOUNG: Standing objection. You can

Page 371

1  answer.
2         THE WITNESS: I'm not aware of him sending it
3  any time earlier than this e-mail.
4  BY MS. ENGLAND:
5     Q   So would you please read this e-mail from the
6  word, "Please," which is the second sentence?
7     A   "Please meet with Roberts to inform him that
8  he may use the bathroom of choice," parenthesis,
9  "male," closed parenthesis, "at non-School District
10 facilities," open parenthesis, "we still don't care
11 what bathroom he uses at non-District sites," closed
12 parenthesis, "and that at schools, he is to follow the
13 attached rule, i.e., use admin bathrooms," open
14 parenthesis, "give him a copy if he wants to have it,"
15 closed parenthesis, period. "Please let me know after
16 you meet with him. Can you do it this week?"
17    Q   Did you and Mr. Greenberg discuss this e-mail
18 when you were preparing to be the 30(b)(6) Designee?
19    A   Yes.
20    Q   Did Mr. Greenberg tell you why Mr. Roberts was
21 being singled out as an individual to be given this new
22 Instruction Unit written rule?
23        MR. YOUNG: Standing objection. You can
24 answer.
25        THE WITNESS: Yes. He wasn't --

Page 372

1  BY MS. ENGLAND:
2     Q   What did Mr. Greenberg tell you?
3     A   Officer Roberts was given this --
4     Q   What did Mr. Greenberg tell you?
5         MR. YOUNG: Let him answer.
6         THE WITNESS: I'm trying to answer the
7  question.
8  BY MS. ENGLAND:
9     Q   No. My question was: Did Mr. Greenberg tell
10 you why Officer Roberts was singled out as an
11 individual to be given the unwritten rule?
12    A   And I'm --
13    Q   You answered, "Yes." Now you need to --
14 that's all, the only question I asked. It's a "yes" --
15        MR. YOUNG: You can't cut him off in the
16 middle of answering the question. You have to let him
17 answer the question fully. It's inappropriate for you
18 to cut the witness off in the middle of answering a
19 question.
20 BY MS. ENGLAND:
21    Q   The answer to my question was "yes" or "no."
22        Did Mr. Greenberg tell you why Officer Roberts
23 was singled out for being given this Instruction Unit
24 written rule on adult use of school bathrooms? And the
25 answer is "yes" or "no."

Page 373

1     A   No.
2     Q   Okay. We're done with that.
3         Would you turn to 42?
4         Just so we have this timing straight, on
5  September 25th at 11:30 in the morning, Mr. Greenberg
6  tells Chief Ketsaa to -- I'm sorry. Go back to
7  Exhibit 41. What's the subject line of that?
8     A   "Bradley Roberts."
9     Q   And what other employees were singled out and
10 personally handed a copy of the Instruction Unit
11 written rule for bathroom use at schools? Please name
12 them.
13        MR. YOUNG: Standing objection.
14        THE WITNESS: I'm not aware of any other
15 employee who was individually handed the written rule
16 for bathroom use at schools.
17 BY MS. ENGLAND:
18    Q   Do you see that Greenberg is telling the
19 police department on September 25th to single out Brad
20 Roberts and provide him with a copy of this rule?
21        MR. YOUNG: Standing objection.
22 Argumentative.
23 BY MS. ENGLAND:
24    Q   Right?
25    A   No, no. And I say no because --

Page 374

1    Q   I'm just asking about the time.
2    A   I'm saying because he's not being singled out.
3    Q   No, no. I'm asking about the time. Do you
4  see that on September 25th, Greenberg is telling the
5  police department that Brad Roberts is to be met with
6  and given or shown a copy of the Instruction Unit
7  written rule on -- they're being told on September
8  25th?
9    A   Yes.
10   Q   Now look at Exhibit 42. This is from -- did
11  you look at this e-mail with Mr. Greenberg?
12   A   Yes.
13   Q   In preparation for being the 30(b)(6) Designee
14  on Subject No. 6?
15   A   Yes.
16   Q   What is the subject of this e-mail?
17   A   "Bathroom use by non-school based personnel."
18   Q   What is the date of this e-mail where the
19  police department is now notifying -- or now taking the
20  action that they were told to take back on September
21  25th by Scott Greenberg?
22   A   I disagree with that characterization. This
23  is not what --
24       MR. YOUNG: Standing objection. You can
25  answer.

Page 375

1       THE WITNESS: This e-mail has nothing to do
2  with -- or it doesn't have anything to do with Officer
3  Roberts.
4  BY MS. ENGLAND:
5    Q   Okay. Exhibit No. 41, Scott Greenberg
6  instructs the -- the subject of it is "Bradley
7  Roberts," and it does two things, does it not? It
8  attaches the Instruction Unit written rule, and it
9  tells the police department to meet with Brad Roberts?
10   A   I can agree with that.
11   Q   And Greenberg tells Ketsaa to do that in an
12  e-mail as soon as possible, but he sends that e-mail on
13  September 25th?
14   A   I can agree with that.
15   Q   And then the first evidence that the police
16  department is complying with the first part of that,
17  which is the Instruction Unit issuing the Instruction
18  Unit rule, is this October 3rd, eight days later,
19  e-mail from York and Greenberg to Mari Fernandez
20  saying, "Here's the new Instruction Unit rule, please
21  make up an administrative notice for this." Do you see
22  that?
23       MR. YOUNG: Standing objection.
24       THE WITNESS: I see that, but I do not agree
25  that that's what this is.

Page 376

1  BY MS. ENGLAND:
2    Q   So when you say "this is" and you're pointing
3  to something, what is it you're pointing to,
4  Mr. Okazaki?
5    A   Exhibit 42.
6    Q   So do you see that the Exhibit 41 e-mail is in
7  the stream below in Exhibit 42?
8    A   Yes.
9    Q   So you do not agree that Exhibit 42's e-mail
10  is in response to Exhibit 41's e-mail, even though they
11  follow in the stream?
12   A   No, what I said was Exhibit 42 from Captain
13  York has nothing to do with Officer Roberts. This is a
14  secondary thing that he is doing by publicizing or
15  publishing the Instruction Unit written rule of adult
16  restroom use at schools in their general administrative
17  notices to all police officers. So separate and apart
18  from this, they met with --
19   Q   When you say "this," what are you talking to?
20   A   Exhibit 42 -- they met with Officer Roberts,
21  they advise him of the new position, they gave him a
22  copy of the adult restroom -- but all of that that they
23  did with Officer Roberts is not in any way memorialized
24  or referenced in Captain York's e-mail of October 3rd.
25   Q   Well, actually, it is, Mr. Okazaki. Look at

Page 377

1  Exhibit 42.
2    A   Okay.
3    Q   Do you have that in front of you?
4    A   I do.
5    Q   Perhaps you could put your glasses on. Do you
6  see the top of it?
7    A   Yes.
8    Q   So this is Anthony York and Scott Greenberg
9  sending to Mari Fernandez and Lieutenant Ken Young,
10  they're forwarding the original message that
11  Mr. Greenberg sent to Chief Ketsaa. Do you see that
12  below?
13   A   No, they're forwarding the attachment saying
14  use this to create an AN.
15   Q   And they're forwarding the e-mail, which is
16  Greenberg's e-mail?
17   A   The e-mail is included in the forwarded e-mail
18  which has the attachment to which he was forwarding.
19  But Captain York's actual e-mail message to Mari is
20  simply, here is a new written -- written rule regard to
21  adult restroom use at schools, use it and create an AN.
22   Q   And in doing so, Captain York and Scott
23  Greenberg both -- their forwarding included all the
24  information below in the original message which
25  Greenberg sent to Ketsaa which says, "Attached is the

Page 378

1  Instruction Unit rule for bathroom use at schools,
2  please meet with Roberts to inform him that he may use
3  the bathroom of his choice, male, at non-School
4  District facilities and" -- Greenberg says -- "we still
5  don't care what bathroom he uses at non-District
6  sites."
7      So when you said this had nothing to do with
8  it, they forwarded Greenberg's e-mail on to Mari
9  Fernandez and to Lieutenant Young so they are given
10  access to the two items:  Number one, there's a new
11  Instruction Unit rule; and, number two, we're going to
12  tell Roberts this stuff, and we still don't care what
13  he uses if he's offsite.  Do you see that?
14      MR. YOUNG:  Standing objection.
15      THE WITNESS:  I see what the e-mail says.
16  What I'm telling you is that the District's position is
17  that, yes, Scott Greenberg's e-mail to Chief Ketsaa is
18  included in the e-mail that Captain York sends to Mari.
19  But the subject of Anthony or Captain York's e-mail of
20  October 3rd to Mari is simply to take the attachment
21  that Scott had sent to Chief Ketsaa, separate and
22  apart, and had nothing to do with Officer Roberts, in
23  creating an administrative notice so that all the CCSD
24  PD officers would know what the written rule regarding
25  adult restroom use at schools was.  That's what I'm

Page 379

1  saying.
2  BY MS. ENGLAND:
3      Q   And so please turn to Exhibit 43.  So this is
4  Mari Fernandez.  She is the chief of police's
5  secretary, is she not?
6      A   I believe so, yes.
7      Q   And so she, within -- in under an hour of
8  being forwarded Greenberg's e-mail that says -- and
9  Greenberg's e-mail is from September 25th -- so eight
10  days later, York sends Greenberg's e-mail to Fernandez
11  and Young, tells Fernandez, "Per our conversation, we
12  need to use the attachment from this e-mail to develop
13  an AN."  Within an hour, she does it.  Do you see that?
14  And that's embodied in Exhibit 43.  And not only does
15  she do it, but she e-mails it out to 12 groups within
16  the Clark County School District Police Department.  Do
17  you see that?
18      MR. YOUNG:  Standing objection.
19      THE WITNESS:  Yes, not agreeing to any of the
20  prefacing comments you made, I do recognize that Mari
21  Fernandez's e-mail apparently distributing the
22  administrative notice was sent out approximately less
23  than an hour after Captain York directed her to do so.
24  BY MS. ENGLAND:
25      Q   And Captain York directed her to do so by

Page 380

1  sending it to both her and Lieutenant Young and telling
2  Mari, confirming that they apparently had a
3  conversation, and he sends it under the chief's
4  signature.  Do you see that --
5      MR. YOUNG:  Standing objection.
6  BY MS. ENGLAND:
7      Q   -- Exhibit 42?  Because the chief doesn't go
8  by "Tony," does he?
9      A   No.  So what happens here is Scott Greenberg
10  sends the e-mail to the chief.  The chief obviously
11  just forwarded it to Tony York, Captain York, without
12  apparently any comment or anything in writing, anyway.
13  And then Tony is just using this e-mail, forwarded
14  e-mail, to send the attachment to Mari.
15      Q   And to Young?
16      A   And to Young.
17      Q   And now if you look at 43, within an hour,
18  Mari has turned the attachment into an administrative
19  notice, and it's being sent out to 12 groups, addressed
20  groups in the Clark County School District Police
21  Department.  Do you see that?
22      A   Yes.
23      MR. YOUNG:  Standing objection.  Asked and
24  answered.
25      THE WITNESS:  Yes.

Page 381

1  BY MS. ENGLAND:
2      Q   And so that was sent out at 4:07 in the
3  afternoon to pretty much everyone in the School
4  District Police Department?
5      MR. YOUNG:  Standing objection.
6      THE WITNESS:  Yes.
7  BY MS. ENGLAND:
8      Q   What other department besides the police
9  department had this administrative notice, or this
10  school adult restroom notice sent to every single
11  member?
12      MR. YOUNG:  Standing objection.
13      THE WITNESS:  Well, it was sent to all of the
14  principals from the schools.  That's the only one I'm
15  aware of, the principals, and then the Clark County
16  School District Police forwarded it to all of their
17  employees.
18  BY MS. ENGLAND:
19      Q   So you know of no other department within the
20  School District that sent it to all of its employees?
21      MR. YOUNG:  Standing objection.
22      THE WITNESS:  Correct.
23  BY MS. ENGLAND:
24      Q   Okay.  We're done with 43.
25      Now I'll ask you to turn to 44.  So this is an

Page 382

1  e-mail sent at 6:36 that night, that same night,
2  October 3rd, 2012.  Do you see that?
3      A   Yes.
4      Q   From York and Greenberg to Ken Young.  Do you
5  see that?
6      A   Again, it's the chain.  So from Scott --
7      Q   Do you see that?
8      A   No.  I mean, what I see is a chain from Scott
9  Greenberg sending his initial e-mail to Chief Ketsaa;
10  Chief Ketsaa forwarding it to Captain York; and then in
11  this e-mail, Captain York is sending an e-mail to
12  Captain Young.
13      Q   And who does Captain York CC on this e-mail?
14      A   The chief and Scott W. Fitzgerald.
15      Q   Who is Scott W. Fitzgerald?
16      A   I believe he's a teacher.
17      Q   Where?
18      A   I don't know.  But that was a mistake by
19  Captain York thinking that Scott Greenberg -- he
20  mistakenly put in Scott Fitzgerald.  It auto-populates,
21  and he sent it to the wrong person.
22      Q   How do you know that?  Did you and Greenberg
23  discuss this, or are you just --
24      A   Yes.  I'm sorry.
25      Q   Did you discuss it two weeks ago?

Page 383

1      A   Yes.
2      Q   What did Mr. Greenberg tell you?  You have no
3  personal knowledge of this; is that right?
4      A   Correct.
5      Q   What did Greenberg tell you?  Since Greenberg
6  is the only one you talked to besides your legal
7  counsel to get facts for this deposition, what did
8  Greenberg tell you?
9      A   That Captain York mistakenly put in "Scott
10  Fitzgerald" instead of his name, Scott Greenberg.
11      Q   Did Mr. Greenberg tell you that anyone had
12  made any efforts to remedy the inappropriate
13  misdirection of this e-mail to a teacher named Scott
14  Fitzgerald?
15          MR. YOUNG:  Standing objection.
16          THE WITNESS:  No.
17  BY MS. ENGLAND:
18      Q   And at 6:36 on October 3rd, Officer Roberts
19  would have finished his shift by then, would he not?
20      A   I do not know.
21      Q   And this says, "Ken, per our conversation, the
22  e-mail from legal is for two issues.  One is individual
23  to Roberts, because previous specific direction was
24  given and now is changed.  And the second which could
25  impact the direction to Roberts is not individual but

Page 384

1  is actually new direction for all of our officers."
2          Do you see that?
3      A   I do.
4      Q   So you said that this was an actual written
5  version of what was existing rule.  Did you and
6  Greenberg discuss the fact that back in October of
7  2012, Captain York is saying this is a new rule?  Did
8  you discuss it?  Yes or no?
9      A   Yes.
10      Q   And what did Greenberg tell you?
11      A   That Captain York apparently -- or obviously
12  was unaware that that was the school rule.
13      Q   How did Greenberg tell you that he knew that
14  obviously Captain York was wrong and he, Greenberg, was
15  right that this was the rule of which York was unaware?
16      A   Because Scott Greenberg received notice, or
17  information from the Instruction Unit that this is the
18  rule in schools.  And so he relied on that as opposed
19  to Captain York indicating this is a rule he had never
20  heard of.
21      Q   And this says that, "CCSD Police Department
22  administration needs to provide Officer Roberts with
23  different direction than previously given regarding
24  restroom use, and do it as soon as possible."  And this
25  says, "In our previous meeting with Brad Roberts and

Page 385

1  his representative, Jon Okazaki clarified that Roberts
2  was to use gender-neutral restrooms while on CCSD
3  property."
4          Do you see that?
5      A   I do.
6      Q   So according to your testimony today, that's
7  inaccurate, that, in fact, Brad Roberts was permitted
8  to use single-use male restrooms.
9      A   Correct, that's incomplete.
10      Q   And incorrect?
11      A   No.  He was allowed to use gender-neutral
12  restrooms, but he was also allowed to use
13  single-occupancy restrooms.
14      Q   Are you aware of anyone else who knew that
15  besides yourself testifying here today, that he was
16  allowed, Brad Roberts was allowed during this year of
17  prohibition to use single-use male restrooms?
18          MR. YOUNG:  Standing objection.
19          THE WITNESS:  The only thing I can say is
20  everybody at that November 22nd meeting would have
21  heard me say gender-neutral or single-occupancy
22  restrooms.  Like I testified earlier, there was never
23  any further question or clarification as to whether
24  that included single-occupancy restrooms what were
25  identified or labeled a particular gender.

Page 386

BY MS. ENGLAND:

1  Q   So you just assumed everybody knew what you
meant when you were talking about single-use and
gender-neutral?

5  A   Single-occupancy and gender-neutral, yes.

6  Q   Those two aren't the same; right?

7  A   No.

8  Q   So this says that -- so everyone but you has
been laboring under this belief that Brad Roberts is
not allowed to use single-use male restrooms?

11     MR. YOUNG:  Standing objection.

12 BY MS. ENGLAND:

13  Q   You're the only one that thinks that,
Mr. Okazaki.  Did you believe that it was incumbent
upon you if indeed all of the paperwork that's laid out
in front of you representing this to the Nevada Equal
Rights Commission failed to include that critical idea
you're now claiming today --

19     MR. YOUNG:  Standing objection.

20 BY MS. ENGLAND:

21  Q   -- i.e., that Brad Roberts was permitted by
your instruction to use single-occupancy male
restrooms?

24     MR. YOUNG:  Are you done?

25     MS. ENGLAND:  I am.

Page 387

1     MR. YOUNG:  Standing objection.
Argumentative.

3     THE WITNESS:  I'm not aware that I'm the only
one who had that understanding.  And I believe that all
of our correspondence and briefs and position
statements are consistent with that, with what I recall
advising Officer Roberts that he was allowed to use
gender-neutral or single-occupancy restrooms, that he
was simply not allowed to use the male restroom.

10 BY MS. ENGLAND:

11  Q   When you say he was not allowed to use the
male restroom, did you provide him with more
specificity about which male restrooms he was not
allowed to use?

15  A   No, I do not recall there being any elaborate
discussion on details of what those terms meant.

17  Q   And you did not mention and say,
"Brad, you can use the male restroom" -- you never told
him, "Brad, you can use the male restroom if it's a
single-occupancy and has a male sign on it"?  You never
told him that, did you?

22  A   No.

23  Q   And then this says that, number 2, "We are
providing all employees with a new Instruction Unit
direction regarding the use of restroom at schools.

Page 388

1 This was completed this afternoon."

2     Do you see that?  That's York reporting --
excuse me -- yeah, that's York reporting to Ken and
CC'ing Greenberg on it --

5  A   Correct.

6  Q   -- so that they're told that it's being done?

7  A   Yes.

8  Q   And did you discuss this with Greenberg in
preparation for your deposition here today, that this
was the way that the police department, and the police
department only was sending it out to every single
employee unlike any other School District department?

13     MR. YOUNG:  Standing objection.

14     THE WITNESS:  Yes.  We discussed the fact that
the Clark County School District Police Department
decided to attach the written rule in an administrative
notice and distribute it to all of the employees.

18 BY MS. ENGLAND:

19  Q   And under the direction of Scott Greenberg,
the police department was to meet with Brad Roberts
specifically; isn't that correct?

22  A   Yes.

23  Q   And Greenberg instructed -- strike that.

24     Greenberg issued no instruction for any other
School District employee to be met with except Brad

Page 389

1 Roberts; isn't that correct?

2  A   In regard to restroom use?  Yes.  I don't
think Scott Greenberg directed anybody else to meet
with any employee in regard to restroom use.

5  Q   The only person Greenberg directed any School
District official to meet with is the direction he gave
to the police department that they were to meet with
Brad Roberts?

9  A   Yes, to tell him the change of instruction.

10  Q   And Brad is the only one?

11  A   Yes.

12  Q   And Greenberg said he can have a copy of the
adult school restroom use policy if he wants one?

14  A   I think the message was:  Meet with Brad
Roberts, tell him that he may now use male gender
restrooms, but make him aware of the school use policy,
he shouldn't be using student restrooms.  If he wants a
copy of this written rule, give him a copy of the rule.

19  Q   Was there any indication that Brad Roberts had
ever made use of a school restroom for children?

21     MR. YOUNG:  Standing objection.

22     THE WITNESS:  No.

23 BY MS. ENGLAND:

24  Q   So now we go on to Exhibit 38.

25  A   38?

Page 390

1  Q   38, yes.  Actually, it comes next in line, but
2  it wasn't lined up correctly.
3      Sorry.  It's over here.
4      (Exhibit 38 marked)
5      MS. ENGLAND:  Here's 38.
6      MR. YOUNG:  Thank you.
7  BY MS. ENGLAND:
8  Q   Did you and Scott Greenberg look at this
9  Notice of Case Withdrawal notice from the Nevada Equal
10 Rights Commission mailed to Mr. Greenberg on October
11 11th --
12 A   Yes.
13 Q   -- 2012?
14 A   Yes.
15 Q   And did you understand that because the Clark
16 County School District lifted the ban on Brad Roberts
17 that prohibited him from using male restroom facilities
18 at the School District, that the Nevada Equal Rights
19 Commission was no longer seeking an injunction to stop
20 the School District from engaging in what the NERC
21 believed was illegal?
22     MR. YOUNG:  I'll object to the
23 characterization of what the hearing was about.  You
24 can answer the question.
25     THE WITNESS:  Yes, I'm not sure about that

Page 391

1  last part about the injunction.  All he know is that in
2  response to us lifting restriction on his use of
3  restrooms, the Nevada Equal Rights Commission was going
4  to withdraw the case, cancel the hearing, and close the
5  case.
6  BY MS. ENGLAND:
7  Q   And the Nevada Equal Rights Commission did not
8  say that what the School District had done was not
9  discrimination, but only that they had stopped doing
10 it, and that's why they were closing the case; isn't
11 that correct?
12 A   In closing the case, I don't -- they said -- I
13 believe they indicated right here -- they said -- has
14 taken measures which have resolved the issues, we're
15 going to close the case.
16 Q   And the issues, as you understood it, was that
17 the School District had banned Officer Roberts from
18 using male restrooms?
19 A   Yes.
20 Q   And so the School District had lifted the ban
21 so it was no longer engaging in the conduct which the
22 Nevada Equal Rights Commission said was illegal?
23 A   Correct.
24 Q   So they didn't say, "Oh, my God, we made a
25 mistake; oh, School District, you can do that; oh,

Page 392

1  we're really sorry, that wasn't discrimination."  It's
2  that the School District stopped doing what the Nevada
3  Equal Rights Commission told them they shouldn't be
4  doing; isn't that right?
5  A   Right.
6  Q   So the Nevada Equal Rights Commission -- oh --
7  did the School District appeal the finding and
8  determination by the Nevada Equal Rights Commission
9  that it, the School District, was committing illegal
10 discrimination under Nevada law to the District Court
11 to get the finding determination of discrimination
12 overturned?
13 A   No.
14     MR. YOUNG:  Standing objection.
15     MS. ENGLAND:  So now, I'd like to stop the
16 deposition, if I may, take a restroom break.  And then
17 we'll quickly do your percipient witness, and we'll be
18 done.
19     MR. YOUNG:  Okay.
20 (Thereupon, the deposition concluded at 2:31 p.m.)
21
22
23
24
25

Page 393

1      CERTIFICATE OF WITNESS
2  PAGE   LINE   CHANGE               REASON
3  _____
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18      * * * * *
19      I, JON OKAZAKI, ESQ., witness herein, do
20 hereby certify and declare under penalty of perjury the
   within and foregoing transcription to be my deposition
   in said action; that I have read, corrected and do
21 hereby affix my signature to said deposition.
22
23 _____
24      JON OKAZAKI, ESQ.  DATE
25

Page 394

CERTIFICATE OF REPORTER

STATE OF NEVADA )
                ) ss:
COUNTY OF CLARK )

        I, Mary Cox Daniel, a Certified Court
Reporter licensed by the State of Nevada, do hereby
certify:

        That I reported the deposition of JON
OKAZAKI, ESQ., commencing on Wednesday, June 29, 2016,
at 9:32 a.m.

        That prior to being examined, the
witness first duly swore or affirmed to testify to the
truth, the whole truth, and nothing but the truth; that
I thereafter transcribed my said shorthand notes into
typewriting and that the typewritten transcript is a
complete, true and accurate record of testimony
provided by the witness at said time.

        I further certify (1) that I am not a
relative or employee of an attorney or counsel of any
of the parties, nor a relative or employee of any
attorney or counsel involved in said action, nor a
person financially interested in the action, and (2)
that pursuant to Rule 30(e), transcript review by the
witness was requested.

        IN WITNESS WHEREOF, I have hereunto set
my hand in my office in the County of Clark, State of
Nevada, this 8th day of July, 2016.


        _____

        MARY COX DANIEL, CCR 710, FAPR, RDR, CRR

**WORD INDEX**

< 0 >
**001911** 358:*17*
**006-007** 213:*5*
**008-012** 213:*4*
**012** 335:*21*
**048-051** 212:*20*

< 1 >
**1** 225:*23* 233:*16*
394:*12*
**1:10** 331:*24* 332:*2*
**1:44** 359:*25*
**1:50** 359:*25*
**10** 234:*8* 274:*8*
**10:06** 238:*2*
**10:08** 238:*2*
**10th** 234:*24*
**11** 215:*22* 274:*8*
292:*25*
**11:00** 280:*14*
**11:30** 373:*5*
**11th** 242:*17*
247:*17* 390:*11*
**11-year-old** 292:*24*
**12** 304:*17* 379:*15*
380:*19*
**12:15** 331:*24*
**12:30** 318:*21*
**12th** 227:*24*
228:*12, 14* 229:*10,*
*13* 230:*8* 363:*4, 22*
370:*9*
**13** 370:*13*
**13th** 356:*6*
**14** 213:*12* 327:*18*
**16** 212:*22* 319:*3*
**17510A** 210:*25*
**19** 234:*8* 241:*20*
319:*10, 20*
**1911** 360:*3*
**19th** 242:*23*
243:*25* 247:*18*
**1st** 216:*7* 219:*3,*
*11, 16* 220:*17*
222:*13* 223:*6, 25*
224:*5* 297:*13*
298:*17* 349:*11*

< 2 >

**2** 264:*9* 360:*3*
387:*23* 394:*14*
**2:15-CV-00388-JAD**
**-PAL** 210:*5*
**2:31** 392:*20*
**2000** 303:*22*
305:*20*
**2001** 274:*7* 292:*21*
293:*1* 298:*12, 14*
299:*21*
**2008** 214:*25*
289:*14* 299:*22*
**2011** 213:*12*
215:*17* 216:*7*
219:*3, 11, 16, 23*
220:*12, 17, 23*
221:*14, 17, 25*
222:*5, 13* 223:*6, 25*
224:*3, 5* 231:*8*
238:*16* 239:*2, 14,*
*18* 261:*24* 262:*2,*
*13* 264:*14* 269:*24*
270:*19* 272:*13*
287:*19* 289:*20*
297:*13* 298:*17*
307:*25* 316:*21*
322:*19* 327:*18*
328:*9* 332:*11, 23*
333:*21* 334:*6*
344:*13* 345:*25*
367:*11*
**2012** 212:*11, 13, 15,*
*22* 213:*9* 224:*21*
227:*24* 228:*13, 15*
229:*10, 13* 230:*8*
231:*2, 9* 233:*18*
236:*21* 241:*20*
242:*18* 245:*8, 8*
246:*16* 247:*7, 17,*
*18, 21* 252:*10*
254:*22* 255:*15*
256:*12* 261:*24*
278:*12* 279:*12*
281:*9, 17* 290:*13*
295:*9, 17, 20* 299:*6*
300:*14* 302:*1*
304:*15* 307:*22, 23*
308:*5* 309:*13, 17,*
*24* 310:*12* 313:*24*
314:*6* 315:*10*
316:*12* 319:*3, 10,*

**13, 20** 320:*1, 7, 15*
322:*6, 21* 324:*1*
328:*23* 329:*1, 6*
330:*19* 333:*22*
334:*6* 335:*19*
338:*6* 342:*12*
343:*4* 345:*10, 14*
346:*14* 348:*18*
356:*6* 357:*16*
359:*3* 360:*17*
363:*4, 22* 369:*15*
370:*9* 382:*2*
384:*7* 390:*13*
**2015** 294:*15*
**2016** 210:*15* 234:*9*
279:*2, 7* 323:*23*
351:*2* 394:*6, 17*
**20th** 299:*11* 302:*1*
307:*23*
**21** 213:*9* 237:*19*
357:*16*
**210** 210:*14*
**211** 217:*5, 12, 23*
218:*10, 24* 219:*3, 9,*
*15* 220:*2, 8, 15*
221:*21, 24* 222:*7,*
*12* 223:*15* 296:*25*
297:*1, 2, 15*
**211's** 316:*2*
**214** 212:*4*
**215** 213:*10*
**21st** 368:*10*
**22** 264:*14* 328:*8*
**225** 213:*12, 14*
**22nd** 215:*17*
219:*23* 220:*12, 22*
238:*16* 259:*3*
262:*2, 13* 266:*12*
268:*7* 269:*24*
270:*19* 272:*12*
274:*16* 287:*14, 19*
328:*20* 343:*16*
344:*13* 367:*11*
385:*20*
**233** 289:*19*
**236** 212:*8*
**237** 212:*10, 11*
**24** 327:*17*
**25th** 369:*15*
370:*11* 373:*5, 19*

**374:**4, 8, 21* 375:*13*
379:*9*
**26** 212:*10*
**26th** 252:*10*
**28** 212:*8* 236:*9, 10,*
*11, 14, 24* 237:*8*
241:*16, 25* 242:*16*
243:*18* 244:*13, 18,*
*21* 245:*20* 252:*7*
255:*25*
**29** 210:*15* 212:*10*
236:*24* 237:*5, 10*
252:*8, 9* 394:*6*
**290** 212:*15*
**299** 212:*17*

< 3 >
**3** 233:*18* 236:*19*
329:*6*
**30** 210:*12* 212:*11*
214:*4, 4* 216:*4, 21*
226:*14* 234:*3*
236:*24* 237:*5, 12*
242:*7* 247:*2*
249:*5* 250:*5*
254:*18, 22* 264:*4, 8*
265:*21* 267:*6*
270:*23* 279:*16*
281:*14* 282:*5*
283:*8* 291:*7*
300:*11* 304:*13*
308:*17* 319:*6*
326:*16* 327:*5*
340:*5* 351:*5*
352:*18* 368:*25*
370:*18* 371:*18*
374:*13* 394:*14*
**300** 211:*11*
**308** 212:*17*
**30th** 238:*18* 239:*2,*
*18*
**31** 237:*18, 19*
265:*19* 278:*11*
285:*25* 286:*3, 14*
287:*5*
**319** 212:*20*
**31st** 338:*6* 339:*19*
**32** 212:*15* 290:*24,*
*25* 291:*2* 295:*15*
297:*2, 11*
**323** 213:*2, 3*

**33** 212:*17* 299:*1, 2, 5*
**332** 232:*3*
**34** 212:*17* 308:*13, 14* 314:*5*
**349** 213:*5*
**35** 212:*20* 318:*25* 319:*1, 3*
**356** 213:*8*
**36** 213:*2, 2* 323:*10*
**37** 213:*3* 323:*8, 9* 327:*10* 335:*14* 348:*13*
**38** 213:*5* 389:*24, 25* 390:*1, 4, 5*
**39** 213:*5* 349:*4, 5* 356:*5*
**390** 213:*5*
**394** 210:*14*
**3960** 211:*11*
**3rd** 234:*11* 235:*2, 8* 236:*21* 242:*22, 24* 245:*23* 247:*21* 254:*22* 255:*14, 20* 256:*12* 278:*12* 281:*16* 282:*9* 296:*10, 24* 297:*14* 299:*6* 300:*14* 375:*18* 376:*24* 378:*20* 382:*2* 383:*18*

**< 4 >**
**4** 210:*11* 214:*4* 225:*15, 19* 226:*14* 233:*14, 14, 15* 234:*5* 236:*20* 239:*24* 241:*11* 247:*3, 20* 280:*13* 283:*8* 291:*7* 303:*15*
**4:07** 381:*2*
**40** 213:*8* 356:*21, 22, 25* 360:*2* 368:*6, 10* 369:*24*
**400** 210:*18, 18* 211:*4, 4*
**41** 368:*7* 370:*21* 373:*7* 375:*5* 376:*6*
**4110** 315:*14, 15*
**41's** 376:*10*

**42** 373:*3* 374:*10* 376:*5, 7, 12, 20* 377:*1* 380:*7*
**42's** 376:*9*
**43** 379:*3, 14* 380:*17* 381:*24*
**44** 381:*25*

**< 5 >**
**5** 214:*4, 15* 216:*5, 17, 19* 225:*16, 19, 20, 22* 226:*2, 17* 228:*2, 7* 229:*20* 233:*13* 238:*5, 7, 8* 301:*25* 302:*16* 305:*18*
**59** 217:*6, 8, 13* 218:*10, 25* 220:*3*

**< 6 >**
**6** 210:*11, 12* 216:*4, 21* 225:*16, 19* 226:*14, 14* 234:*3* 241:*11* 242:*7* 247:*2* 249:*5* 250:*5* 264:*11, 12* 279:*16* 281:*14* 282:*5* 283:*8* 291:*7* 300:*11* 304:*13* 308:*17* 319:*6* 326:*16* 327:*5* 331:*23* 332:*9* 333:*18* 335:*3* 336:*2, 6* 340:*5* 345:*3, 23* 346:*1, 1, 5* 349:*8* 351:*5* 352:*18* 368:*25* 370:*18* 371:*18* 374:*13, 14*
**6:36** 382:*1* 383:*18*
**613** 289:*20*
**630** 211:*7*
**65** 213:*10* 215:*25* 216:*3* 221:*10*
**66** 213:*12* 225:*9, 10, 11* 227:*7, 20* 229:*4, 12, 17, 24*
**67** 213:*14* 225:*9, 10, 12* 227:*8* 228:*9* 229:*4, 12, 17, 24* 231:*19* 232:*4*

**6th** 335:*18* 348:*18* 349:*10*

**< 7 >**
**7** 302:*8, 9, 18, 19, 21*
**710** 210:*24* 394:*20*

**< 8 >**
**8** 212:*13*
**89101** 211:*5, 7*
**89169** 211:*12*
**8th** 394:*17*

**< 9 >**
**9** 212:*15*
**9:32** 210:*17* 394:*7*

**< A >**
**a.m** 210:*17* 394:*7*
**AB** 217:*5, 12, 23* 218:*10, 24* 219:*3, 9, 15* 220:*2, 8, 15* 221:*21, 24* 222:*7, 12* 223:*15* 296:*25* 297:*1, 2, 15* 316:*2*
**ability** 247:*6* 292:*18* 306:*9*
**able** 248:*23* 297:*6* 344:*13* 352:*9*
**above-referenced** 319:*11*
**accept** 246:*17* 332:*4*
**access** 231:*8* 378:*10*
**account** 299:*14* 304:*17* 308:*20* 321:*11, 16*
**accounted** 323:*11*
**accurate** 224:*23* 273:*4* 287:*17* 295:*5, 11, 16, 17, 22* 327:*22* 328:*16* 363:*12* 394:*10*
**accurately** 295:*19* 306:*10*
**acknowledged** 214:*21* 264:*22, 23, 24, 25*

**acknowledging** 274:*21*
**acknowledgment** 246:*11, 23* 247:*5* 249:*19*
**Act** 216:*9* 304:*6*
**action** 233:*3* 241:*2, 21* 252:*12* 257:*14, 15, 15* 278:*14* 282:*18* 374:*20* 393:*20* 394:*13, 14*
**actionable** 306:*17*
**actions** 233:*17, 22* 236:*21* 238:*14* 247:*21* 256:*13* 258:*2* 280:*11* 282:*12* 283:*10, 15, 19* 284:*1* 285:*6* 290:*11, 22* 300:*13* 304:*14* 308:*18*
**actions,** 282:*11*
**activities** 216:*5* 219:*12* 222:*1, 11* 234:*5, 25* 239:*13* 257:*23*
**actual** 215:*12* 220:*7* 225:*15* 251:*7* 280:*10, 15* 285:*5* 302:*20* 348:*19* 359:*16* 363:*3* 369:*25* 377:*19* 384:*4*
**add** 223:*14* 224:*7*
**added** 216:*8* 227:*14* 232:*13, 19*
**adding** 230:*6*
**addition** 241:*18*
**additional** 228:*21* 250:*24* 355:*20*
**additionally** 330:*2*
**address** 365:*10*
**addressed** 252:*11* 278:*13* 335:*24* 380:*19*
**addressing** 256:*5*
**admin** 371:*13*
**administration** 384:*22*
**Administrative** 213:*3* 237:*1*

249:*17, 24*  257:*19, 19*  328:*6*  348:*14*  360:*9, 15*  361:*1, 6, 18, 22*  375:*21*  376:*16*  378:*23*  379:*22*  380:*18*  381:*9*  388:*16*

**Administrator** 319:*4, 9*  329:*6*  337:*3*

**adopted** 294:*12*  313:*3*

**adult** 321:*1*  345:*9, 15*  349:*1, 14, 21*  351:*15*  353:*2*  354:*17*  355:*5*  358:*22, 25*  359:*8*  360:*6*  365:*2, 9, 17, 22*  368:*11, 21*  369:*8*  372:*24*  376:*15, 22*  377:*21*  378:*25*  381:*10*  389:*13*

**adults** 366:*1*

**advice** 259:*4*  279:*11*  309:*23*  310:*11*

**advise** 313:*11*  376:*21*

**advised** 241:*7*  251:*22*  265:*4, 7*  286:*11*  311:*21*  312:*23*

**advising** 221:*3*  387:*7*

**advisor** 233:*4*

**advisors** 308:*6*

**affirmative** 233:*3*  241:*21*  252:*12*  278:*14*  282:*18*

**affirmed** 394:*8*

**affix** 393:*21*

**afternoon** 228:*18*  381:*3*  388:*1*

**agency** 249:*15*

**Agenda** 212:*22*

**ago** 254:*23*  279:*7*  327:*14*  350:*23*  354:*20*  382:*25*

**agree** 228:*21*  284:*4, 11, 16*  289:*6,*

10  307:*2, 6*  318:*12*  322:*16*  323:*2*  327:*25*  329:*18*  370:*14*  375:*10, 14, 24*  376:*9*

**agreed** 214:*2*  240:*22*  285:*9*

**agreeing** 331:*2*  379:*19*

**agreement** 251:*24*

**ahead** 248:*20*  286:*4*  296:*20*  325:*10, 12*  339:*4*  344:*17*

**alert** 227:*2, 3*

**allegedly** 229:*19*

**allow** 218:*2*  293:*8*

**allowed** 219:*25*  250:*18*  259:*1*  260:*13, 16, 20, 22*  261:*5*  263:*9*  265:*12*  266:*9, 17*  269:*17*  270:*16*  275:*4, 14, 24*  287:*21*  293:*18*  320:*22*  328:*3*  330:*6*  331:*6, 15, 18*  385:*11, 12, 16, 16*  386:*10*  387:*7, 9, 11, 14*

**allowing** 257:*20*  293:*5*

**allows** 327:*4*

**Alt** 213:*8*

**alteration** 220:*1*

**alternative** 266:*10*  317:*12*  357:*4*  360:*7*

**amended** 289:*19*

**anatomical** 287:*8*  306:*14*  320:*10*

**anatomically** 293:*20*  319:*24*  330:*16*

**anatomy** 276:*13, 25*  277:*12, 15, 21, 23*  287:*22*  290:*5*  293:*17*  329:*13*  330:*13, 23*  331:*7, 10, 13*

**announce** 324:*2, 6*  325:*4, 5, 21*  326:*2, 3, 10, 17, 25*

**announced** 332:*11*  345:*24*

**announcement** 238:*18*  239:*3*  325:*22*  326:*2*

**answer** 216:*20*  218:*13, 16*  219:*5, 7*  220:*5, 8*  234:*21*  247:*25*  248:*1, 15, 20, 22*  251:*12, 16*  255:*18*  267:*21*  269:*22*  270:*4*  282:*13, 23*  296:*8, 18, 20*  297:*7*  305:*13*  317:*23*  324:*19*  325:*13, 20*  326:*23*  330:*9*  331:*1*  339:*4, 7*  344:*17*  346:*9*  362:*4*  364:*9*  367:*5*  371:*1, 24*  372:*5, 6, 17, 21, 25*  374:*25*  390:*24*

**answered** 229:*2*  274:*2, 10*  280:*23*  281:*3*  290:*18*  298:*19*  313:*7*  341:*24*  342:*9, 19*  372:*13*  380:*24*

**answering** 218:*12*  248:*17*  296:*14*  346:*10*  372:*16, 18*

**Anthony** 264:*19*  377:*8*  378:*19*

**anti-discrimination** 217:*19*  222:*21*  290:*7*  329:*15*

**anybody** 232:*18*  267:*24*  282:*2*  325:*4*  326:*11*  354:*19*  356:*14*  389:*3*

**anyway** 380:*12*

**apart** 376:*17*  378:*22*

**apparently** 263:*7*  304:*4*  322:*14*

379:*21*  380:*2, 12*  384:*11*

**appeal** 392:*7*

**Appeals** 301:*13, 18*

**appear** 222:*21*

**appearance** 259:*11*  321:*23*

**APPEARANCES** 211:*1*

**appears** 232:*3*  357:*10*

**applicable** 214:*4*  298:*22*  304:*7*

**application** 223:*12, 17*  224:*7, 9*  301:*22*

**apply** 297:*21*  316:*8*

**appointment** 228:*18*

**appreciate** 269:*21*

**appropriate** 218:*2*  340:*3*

**approval** 239:*1*  252:*2*  284:*7*  290:*20*

**approve** 284:*23*

**approved** 257:*3*  283:*12*  285:*9*

**approving** 251:*8*  283:*2*

**approximately** 278:*21*  318:*19*  331:*20*  379:*22*

**April** 224:*21*  227:*24*  228:*12, 14*  229:*10, 13*  230:*8*  299:*10*  302:*1*  307:*23*  308:*5, 22*  309:*24*  310:*12*  313:*24*  314:*6*  315:*10*  316:*11*

**arguable** 304:*8*

**arguably** 266:*7*

**argue** 344:*13*

**arguing** 302:*4*

**argument** 307:*1*

**argumentative** 230:*10*  248:*7*  268:*15*  270:*4*  274:*18*  275:*6*  296:*8*  298:*18*

300:25   305:13
311:17   313:6
316:17   317:22
322:25   329:25
330:10   331:1
340:10   344:8, 16
356:16   373:22
387:2
**arguments**   341:17
**art**   333:9
**articulated**   267:18
319:19   328:20
333:25   344:12
**articulating**   268:10
**ascertain**   271:15
**asked**   216:5, 10
229:2   230:21
231:15   233:12
274:2, 10   277:3, 14,
22   281:3   297:8
298:18   302:17
313:6   314:13
325:6   327:6
341:24   342:8, 18
346:19   347:2
348:1   349:11, 12,
20   351:17   353:2, 8,
19   354:17   355:6
372:14   380:23
**asking**   218:10
226:17   228:20
230:3   246:16
247:5   248:19
249:2, 3, 3, 7, 11, 18
251:19   269:20
301:16   302:15, 21
370:2   374:1, 3
**asks**   216:24
**asserted,**   327:17
**asserting**   282:22
**assertion**   339:16
**assigned**   217:2, 9
365:16   366:5, 12,
21   367:2, 12
**assist**   219:13
222:11   264:4, 7
**Assistant**   264:18
357:5
**assisted**   256:4
**assisting**   217:18
225:3   232:25

**associate**   334:14
350:11   356:11
362:20
**Association**   221:18
**assume**   242:20
254:12
**assumed**   386:2
**assuming**   254:1
**Asterisk**   302:19, 21
**asterisked**   302:18
**attach**   388:16
**attached**   246:1
368:15, 17, 19
369:12   371:13
377:25
**attaches**   375:8
**attachment**   358:24
360:5   377:13, 18
378:20   379:12
380:14, 18
**attachments**
212:13   213:10
**attempted**   297:4
**attempting**   218:16
**attend**   227:1, 4
**attendance**   238:16
**attended**   264:14
338:11   339:14
344:21
**attending**   253:17
**Attorney**   241:3, 9
335:17   336:24
394:12, 13
**attorneys**   253:16
**August**   342:12
343:4   345:14
346:14
**authoritative**
298:15, 21   301:12,
17, 23   307:15, 22
**authorities**   323:4
**authority**   215:7, 18
273:20   297:24
298:8, 11, 22
299:20   301:3
307:14   311:8, 11,
21   312:5, 12, 14, 16,
17, 22, 23   342:20
343:1, 5, 6
**auto-populates**
382:20

**available**   260:4
262:15, 17, 20
267:14   271:1
**avoid**   266:21
336:16
**aware**   220:10, 11,
15   235:25   236:7
246:15, 20   253:16
273:16   276:4, 9, 23
277:9, 19   278:8
282:20, 25   283:2,
11   284:23   285:8
299:18   300:1, 8
301:2   305:5, 15
310:7   311:21
321:23   325:3, 22
366:17, 25   367:1, 7,
9   370:23   371:2
373:14   381:15
385:14   387:3
389:16
**awareness**   290:19
**AYON**   211:3

**< B >**
**back**   225:14, 17
226:10, 16   231:2
233:8, 8   234:18
237:16   238:7, 9
241:16   244:3, 6
245:2, 4, 7   246:15
265:21   267:6
270:23   279:12
281:9   297:8
322:18   324:1
332:23   335:14
345:3   373:6
374:20   384:6
**ban**   261:9   268:19
271:12   272:3, 6, 13,
21   276:8   304:15
309:1   320:12, 20
322:8, 13, 14
326:19   327:24
334:6   344:22
390:16   391:20
**banned**   289:16
312:19   320:13
333:18   334:3, 4
364:19   391:17

**bar**   221:11, 12, 18
**BARRAZA**   211:3
**Barton**   334:11, 13
346:18   347:13, 15,
24   349:11, 12, 20
350:7, 10   352:11
354:11   356:11
**Barton's**   347:15, 18
**base**   307:9   328:6
**based**   223:13
274:8   276:10
290:8   297:23
298:8   304:1
307:11, 14   329:8
337:23   374:17
**basis**   290:2   311:8
349:23, 24   357:11
**Bates**   212:8, 11, 13,
16, 20, 23   213:3, 5,
5, 10, 14, 16   242:8,
13   244:11
**bathroom**   266:13
273:9   293:6
311:24   368:15
369:12   371:8, 11
373:11, 16   374:17
378:1, 3, 5
**bathrooms**   290:6
294:10   329:14
372:24
**bathrooms,**   371:13
**bears**   228:9
**began**   220:21
221:3
**beginning**   234:1
271:23   332:6
**begins**   305:21
316:6
**behalf**   216:20
282:14   283:3, 25
292:1, 12   297:18
304:13   310:23
333:1   339:2
340:24
**behavior**   306:14
**belief**   386:9
**believe**   221:13
224:3, 23   238:4, 23
239:9   242:1, 21, 22
263:21   267:4
269:10   273:17

274:9, 19  275:11
280:18  290:15
297:5, 7  302:20
321:19  324:3
328:1  334:9, 11
335:15  337:13
340:3  346:18
347:13  356:18
357:22, 23  358:14
364:7, 10  367:8
368:7  379:6
382:16  386:14
387:4  391:13
**believed** 323:18
324:4  337:24
390:21
**best** 294:20
295:19  306:8
**biggest** 221:20, 23
222:3
**bill** 220:10, 15
**bills** 216:13  217:2,
9
**bind** 216:21
**biological** 276:13,
25  277:11, 15, 21
**biologically** 258:25
260:6  267:16
271:4  328:12
**biology** 266:18
328:3
**blank** 323:11
**blurb** 223:12
**blurbs** 222:21
**Board** 333:11
**bodily** 317:18
**book** 217:5
225:24  237:18, 20
368:8
**BR** 212:20
**brackets** 306:15, 15
**Brad** 219:24
221:5  232:8
238:13  239:7, 19
248:5  249:18
251:15  259:19
261:14, 21  263:8,
16  264:25  265:25
266:8  269:25
270:16  272:13
274:15, 20  275:14,

23  276:21  277:3, 6,
16  278:1  281:18
284:14  285:14, 20
286:23  287:18
290:12  291:17, 21
292:2, 4  298:5
299:9, 17  300:23
304:16  305:9
306:21  309:2, 13,
19  312:19  316:13,
21  318:5, 13
319:23  320:7, 13
321:12  322:8
324:15  326:19
328:20  330:22
333:18, 19  334:3,
18  337:9  341:22
346:21  364:17
365:3  366:4, 11, 20
367:10, 15  373:19
374:5  375:9
384:25  385:7, 16
386:9, 21  387:18,
19  388:20, 25
389:8, 10, 14, 19
390:16
**BRADLEY** 210:3
373:8  375:6
**break** 227:5  238:1
254:19  331:22
359:23  392:16
**breaking** 318:20
**briefs** 387:5
**bringing** 337:7
340:23
**broader** 256:7
**brought** 289:18
**BRUCE** 211:10
225:11  234:21
237:16  241:13
**building** 262:5
263:3
**buildings** 271:6, 19
272:8
**bullet** 314:15, 15,
25  315:4, 7
**bulleted** 315:24
**bullets** 314:18

< C >

**call** 227:3  333:24
354:16  364:3
**called** 264:25
279:10  294:19
345:24  354:21, 25
**calling** 364:4
**calls** 243:5  321:8
337:11
**cancel** 391:4
**Captain** 257:2
263:23  264:19
324:12  376:12, 24
377:19, 22  378:18,
19  379:23, 25
380:11  382:10, 11,
12, 13, 19  383:9
384:7, 11, 14, 19
**caption** 215:12
**care** 371:10  378:5,
12
**carefully** 280:19
**Carlos** 334:8
347:12
**case** 212:17  213:5
214:20, 20, 21, 22,
23  215:3, 5, 7, 9, 10,
12, 14, 18, 19, 22
223:16  240:21
253:5  267:9
272:19  273:20, 23,
23  274:7  288:6, 12,
13, 15, 16, 22
289:14, 17  292:13,
14, 15, 20, 21, 22, 24,
24  293:2  298:12,
14, 14  299:19
300:9  301:5, 7, 7, 9,
13, 13, 18, 18  302:4,
12  303:13  304:5,
23  305:5, 7, 16
307:9, 11, 12, 13, 18,
22  309:6  310:14
311:13  312:5, 11
313:1, 12, 16, 17, 21
319:11  337:21
390:9  391:4, 5, 10,
12, 15
**cases** 214:19
292:11, 16, 20, 23
309:24  311:20

313:2  323:3
**category** 289:21
**cause** 234:12
239:25  240:19
290:7, 15  299:8
329:7
**CC** 382:13
**CC'ing** 388:4
**CCR** 210:24
394:20
**CCSD** 210:11
212:13, 15  233:20
236:22  248:8
328:9, 11  332:19
358:17  378:23
384:21  385:2
**CCSD000330**
213:14
**CCSD000331-336**
213:16
**CCSD001059-1062**
212:23
**CCSD001066-1067**
212:16
**CCSD001074-1079**
212:14
**CCSD001080-1081**
212:11
**CCSD001082**
244:10
**CCSD001082-1088**
212:9
**CCSD001907-1908**
213:7
**CCSD001910-1914**
213:10
**CCSD's** 233:17, 18
280:12  282:11
328:16  329:9, 13
330:5  331:5
332:10
**cease** 309:1
**certain** 268:8
**certainly** 226:1
**CERTIFICATE**
393:1  394:1
**Certified** 210:16
394:4
**certify** 393:19
394:5, 12
**Cha** 213:8  357:20

chain  362:5  382:6, 8

challenge  292:12

challenging  367:25

chance  254:20  279:4

change  221:20, 24  222:3  224:6  233:14  241:5, 8  246:11, 22, 24  249:19  250:19  263:10  265:6  287:8, 16  309:6, 12, 15  312:20  316:22  320:19  322:7, 11, 12  329:7  332:10, 13, 14  334:2  335:13  336:13  341:1, 6  346:2  347:8  359:13, 14  389:9  393:2

change,  328:14

changed  223:19  224:15  230:4  270:11  285:19  286:17  327:20  328:3  331:13  334:21  335:7  383:24

changes  224:25  225:4  239:7

changing  223:7  336:16

chapters  289:19

characterization  283:18  286:3  374:22  390:23

characterize  291:19

characterized  222:3

Charge  212:8  223:7  230:3  242:15  243:3, 13, 16, 25  245:20  246:1  247:3, 23  255:23, 24  257:24  290:8

charging  337:4

check  276:20  295:21  367:18

Chief  257:1  324:13  368:12  369:6  370:10  373:6  377:11  378:17, 21  379:4  380:7, 10, 10  382:9, 10, 14

chief's  380:3

children  389:20

children's  365:22

Chinchilla  212:15  319:8

choice  276:15  278:3  378:3

choice,  371:8

choose  317:17

chronology  240:13, 16

Circuit  215:14  301:12, 14, 15, 17, 21, 24  303:22, 25  304:18, 24  305:8, 20  306:3, 12  307:11  311:16

circumstance  307:19, 21, 21

citation  303:11

cite  303:16, 16, 20  311:20

cited  292:15, 17  299:14  304:23  312:4

claim  215:1  262:19, 21  267:8

claiming  386:18

claims  338:22

clarification  385:23

clarified  385:1

clarify  266:2

CLARK  210:6  213:12, 14  219:13, 23  221:11, 18  231:20  232:19  234:12  236:20  239:23  241:22  243:15  244:19  245:12  252:12  261:23  263:17  264:17  269:12  270:1, 17  275:4, 15  276:7  278:14

280:5, 6  282:14  291:6, 14  300:12, 16  304:13  308:6, 17  309:1, 3  314:7  315:10  316:12, 14  317:4  320:14  321:2  323:14  325:3  333:1, 20  334:5  337:7, 16  338:9  340:9, 15  344:23  365:15  379:16  380:20  381:15  388:15  390:15  394:3, 16

class  227:15  316:3

classes  223:14

clear  263:8  269:5, 11

clearer  234:19

clearly  296:25  297:15

close  391:4, 15

closed  241:10  306:15  371:9, 11, 15

closing  391:10, 12

collectively  282:7

come  269:8  270:18  273:15  284:22  302:2  326:15  327:4  335:2  340:4  341:12, 25  344:4  345:6  348:9  351:12  352:3  354:4  369:1

comes  237:19  345:21  358:9  390:1

coming  269:4

commencing  394:6

comment  380:12

comments  232:6, 7, 20  379:20

Commission  235:23  237:1  241:21  245:15  252:11, 15, 19  253:5, 13  257:21  258:9  264:11  265:11, 23  266:4

278:12  280:8  283:1  284:12, 13, 25  285:13  286:22  287:24  288:1, 23  289:2, 5, 8, 14  291:22  295:4  296:4  298:16  299:7, 12, 16  300:3  304:22  306:20  308:19  312:25  319:4  322:23  323:14, 18, 25  324:4, 16  326:14, 18  327:23  328:5  330:22  334:25  336:19  337:2, 6, 8, 24  338:6, 6, 12, 14, 18, 21  339:3, 9, 13, 14, 17, 19, 22  340:14, 20  341:5, 8, 14, 18, 21  386:17  390:10, 19  391:3, 7, 22  392:3, 6, 8

Commissioner  338:4

Commission's  278:25  291:15  298:4  329:5

commit  344:11

committed  234:13  263:15  280:7  338:9, 9  343:25

committing  236:22  279:1  281:18  285:1  288:2  299:8  323:18  324:4  338:23  340:16  341:9, 15  342:16  359:10  392:9

communal  289:17

communally  273:6

communicate  332:17  351:8, 8  352:4

communicated  251:9  261:4  283:1  322:18  336:23  343:10, 16  351:6, 22

**communication**
349:9, 19  350:14,
17  351:18  352:4
357:8
**communications**
222:19, 23
**Communiqué**
213:12  221:12
**community**  266:18
271:14  273:3
**Complaint**  239:11
251:15  258:3
**complaints**  254:11
282:19
**complete**  272:6
394:10
**completed**  388:1
**completely**  273:4
286:22  344:6
346:6
**complication**
332:15
**comply**  299:15
**complying**  375:16
**compound**  339:1
364:8
**comprised**  327:24
**computer**  230:23
231:5, 6, 7, 9
**concede**  305:14
**conceded**  263:3
**concerned**  309:13
**concerning**  228:6
**concerns**  241:4
321:24  337:21
**conciliation**  240:22
319:10, 20  320:18
322:6
**conclude**  321:17
**concluded**  288:2
306:3, 12  312:17
392:20
**conclusion**  341:16
**conduct**  232:15
323:16  338:7
339:15  391:21
**conference**  245:14
252:18  253:1
**confirm**  314:23
348:2, 5  349:13, 21

**confirmation**
348:12  350:16
**confirming**  380:2
**confirms**  252:15
319:9
**conformity**  290:4
329:12
**confusing**  280:16
322:13, 17
**confusion**  267:17,
22  268:3, 13
**connection**  216:4
239:12  241:17
346:16  349:7
**consider**  228:5
256:22  273:1
274:14  314:22
335:10
**consideration**  316:1
**considered**  304:19
306:22  336:21, 22
338:8
**considering**  299:19
**considers**  328:7
337:8
**consist**  222:18, 19
**consistent**  223:15
259:2  387:6
**constitute**  298:1, 24
**constituted**  337:15
**constitutes**  298:9
330:13
**consultation**  254:2
**contained**  219:15
241:25  242:16
243:17  255:25
**content**  332:15
**continue**  228:22
322:15  346:12
**CONTINUED**
210:11  212:4
213:1  214:10
226:11  305:8
309:18  322:21
**continuing**  329:22
**contracted**  309:23
**contradiction**  267:9
**contradictory**
292:3  318:4
**contrary**  226:10
265:24  331:3, 4

**conversation**
326:12  379:11
380:3  383:21
**convey**  340:13
**conveyed**  259:5
**copied**  357:5
**copy**  221:15
225:19  226:4
243:13  244:15
246:5  255:23
371:14  373:10, 20
374:6  376:22
389:12, 18, 18
**Correct**  215:15
228:11  229:14
231:10, 14, 18
235:25  238:22, 23
239:16  242:14
254:24, 25  256:2
269:8  270:21
272:22  275:17
276:17  283:12
292:23  305:11
307:8  308:23
309:14  312:8
313:10  315:11
317:20  318:11
323:24  327:24
329:11, 20  333:8
337:5  347:17
348:22  349:16
353:10  357:17
360:20  363:25
368:1  381:22
383:4  385:9
388:5, 21  389:1
391:11, 23
**corrected**  393:20
**correctly**  233:23
390:2
**correspondence**
241:3, 9  357:3
387:5
**counsel**  214:2, 2
216:13  239:6, 17
242:1  250:13
257:15  264:19
278:20  279:20, 23
291:10  308:10, 11,
12  309:23  314:8
318:4  323:21

333:2  334:8
383:7  394:12, 13
**counsel,**  242:2
279:22
**counsel's**  286:3
**country**  338:21
339:24
**COUNTY**  210:6
213:12, 14  219:14,
23  221:11, 18
231:20  232:19
234:12  236:20
239:23  241:22
243:15  244:19
245:12  252:13
261:23  263:18
264:17  269:12
270:1, 17  275:4, 15
276:7  278:14
280:5, 6  282:14
291:6, 14  300:12,
16  304:13  308:6,
17  309:1, 3  314:7
315:10  316:12, 14
317:5  320:14
321:3  323:15
325:3  333:1, 20
334:5  337:7, 16
338:9  340:9, 15
344:23  365:15
379:16  380:20
381:15  388:15
390:16  394:3, 16
**course**  255:6
359:24
**COURT**  210:1, 16
214:1  215:9
237:8, 22, 25  288:7
297:5, 8  299:4
301:12, 13, 17, 18
305:21  307:25
392:10  394:4
**Courts**  290:1
**COX**  210:24
394:4, 20
**create**  290:3
345:5, 7  377:14, 21
**created**  267:21, 24
268:14, 14
**creating**  378:23
**critical**  386:17

**CRR** 210:24 394:20

**current** 294:13 295:19

**currently** 230:22

**curriculum** 362:4

**cut** 218:1 372:15, 18

**< D >**

**DANIEL** 210:24 394:4, 20

**DANIELLE** 211:3

**dash** 306:16

**date** 219:8, 19 220:7 223:21 224:2, 13 228:10 243:7, 11 293:1 335:25 350:4, 24 363:3, 6, 10, 11 364:5 369:14 374:18 393:24

**dated** 212:10, 13, 15, 22 242:21 243:8 247:17 252:10

**dates** 219:20 222:8 256:13, 16

**dating** 231:1

**day** 317:13 394:17

**days** 278:21 323:21 370:13 375:18 379:10

**deal** 294:14, 20 296:4 322:2

**dealing** 231:22 232:6 282:19

**dealt** 223:16 292:25 345:23

**decide** 337:20

**decided** 241:5 247:6 289:18 290:10 297:21 335:6 338:5 388:16

**Decision** 212:17 214:25 245:13 247:13, 14, 14, 15 248:2, 2 249:16, 23 251:1, 7, 11, 14, 21 253:18 254:5, 13

274:7 279:11 281:8, 15, 22, 25 282:3, 7, 11 283:10, 15, 16, 18, 25 284:2, 11, 15 285:6, 13 288:13 293:1 298:16 299:6, 7, 10, 14, 21, 21 300:1, 18 302:1, 21 303:22, 25 304:21, 23, 24 305:8, 19, 20 306:19 307:11, 16, 16, 23, 24 308:22, 25 309:9, 18 310:5, 14, 25 311:3, 4, 12, 13, 14, 15, 16 312:4, 19 313:4, 5, 18, 22 314:7, 23 322:22 323:5 324:11, 20 325:18, 21, 25 326:2, 3, 4, 5, 6, 10, 17, 25 327:1 332:10, 14, 16 334:2, 7 335:13 338:11 341:16, 25 342:3 346:2 347:8, 13

**decision-making** 284:24

**decisions** 279:11 310:23

**declare** 393:19

**declared** 330:3, 20, 21, 21

**declined** 252:25

**declining** 252:17

**defecate** 317:13

**defecating** 366:13

**Defendants** 210:8 211:9

**defense** 309:24 314:8 318:3

**defer** 231:16

**defined** 346:3

**definitely** 230:11 254:1 331:4

**definitions** 306:16

**deliberately** 280:18

**Demand** 246:2

**demonstrated** 338:18 339:13

**denied** 247:7 276:11

**Dennis** 212:11

**department** 221:4 223:3, 7 232:24 233:4 243:15 249:15 253:14 256:5 259:5 264:17 271:6 308:7 312:21 328:22 368:13, 21 369:2 370:2, 3, 20 373:19 374:5, 19 375:9, 16 379:16 380:21 381:4, 8, 9, 19 384:21 388:10, 11, 12, 15, 20 389:7

**departments** 249:3

**depend** 301:20 307:17

**depends** 363:14

**depo** 225:18

**deponent** 300:12

**deposed** 265:24

**DEPOSITION** 210:11 214:16, 18 225:15 226:11, 11, 13, 15, 20, 23 233:12, 25 234:9, 10 235:6 238:5, 25 278:22 304:9 308:16 323:21 327:14 350:22 383:7 388:9 392:16, 20 393:20, 21 394:6

**depositions** 242:7

**Deputy** 335:17 350:9 356:8 362:15, 21

**designated** 216:21 267:19 304:13

**designation** 269:3

**DESIGNEE** 210:11 234:3 239:24 247:2 249:5 250:5 281:14 282:5 283:8 291:7 300:12 308:17 319:6 326:16

327:5 332:19 336:6 340:5 351:5 352:19 368:25 370:18 371:18 374:13

**desired** 246:23

**despite** 305:7 309:17 322:22 323:4 354:20

**detail** 269:2 279:5

**details** 243:8 288:20 387:16

**determination** 233:18 234:12 235:3, 8, 18 236:2, 22 237:2 240:14, 18 247:22 278:12, 16, 18, 19, 25 281:6, 17 282:16 283:22 284:7 287:25, 25 289:3 291:13, 16 296:10, 24 297:15 298:2, 4 299:12, 15 300:15 304:21 308:19 323:5 324:1, 2, 18 325:5, 21, 23 326:1, 11, 14, 23 327:7 329:6 331:4 337:14 392:8, 11

**determine** 240:25

**DETR** 212:10, 22

**develop** 379:12

**developed** 283:25 284:1

**development** 238:17, 25 283:10

**devise** 280:15

**difference** 342:25

**different** 275:8 293:17 346:6 384:23

**differently** 274:25 275:3, 9, 13 318:6 344:14

**difficult** 271:17 272:5, 14

**direct** 362:14

**directed** 232:15 345:5 379:23, 25

**389**:*3, 5*
**directing** 361:*18*
**direction** 261:*3*
263:7 383:*23, 25*
384:*1, 23* 387:*25*
388:*19* 389:*6*
**directions** 263:*15*
**directly** 318:*4*
362:*16*
**disagree** 229:*8*
240:*20* 273:*17*
298:*2, 9* 350:*1*
374:*22*
**disclose** 277:*4*
278:*2, 6* 318:*8*
**disclosed** 318:*14*
**disclosure** 276:*21*
277:*15*
**disclosures** 293:*23*
**discriminate**
223:*13*
**discriminated**
274:*24* 290:*12*
**discriminates** 303:*3*
**discriminating**
284:*14* 291:*17*
304:*25* 341:*22*
**Discrimination**
212:*8* 224:*17*
227:*16* 234:*13*
236:*23* 240:*1*
242:*16* 243:*3, 13,
16* 244:*1* 245:*20*
246:*1* 247:*23*
253:*5* 255:*23, 25*
273:*18* 275:*12*
279:*1, 17* 280:*7*
281:*18* 282:*9*
285:*2, 13* 288:*3, 10*
290:*8* 298:*1, 7, 10,
24* 299:*9, 17, 23*
300:*15, 18, 19*
304:*1, 18, 19* 306:*4,
13, 22* 307:*4, 7*
309:*10, 11* 311:*25*
319:*22* 323:*17*
324:*5* 329:*8*
337:*16* 338:*1, 8, 23*
339:*24* 340:*16*
341:*9, 15* 342:*17*
391:*9* 392:*1, 10, 11*

**discrimination,**
306:*17*
**discriminatory**
233:*20* 246:*12*
249:*20*
**discuss** 264:*20*
297:*11* 324:*23*
335:*1* 336:*4, 18*
338:*24* 339:*11, 16*
371:*17* 382:*23, 25*
384:*6, 8* 388:*8*
**discussed** 268:*4*
272:*25* 273:*10*
388:*14*
**discussing** 264:*6*
268:*6*
**discussion** 214:*1*
259:*14* 273:*8*
345:*4* 359:*9*
387:*16*
**discussions** 215:*17*
**dismiss** 236:*4*
241:*1* 335:*9*
336:*23*
**dismissal** 307:*12*
**disparate** 303:*5*
304:*2*
**dissemination**
332:*15*
**distinction** 338:*3*
**distribute** 388:*17*
**distributed** 351:*24*
357:*3*
**distributing** 379:*21*
**distribution** 353:*21*
**DISTRICT** 210:*1,
2, 7* 213:*12, 14*
215:*1, 2, 3, 13, 13,
18* 216:*20, 22*
219:*14, 24* 222:*1, 2,
12* 224:*6, 15, 20*
225:*3* 226:*12*
227:*14* 231:*20, 21*
232:*19* 233:*5*
234:*13* 235:*15*
236:*21* 238:*14*
241:*5, 7, 22* 242:*12*
243:*15* 244:*20*
246:*17, 20* 247:*3,
14, 18* 249:*16*
252:*13, 16, 17, 25*

257:*22* 259:*4*
261:*16, 23* 263:*18*
264:*17, 21* 265:*2*
266:*16* 269:*12*
270:*2, 18* 273:*24*
274:*19, 20* 275:*5,
15* 276:*8, 20* 277:*3*
278:*15* 279:*1, 16*
280:*6* 281:*15, 17*
282:*6, 14* 283:*3*
284:*1, 10, 11, 13, 15*
285:*1, 14, 16* 288:*2,
13, 21* 289:*9*
290:*10, 11* 291:*6,
16* 292:*1, 6, 13*
297:*19, 20, 22*
299:*8, 13* 300:*1, 8,
13, 14, 16, 17, 21*
304:*14, 16* 305:*5, 8*
306:*21* 308:*7, 17,
18* 309:*1, 3, 12, 15,
17* 310:*2, 23*
311:*13* 312:*18*
315:*11, 25* 316:*12,
14, 21, 24* 317:*5, 8,
19* 318:*5* 319:*20*
320:*9, 14, 18* 321:*3,
11* 322:*7* 323:*15,
16, 18* 324:*2, 7*
325:*4* 326:*19*
327:*6, 23* 329:*18*
330:*24* 333:*1, 10,
21* 334:*5* 336:*12,
15, 15* 337:*3, 7*
338:*10, 20, 22*
339:*23* 340:*9, 16,
19, 24* 341:*4, 7, 13,
20* 342:*5, 7, 13*
343:*4* 344:*24*
345:*15* 346:*14*
349:*18* 357:*21*
358:*3* 359:*16, 17*
361:*24* 364:*19*
365:*16, 20* 368:*13*
371:*9* 378:*4*
379:*16* 380:*20*
381:*4, 16, 20*
388:*12, 15, 25*
389:*6* 390:*16, 18,
20* 391:*8, 17, 20, 25*
392:*2, 7, 9, 10*

**District's** 216:*13*
230:*6* 234:*11*
235:*2, 7, 17* 239:*23,
25* 240:*2, 6* 245:*13*
247:*16* 249:*5, 17,
23* 250:*5* 251:*14,
24* 258:*2, 8* 261:*4*
264:*10* 266:*8*
267:*5* 268:*11*
269:*6, 10, 16, 24*
270:*7* 271:*18*
279:*13, 16* 280:*5*
281:*5, 9, 16* 282:*8,
20, 25* 283:*21*
284:*6* 285:*9*
286:*21* 291:*14*
295:*14* 298:*13*
301:*3* 309:*7, 23*
310:*4* 311:*9, 22*
312:*2, 5, 14, 18*
313:*14* 314:*8*
318:*3* 319:*13*
320:*1, 6, 12* 321:*20*
322:*17* 323:*6*
330:*20* 333:*24*
334:*3, 17* 337:*15,
17* 344:*1* 347:*8*
378:*16*
**diversity** 233:*3*
**divulged** 295:*20*
**do,** 306:*15*
**Doctor** 334:*12*
**document** 225:*21*
244:*20* 245:*5*
252:*10* 256:*12*
290:*16* 291:*12*
292:*9* 306:*24*
307:*1* 337:*12*
350:*8* 360:*15*
362:*9* 370:*20*
**documentation**
222:*9, 18* 230:*1, 12,
13, 16* 250:*11*
257:*22* 270:*10*
285:*18* 286:*16*
316:*22* 327:*20*
328:*1* 330:*14, 15*
**documents** 236:*4,
23* 237:*14* 241:*19,
24* 242:*5, 6* 243:*21*
244:*8* 247:*10*

310:*19*  319:*5*
343:*19, 24*  352:*10*
**Doe**  214:*20, 22*
215:*3*  288:*12*
311:*4, 12*
**doing**  230:*8*
291:*20, 21*  306:*21*
310:*12*  322:*3, 4*
330:*2*  376:*14*
377:*22*  391:*9*
392:*2, 4*
**Door**  212:*19*
**dotted**  314:*14*
**doubt**  340:*20*
**downgraded**
348:*20*
**Dr**  334:*11*  346:*18*
347:*13, 15, 15, 18,
24*  349:*11, 12, 20*
350:*7*  352:*11*
**drafted**  351:*24*
**drafting**  284:*6*
**drafts**  222:*20*
**due**  258:*24*
**duly**  214:*6*  394:*8*
**Dwight**  250:*1, 6*
251:*6, 13, 17, 20*

**< E >**
**earlier**  221:*4*
292:*14*  362:*9*
363:*7*  371:*3*
385:*22*
**early**  245:*8*
**easier**  237:*15*
**educated**  240:*1*
**EEO**  315:*1*
**EEOC**  212:*17*
213:*3, 5*  239:*8*
299:*6, 10, 13, 22, 22*
300:*18*  304:*22*
306:*19*  307:*10, 23*
308:*22*  309:*9*
310:*5*  315:*21*
330:*2, 21*  331:*3*
335:*21*
**EEOC's**  307:*15*
310:*13*  314:*23*
**effect**  216:*7*
219:*15*  220:*16*
222:*13*  223:*6, 24*

224:*5, 22*  229:*12*
230:*1, 7*  296:*5*
297:*12*  298:*17*
320:*15*  326:*22*
**efforts**  383:*12*
**eight**  375:*18*  379:*9*
**eight-hour**  317:*13*
**either**  236:*11*
243:*14*  255:*16*
266:*10*  282:*7*
291:*9*  293:*25*
317:*17*  326:*4*
356:*18*
**elaborate**  387:*15,
17*
**elect**  316:*7*
**Election**  244:*19*
245:*7*
**elementary**  357:*5,
10, 13*  360:*7*  370:*1*
**E-mail**  213:*8*
230:*21*  251:*22*
252:*1*  256:*11*
348:*6*  349:*9, 18*
351:*9*  352:*3*
369:*11*  371:*3, 5, 17*
374:*11, 16, 18*
375:*1, 12, 12, 19*
376:*6, 9, 10, 24*
377:*15, 16, 17, 17,
19*  378:*8, 15, 17, 18,
19*  379:*8, 9, 10, 12,
21*  380:*10, 13, 14*
382:*1, 9, 11, 11, 13*
383:*13, 22*
**e-mailed**  255:*9, 10*
370:*9*
**e-mailing**  357:*25*
**e-mails**  230:*2, 22*
231:*1, 8*  379:*15*
**embodied**  379:*14*
**emergency**  226:*25*
**employee**  276:*7, 10,
23*  277:*2, 5, 14, 20*
278:*1, 9*  292:*19*
303:*4, 7*  357:*23*
365:*4*  373:*15*
388:*12, 25*  389:*4*
394:*12, 13*
**employees**  232:*19*
276:*14, 19*  304:*25*

316:*10*  324:*9*
365:*7, 16, 22*  373:*9*
381:*17, 20*  387:*24*
388:*17*
**employee's**  277:*10*
**Employees,**  212:*20*
**employer**  276:*10*
292:*18*  303:*3, 8, 9*
310:*12*
**employers**  304:*24*
310:*11*  314:*21*
315:*6*  316:*8*  318:*2*
**Employment**  216:*9,
14*  221:*21*  222:*4*
223:*12, 16*  224:*7, 8*
274:*12*  294:*11*
**enables**  344:*4*
**enacted**  217:*17*
**enclosed**  243:*21*
**ended**  229:*16*
238:*15*  239:*2, 20*
351:*14*
**enforced**  337:*9*
**enforcement**
332:*16*
**enforcing**  324:*14*
**engage**  317:*17*
**engaged**  239:*14*
303:*5, 8, 10*
**engaging**  298:*6*
390:*20*  391:*21*
**ENGLAND**  211:*6,
6*  212:*4*  214:*11*
216:*1, 24*  217:*4, 24*
218:*7, 15, 21*
219:*10, 21*  220:*13,
20*  221:*1, 9*  222:*16*
223:*1, 18, 23*  224:*4,
14*  225:*2, 7, 10, 23*
226:*1, 8, 18*  228:*3,
8, 24*  229:*3, 22*
230:*19*  231:*3, 12*
232:*1, 11, 23*  233:*7*
234:*21, 23*  235:*12,
13*  236:*12, 15*
237:*6*  238:*3, 9, 11*
241:*13, 15*  243:*1,
10, 22*  244:*5*  245:*1,
11, 18*  246:*8*  247:*1,
12*  248:*4, 10, 18, 22*
249:*1, 13*  250:*3, 10,*

16, 22*  251:*4, 18*
252:*6, 21*  253:*3, 9,
24*  254:*14*  255:*21*
256:*3, 10, 18, 23*
257:*10, 17*  258:*5,
15*  259:*9, 18*  260:*2,
15, 21*  261:*1, 12, 19*
262:*9*  263:*1, 6, 14*
264:*2*  265:*17*
266:*22*  267:*20*
268:*5, 18*  270:*6, 14,
22*  271:*11*  272:*1,
11, 18*  273:*22*
274:*5, 11*  275:*2, 7,
21*  276:*6, 18*  277:*1,
13, 24*  278:*10*
280:*16, 22*  281:*7,
23*  282:*4, 23*  283:*6,
23*  284:*9, 20*
285:*11*  286:*8*
287:*9*  289:*7, 12*
290:*21, 24*  291:*1*
292:*10*  293:*10*
294:*3, 18*  295:*1, 12*
296:*1, 11, 16, 19*
297:*3*  298:*25*
299:*3*  300:*10*
301:*10*  302:*7*
304:*11*  305:*2, 17*
307:*5*  308:*3, 9, 13,
15*  309:*8*  310:*9, 20*
311:*10*  312:*1, 7, 15*
313:*9*  314:*2*
315:*16, 23*  316:*19*
317:*2, 11, 16*  318:*1,
10, 21, 24*  319:*2, 16*
320:*3, 5*  321:*10, 15*
322:*5*  323:*10, 12*
324:*22*  325:*1, 9, 11,
15*  327:*2*  330:*1, 18*
331:*8, 14, 21*  332:*1,
3*  338:*2*  339:*6*
340:*2, 12*  341:*3*
342:*2, 10, 11, 15, 22*
343:*12, 23*  344:*10,
19*  345:*2, 13, 19*
346:*8*  348:*17*
349:*3, 6, 17, 24*
350:*3*  352:*1, 16*
353:*5, 12, 18*  354:*2,
8*  355:*8, 14, 19*

356:4, 13, 20, 23
358:15   359:7, 20,
24   360:1, 21   361:4,
11, 20   362:6, 13, 19
363:1, 16   364:2, 11,
24   365:1, 8, 14
366:3, 8, 19, 24
367:6, 17, 23   368:5,
24   369:9, 21   370:6
371:4   372:1, 8, 20
373:17, 23   375:4
376:1   379:2, 24
380:6   381:1, 7, 18,
23   383:17   386:1,
12, 20, 25   387:10
388:18   389:23
390:5, 7   391:6
392:15
enrolled   214:24
273:25
ensure   361:12, 19
entire   282:22
entitled   360:5
entry   360:8
Equal   235:22
236:25   241:20
245:15   252:11, 19
253:4, 12   257:21
258:9   264:10
265:10, 22   266:3
278:12, 24   280:8
283:1   284:12, 12,
25   285:12   286:21
287:24   288:1, 23
289:2, 5, 8, 13
291:15, 22   295:3
296:3   298:3, 15
299:7, 12, 16   300:3
304:21   306:20
308:19   312:24
319:4   322:23
323:5, 14, 17, 25
324:3, 16   326:14,
18   327:23   328:5
330:22   334:25
336:19   337:2, 6, 8,
14, 24   338:5, 13, 18
339:3, 12, 17, 19, 21
340:14, 20   341:18,
21   386:16   390:9,

18   391:3, 7, 22
392:3, 6, 8
Equality   264:15
equally   316:9
era   230:22
Eric   212:17
especially   315:5
espoused   319:21
espousing   296:3
325:2
ESQ   210:13   211:3,
6, 10   212:2   214:5
393:19, 24   394:6
Ethan   280:1, 2
Ethan's   279:25
event   245:14   253:1
events   319:13
everybody   385:20
386:2
everybody's   267:1
273:1, 9
evidence   251:19,
25   271:22   276:3
277:8, 18, 22   278:7
287:7   317:22
328:2   330:9
341:7, 11, 13, 17, 19
342:4, 6, 12, 25
343:3, 3, 5, 8, 13, 14,
15, 18   351:20
352:5   353:3
367:5   370:19
375:15
evidencing   230:14
exact   219:8   222:7
238:20   253:7
287:20
exactly   235:11
243:9, 20   282:6
291:12   343:25
349:19
Examination   212:4
214:10
examined   214:7
394:8
example   223:11
344:5
examples   232:12,
14
exceed   216:18

exceeds   216:17
Excerpt   213:10
excuse   236:19
256:11   319:17
320:3   349:12
363:19   370:7
388:3
executive   233:2
256:4
Exhibit   212:7
213:2   215:25
216:3   217:6, 7, 13
218:10, 25   220:2
221:10   225:23
227:20   228:9
229:4, 4, 12, 17, 17,
24   231:19   232:4
233:16   236:9, 14,
18   237:8, 10, 12, 18
241:16, 25   242:16
243:18   244:13, 18,
21   245:20   252:9
254:18, 22   255:25
258:17   264:4, 5, 8
265:19, 21   267:6
270:23, 24   278:11
285:25   286:3, 14
287:5   289:24
290:24, 25   291:2
295:15   297:2, 11
299:1, 2, 5   308:4,
14   314:5   318:18
319:1, 3   323:8, 9
327:10   335:14
348:13   349:4, 5
356:5, 22, 25   360:2,
3   368:10   369:24
373:7   374:10
375:5   376:5, 6, 7, 9,
10, 12, 20   377:1
379:3, 14   380:7
389:24   390:4
EXHIBITS   212:6
213:1   225:9
227:7   237:5
exist   360:16
existence   229:9
322:9   352:21
existing   359:17
384:5

expectation   329:13
expectations   290:5
experience   232:18
experiences   231:22
232:5
expertise   231:16
232:5
explain   322:2
explanation   288:6
289:4   297:19
express   257:20
258:6, 12, 13
expression   216:8
224:8   227:15
289:21   290:9
329:8
extent   216:17, 18
220:4   229:18
235:10   248:21
271:21   277:8
278:5   287:3
293:7   337:11
339:1

< F >
face   297:20
facilities   241:7
246:12   247:6
249:20   261:23
263:18   266:20
269:13   270:2, 17
271:8, 18   272:7, 14
275:15, 16, 24, 25
285:15, 22, 23
292:6   293:5, 6, 22
294:22   295:7
299:24   300:23
305:10   309:3
312:20   315:9, 18
316:14, 14, 24
317:4, 5, 7, 19
320:14   321:3, 13
330:24   333:20, 21
334:5, 19   344:23
364:18   365:23
366:12, 18   367:3,
12, 20   378:4
390:17
facilities,   367:1
371:10

**facility** 276:*15*
293:*14, 24* 365:*11,*
*17*
**fact** 226:*16*
258:*24* 262:*1, 3, 12*
263:*3* 269:*14*
286:*23* 294:*4*
295:*5* 332:*25*
336:*20* 338:*19, 22*
339:*11* 340:*22*
354:*20* 384:*6*
385:*7* 388:*14*
**factors** 316:*1*
**facts** 250:*24*
271:*21* 272:*4*
276:*3* 277:*8, 18*
278:*7* 317:*22*
330:*9* 343:*11*
367:*5* 383:*7*
**failed** 317:*3*
386:*17*
**Fair** 216:*9* 238:*19*
239:*15* 240:*7*
245:*24* 253:*18*
274:*12* 291:*19, 23*
314:*3*
**familiar** 215:*11*
**familiarize** 216:*6*
**families** 306:*4, 6*
**FAPR** 210:*24*
394:*20*
**far** 239:*21* 249:*21*
256:*7, 24* 283:*7*
**favor** 215:*1*
**February** 212:*13*
242:*22, 24* 245:*8,*
*23* 254:*22* 255:*14,*
*20* 256:*12*
**federal** 300:*20*
301:*22, 23* 306:*22*
330:*3, 20*
**feel** 236:*17*
**felt** 299:*16*
**female** 258:*25*
259:*12, 21* 264:*21,*
*22* 285:*19* 286:*17*
293:*25* 327:*21*
328:*12*
**female-identified**
321:*22* 322:*1*
**females** 306:*6, 7, 13*

**Fernandez** 375:*19*
377:*9* 378:*9*
379:*4, 10, 11*
**Fernandez's** 379:*21*
**fifth** 338:*20*
339:*23*
**fight** 291:*22*
**figure** 230:*4*
288:*24*
**file** 290:*23*
**filed** 235:*22* 240:*6*
241:*1* 258:*3*
336:*23*
**filing** 335:*9*
**filings** 258:*8*
**finally** 227:*14*
280:*13*
**financially** 394:*14*
**find** 251:*20, 25*
272:*4* 282:*6*
284:*22* 300:*17, 20*
305:*3* 310:*22*
340:*15* 341:*11*
352:*9* 355:*21, 24*
356:*9*
**finding** 234:*12*
239:*25* 279:*17*
282:*9* 285:*13*
290:*12, 15* 299:*7*
322:*23* 392:*7, 11*
**fine** 236:*5* 304:*5*
342:*10* 351:*24*
**finish** 214:*14*
248:*6* 296:*13, 18,*
*20* 325:*8, 8, 10*
**finished** 226:*20*
383:*19*
**first** 214:*6* 217:*15,*
*21* 218:*11, 24*
224:*24* 239:*22*
242:*15* 244:*10, 13*
245:*14* 246:*21*
253:*1* 256:*24*
266:*6* 278:*16, 17,*
*18* 279:*4* 285:*24*
286:*2* 292:*16*
302:*25* 303:*2*
308:*19* 314:*25*
315:*22* 321:*20*
323:*13* 326:*13*
327:*13* 328:*10*

348:*20* 350:*22*
360:*11, 13* 363:*8*
364:*5* 368:*14, 18,*
*20* 375:*15, 16*
394:*8*
**Fitzgerald** 382:*14,*
*15, 20* 383:*10, 14*
**five** 231:*13* 309:*19*
**folks** 233:*5*
**follow** 361:*19*
371:*12* 376:*11*
**followed** 268:*2*
**follows** 214:*8*
361:*13*
**follow-up** 351:*7, 12*
**forced** 317:*7, 19*
**foregoing** 393:*20*
**form** 222:*10*
229:*7* 244:*19*
245:*7* 250:*25*
251:*7* 312:*3*
322:*8* 349:*21*
359:*15* 360:*12, 17,*
*25*
**formal** 345:*18*
355:*3*
**forms** 217:*19*
229:*11*
**formulating** 336:*12*
**forth** 214:*3* 233:*16*
**forward** 240:*21*
335:*11*
**forwarded** 377:*17*
378:*8* 379:*8*
380:*11, 13* 381:*16*
**forwarding** 377:*10,*
*13, 15, 18, 23*
382:*10*
**found** 280:*6* 288:*7*
300:*3* 324:*3, 15*
326:*13, 18* 369:*2*
**foundation** 337:*10*
**four** 329:*21*
**fourth** 245:*19*
**frame** 233:*8*
245:*8* 246:*16*
250:*12* 279:*12*
281:*10* 310:*3*
332:*23* 360:*17*
**FRCP** 210:*12*
214:*4*

**free** 236:*17* 321:*1,*
*2*
**frequent** 253:*10*
**front** 218:*10, 24*
227:*7* 229:*11*
235:*11* 237:*10, 14*
327:*11* 336:*8*
370:*21* 377:*3*
386:*16*
**full** 218:*3* 246:*10,*
*23* 247:*5* 249:*19*
302:*25* 303:*19*
**fully** 220:*9* 246:*17*
273:*16* 321:*22*
351:*13* 372:*17*
**functions** 317:*18*
**Further** 259:*10*
385:*23* 394:*12*

**< G >**
**gain** 310:*3*
**gender** 216:*8*
220:*11* 221:*22*
224:*7* 227:*14*
231:*23* 238:*13*
239:*7* 246:*11, 17,*
*22, 22, 24* 247:*5*
249:*19* 259:*11, 21*
264:*24* 266:*14, 19*
269:*14* 274:*20, 21*
275:*1* 276:*10, 11*
277:*4* 278:*2*
285:*19* 286:*17*
287:*23* 289:*20*
290:*8* 292:*19*
293:*5, 17, 18, 20, 25*
294:*21* 298:*5*
304:*6* 316:*2*
319:*24* 320:*9, 10*
327:*20* 329:*8*
331:*7, 13* 364:*13*
365:*7* 385:*25*
389:*15*
**gender-neutral**
260:*5* 265:*8*
266:*11, 20* 267:*15*
271:*2* 286:*12*
288:*8* 366:*18*
385:*2, 11, 21* 386:*4,*
*5* 387:*8*

**gender-specific**
262:6  315:9, 18
365:11
**General**  241:9
257:15  264:18
273:5  301:21
334:8  335:17
358:8  365:19, 23
376:16
**generalized**  218:9
**General's**  241:3
336:24
**genital**  265:6
276:20, 21  287:8
293:12, 23
**genital,**  328:14
**genitals**  220:1
232:7, 16, 17
250:19  270:11
277:5  278:3, 6
**Gervasi**  264:16
**getting**  244:23
335:9  368:18
**give**  226:6  237:16
371:14  389:18
**given**  251:23
289:4, 4  356:24
371:21  372:3, 11,
23  374:6  378:9
383:24  384:23
**gives**  303:11, 16
310:11
**giving**  235:14
**glasses**  377:5
**go**  225:14  236:8,
17  237:22  241:16
243:23  248:20
252:7  253:12
254:18  255:4
260:3  262:14, 16
265:19, 21  267:6, 6
270:23  278:11
286:4  296:20
304:9  318:18
321:2, 6, 12  325:10,
12  327:17  331:22
337:20, 21, 22
338:4, 12  339:4
340:22, 25  344:16
347:11  352:9
358:4  363:2

373:6  380:7
389:24
**God**  391:24
**goes**  287:13  328:6
329:3  357:10
**going**  216:7, 16
217:24  218:5
225:14, 17  226:10,
16  227:25  228:17,
21  229:8  235:9
237:2, 3, 14, 21
238:7  240:21, 24
247:16  249:18
254:7  258:13, 16
266:9, 17  272:14
273:2  274:22, 24
280:9  281:9, 16
282:8  284:15
286:2  287:2, 21
290:14  291:20, 21
300:22  302:5
320:19, 20, 24
323:16  331:5
334:20  335:10, 11
337:17, 18, 20
338:20  340:15, 22,
25  341:13  346:20
347:11  348:15
360:14, 24, 25
378:11  391:3, 15
**Goins**  215:10
274:7  292:13, 21,
24  307:12, 16, 24
308:2  311:3, 13
313:1
**Good**  214:12, 13
226:6  331:21
**gotten**  273:24
280:13  356:10
**governing**  315:7
**Government**
299:22
**granting**  288:14
**Great**  332:8
338:17  346:12
**Green**  214:24
273:25
**Greenberg**  212:20
234:10  235:1, 7, 14
236:1  240:10
241:18  242:3

250:1, 23  251:17
254:3, 6  257:7
278:20  279:20, 21
280:25  281:11
282:15  283:24
284:5, 18  290:19
291:10, 25  292:1
295:2, 10, 15, 18, 19
296:4  297:11, 18
301:2  310:22
311:2  319:5, 9
323:20  324:23
325:24  326:7, 16
327:3  332:25
334:8, 22, 23  335:1,
5, 23  336:4, 10, 18
338:10, 16, 24
339:11, 14  340:13
341:12  345:4
346:16, 22  347:12
348:1, 4, 8, 11
349:9, 20  350:5, 13,
18, 19, 20  351:4, 11,
13  352:2, 17  353:7,
8, 13, 14, 22  354:16,
16, 21  355:9, 22, 25
356:8, 9  359:3, 9
368:12, 20  369:6
370:9, 19  371:17,
20  372:2, 4, 9, 22
373:5, 18  374:4, 11,
21  375:5, 11, 19
377:8, 11, 23, 25
378:4  380:9
382:4, 9, 19, 22
383:2, 5, 5, 8, 10, 11
384:6, 10, 13, 14, 16
388:4, 8, 19, 23, 24
389:3, 5, 12  390:8,
10
**Greenberg's**
240:12, 15  292:12
296:2  297:2, 17
377:16  378:8, 17
379:8, 9, 10
**groups**  357:25
379:15  380:19, 20
**guess**  301:20
317:12  363:14
**guidance**  310:3, 18,
24  311:3  318:2

**guidelines**  246:13
249:21
**GUTIERREZ**
211:3

**< H >**
**hand**  394:16
**handed**  237:7, 9,
11  299:4  373:10,
15
**handles**  254:11
**happened**  253:8
255:13  363:21
**happens**  273:7
380:9
**happy**  227:4
**harassed**  274:25
**harassment**  224:16
232:2, 13  315:1, 21
**Harassment,**  232:4
**harkening**  238:9
**Hartford**  305:19
**he,**  254:15  353:6
**head**  346:18
347:16  361:18, 22
362:8, 9, 15
**headnote**  302:17,
19
**headnotes**  302:12
**headquarters**
262:12, 18, 23
**heard**  262:3
338:11  384:20
385:21
**Hearing**  213:3
236:3  240:25
241:1  323:16
328:6  334:24
335:9, 12  336:16,
20  337:19, 20, 22,
22  338:4, 7, 12, 19,
21  339:8, 15
340:23, 25  341:8,
18, 21  342:1, 8
346:23  347:11
348:14  353:20
390:23  391:4
**Heenan**  264:15
**held**  214:1  298:23
304:18  307:10

319:*10*  328:*8*
338:*13*
**he'll**  263:*23*
**help**  222:2
**hereunto**  394:*16*
**hierarchy**  361:*24*
**High**  214:*24*
274:*1*  368:*9*
**hold**  240:*24*
**Holder**  212:*17*
300:7  301:*25*
308:*21*
**holding**  300:6
308:*21*  336:*20*
**holds**  245:*15*
**hope**  336:*15*
**hopefully**  248:*22*
**hour**  379:7, *13, 23*
380:*17*
**Howard**  211:*11*
**Hughes**  211:*11*
**Human**  223:2, *16*
233:2  249:*21*

**< I >**
**i.e**  297:*13*  306:5
371:*13*  386:*21*
**i.e.,**  306:*13*
**idea**  272:*25*  289:*1*
334:*17*  336:*12*
337:*23*  346:*19*
361:*13*  363:20
369:6  386:*17*
**identifications**
266:*14*
**identified**  221:6
225:*18*  231:*17*
232:*25*  249:*10, 21*
264:*24*  293:*24*
346:5, *17*  356:7
385:*25*
**identifies**  293:*17*
**identify**  259:20
276:*19*  277:2
288:*22*  293:*19*
**identity**  216:8
220:*11*  221:*22*
224:7  227:*14*
246:*22, 23, 24*
274:*20, 22*  275:*1*
276:*10, 11*  289:*20*

290:8  292:*20*
298:5, *6*  316:2
329:*8*  365:7
**identity,**  306:*15*
**II**  210:*14*
**illegal**  233:*20*
234:*13*  236:*22*
279:*1*  280:7
281:*18*  285:*1*
288:*3*  299:*9, 17*
300:*3*  305:*9, 15*
322:*24*  324:*4, 15*
326:*20*  328:7
329:*22*  330:*3*
337:*8*  338:*8, 23*
339:*24*  340:*16*
341:*9, 15*  342:*16*
390:*21*  391:*22*
392:*9*
**immediate**  358:7
**impact**  383:*25*
**impacted**  216:*14*
**implement**  284:2
308:*21*
**implementation**
222:7  332:*15*
**implemented**
227:*13*
**implementing**
219:*14*  222:*12*
**implications**  310:*25*
**import**  338:*17*
**important**  269:*21*
339:*12, 17*  340:7
**impose**  348:*15*
**imposed**  311:*23*
332:*12*  345:*24*
346:*20*
**imposing**  298:*4, 23*
318:5
**inaccurate**  265:*11*
364:*3*  385:7
**inappropriate**
232:7, *20*  259:*22*
322:*4*  336:*22*
372:*17*  383:*12*
**include**  248:*3, 5*
289:*20*  313:*4, 5*
314:*24*  386:*17*
**included**  234:*25*
240:5  286:9

287:*10*  360:*14*
361:5, *16*  377:*17,
23*  378:*18*  385:*24*
**includes**  283:*18*
**including**  267:2
**inclusion**  316:2
**inclusive**  210:7
**incomplete**  265:*16*
266:7  385:*9*
**inconvenienced**
271:*16*
**incorrect**  265:*23*
266:7  385:*10*
**incredibly**  269:*20*
**incumbent**  386:*14*
**INDEX**  212:6
**indicate**  215:*18*
216:*25*  228:*17*
364:*17*  365:*3*
**indicated**  219:*23*
222:6  226:*12*
228:*19, 23*  240:*24*
250:*24*  258:*21*
333:5  335:*18*
351:*20*  363:*15*
391:*13*
**indicates**  221:*20*
229:5  246:*9*
285:*14*  288:*1*
358:*16*
**indicating**  223:*12*
252:2  263:*23*
278:*25*  313:*3*
330:*16*  384:*19*
**indication**  252:*16*
389:*19*
**individual**  247:*9*
322:*3*  371:*21*
372:*11*  383:22, *25*
**individually**  210:*3*
282:7  373:*15*
**individuals**  249:*4*
**inform**  324:*21*
371:7  378:2
**informal**  235:*22*
245:*14*  252:*18*
253:*1*
**information**
231:*22*  234:2
251:5  253:*11*
254:*10*  280:*4, 25*

281:*1, 4*  287:*4*
288:*11*  295:6
314:*9*  339:*9*
340:*23*  352:*18, 21*
353:*14*  355:*4, 10,
16*  356:*10*  377:*24*
384:*17*
**informational**
357:8
**in-house**  239:5
333:2
**initial**  255:7  382:*9*
**initials**  255:*11*
**initiated**  259:*23,
25*  334:*17, 20*
346:*19*  347:*11*
359:*3*
**initiating**  351:*14*
**initiation**  346:*21*
**injunction**  390:*19*
391:*1*
**insofar**  223:5
309:*12*
**inspect**  366:*20*
**instruct**  221:5
**instructed**  316:*20*
349:*12*  388:*23*
**Instruction**  213:5
318:2  334:*10, 16*
345:5  346:*15, 19,
23*  347:*16, 25*
348:*1, 5*  349:*13, 20*
350:*10, 14, 15, 18*
351:*6, 18, 23, 23*
352:5, *13, 25, 25*
353:7, *9, 15, 23*
354:*13, 17, 21*
355:*2, 4, 11, 16, 25*
358:*9, 10, 11*  359:*2,
15*  360:*8, 14*  361:*1,
6, 16, 17, 21, 23*
362:*2, 3, 5, 10, 15*
364:*13*  368:*14*
369:*17*  371:*22*
372:*23*  373:*10*
374:6  375:*8, 17, 17,
20*  376:*15*  378:*1,
11*  384:*17*  386:*22*
387:*24*  388:*24*
389:*9*

**instructions** 321:*20* 345:*7* 346:*23*
**instructs** 375:*6*
**intended** 268:*1* 341:*20* 342:*7*
**intent** 258:*12* 351:*21*
**InterAct** 357:*25*
**interested** 394:*14*
**intermediary** 362:*21*
**interrupt** 218:*3* 248:*17*
**interrupting** 218:*17* 296:*17*
**introduce** 236:*13*
**introducing** 236:*23*
**investigation** 329:*5*
**involved** 215:*6* 224:*25* 225:*5* 230:*15, 17* 248:*3, 8* 250:*25* 251:*7, 21* 282:*17* 284:*24* 316:*2* 324:*12* 325:*24* 326:*10* 332:*13, 22* 333:*2* 334:*7* 347:*2, 13* 356:*19* 394:*13*
**involvement** 238:*12, 15* 239:*18* 252:*1* 282:*24* 283:*9, 14, 21* 285:*5* 347:*18, 19* 351:*19*
**inward** 306:*14*
**irrelevant** 228:*2*
**ISMs** 253:*13*
**issuance** 310:*13* 348:*19* 363:*11*
**issue** 221:*14* 257:*3* 259:*15* 267:*25* 270:*16* 293:*16* 301:*3, 20* 305:*6* 311:*22* 339:*12* 340:*21* 341:*2* 343:*11*
**issued** 227:*22* 228:*12* 229:*1, 7, 8, 9* 237:*2* 294:*15* 299:*10* 304:*22* 306:*19* 307:*23, 24*

308:*22* 309:*10* 324:*1* 329:*1, 6* 333:*12* 348:*13, 23* 350:*15* 360:*12, 23, 25* 363:*6* 364:*5, 12* 369:*16* 388:*24*
**issues** 226:*25* 238:*13* 239:*6, 18* 316:*1* 357:*8* 383:*22* 391:*14, 16*
**issuing** 359:*15* 375:*17*
**it,** 371:*14*
**Item** 264:*11, 12*
**items** 378:*10*
**iteration** 363:*23*
**its** 221:*19* 224:*6, 8, 15* 241:*5* 252:*17* 280:*11* 287:*14* 288:*6* 289:*3, 4* 299:*16* 305:*9* 309:*1, 12, 15, 18* 314:*9* 316:*4* 322:*8* 324:*1* 326:*19, 19* 328:*6* 333:*15* 336:*13, 16* 337:*17* 340:*21* 341:*6* 352:*21* 370:*1* 381:*20*
**IX** 215:*1* 273:*23* 288:*14* 289:*18* 292:*14, 20* 298:*12, 14* 299:*21* 304:*7* 307:*12* 311:*4, 12* 313:*1*

**< J >**
**Jane** 214:*22* 215:*3* 264:*15* 311:*4, 12*
**January** 212:*10* 241:*20* 242:*17, 23* 243:*25* 245:*8* 246:*16* 247:*6, 17, 18* 252:*10*
**Job** 210:*25* 223:*11* 224:*7* 271:*17* 272:*15*
**joint** 248:*2*
**JON** 210:*13* 212:*2* 214:*5* 264:*18*

385:*1* 393:*19, 24* 394:*6*
**Jones** 250:*2, 6, 13, 25* 251:*6, 13, 17, 20* 252:*1* 281:*12* 282:*20, 24* 283:*9* 284:*19, 21* 285:*5* 290:*20* 362:*16*
**journal** 221:*11*
**Juanita** 213:*8* 357:*20*
**judge** 304:*8*
**judgment** 214:*25* 273:*24* 288:*14*
**July** 212:*22* 319:*3, 15* 320:*2* 338:*6* 339:*19* 341:*19* 394:*17*
**June** 210:*15* 234:*8, 24* 279:*2, 7* 319:*10, 13, 20* 320:*1, 7, 15* 322:*6, 21* 323:*22* 328:*23* 350:*25* 394:*6*
**jury** 302:*3*
**justification** 272:*21* 289:*4*

**< K >**
**KATHLEEN** 211:*6*
**Kathy** 241:*14* 247:*20* 248:*16* 249:*8* 296:*15* 302:*2* 304:*9* 315:*20* 346:*7*
**keep** 237:*23* 269:*19*
**Ken** 377:*9* 382:*4* 383:*21* 388:*3*
**Kenneth** 264:*19*
**kept** 230:*15*
**Ketsaa** 257:*1* 324:*13* 373:*6* 375:*11* 377:*11, 25* 378:*17, 21* 382:*9, 10*
**kind** 251:*20* 273:*11, 11* 277:*22* 355:*3* 366:*16*
**kinds** 361:*5*

**knew** 220:*21* 221:*2* 256:*25* 258:*18* 300:*17, 21* 318:*13* 352:*19* 384:*13* 385:*14* 386:*2*
**know** 221:*3* 225:*5* 226:*19* 230:*14* 235:*11* 236:*6* 239:*17* 242:*24* 243:*4* 247:*25* 248:*19* 252:*24* 254:*10* 255:*2* 258:*11, 16* 263:*23* 268:*1, 2* 271:*24* 272:*24* 273:*1, 8, 14, 15, 19* 274:*2* 275:*11* 279:*24* 283:*7, 20* 285:*4* 287:*20* 289:*25* 294:*4, 8, 13* 295:*2, 13* 301:*4, 15* 302:*10, 12* 303:*16* 310:*1, 16* 312:*13* 313:*23, 25* 318:*23* 319:*10* 322:*2* 326:*8* 327:*25* 330:*15* 331:*9, 12, 13* 342:*25* 347:*4* 348:*7* 350:*11* 354:*1, 3* 356:*25* 358:*7, 19* 366:*7, 10* 369:*11* 371:*15* 378:*24* 381:*19* 382:*18, 22* 383:*20* 391:*1*
**knowledge** 300:*9* 383:*3*

**< L >**
**labeled** 212:*8, 11, 14, 16, 20, 23* 213:*3, 5, 7, 10, 14, 16* 385:*25*
**labor** 216:*14*
**laboring** 386:*9*
**Lack** 337:*10*
**ladies** 289:*17*
**laid** 386:*15*
**landmark** 304:*22*

language 217:19
229:16 239:1, 1
267:8
largest 338:20
339:23
Las 210:19 211:5,
7, 12
late 245:7 348:16
LAW 211:6
214:20 216:7
220:16 221:21
222:4, 12 223:6, 24
224:5, 18, 21
229:25 230:7
233:21 272:19
273:20, 23 274:8,
12, 15 290:7
292:25 296:5
297:12, 16, 20, 21
298:7, 16 299:9
300:4, 15, 20
301:22, 23 302:13
305:6, 7, 16 306:23
313:16, 17, 21
322:24 329:15, 23
330:3, 20, 21 331:3
341:15 392:10
lawyer 301:11
342:23
layer 361:23
laypeople 215:21
layperson's 333:16
leaves 287:3
left 288:23
legal 216:13
232:24 233:4, 4
239:5, 17 242:1, 2
248:12, 14 250:13
253:13 254:3
257:3, 12, 16
273:13, 20 278:20
279:20, 21, 22
282:16, 21 285:18
286:16 297:23
298:8, 22 301:2
306:25 307:14
308:7 309:23
311:8, 11, 21
312:12, 13, 16, 17,
22, 23 323:21
327:20 328:1

333:2 342:20
343:5, 6 370:2
383:6, 22
legal, 257:6
Legislative 213:12
221:19, 20, 24
222:3
Legislature 289:19
legitimacy 290:2
Letter 212:10, 11,
15, 20 236:2, 3
247:18 295:11, 15
296:2 297:2, 17
301:4 312:24
319:3, 8 327:9
letting 318:22
licensed 394:4
Lieutenant 257:2
264:19 324:12
377:9 378:9 380:1
lift 304:15 320:20
lifted 334:6
390:16 391:20
lifting 391:2
light 310:4
likelihood 221:16
254:2 340:14
limited 300:6
314:25 315:19
line 216:10 218:6
228:1 270:25
283:5 327:17
373:7 390:1 393:2
lined 390:2
lingo 333:10
List 213:5
listed 358:19
listen 280:19
listing 312:11
LITTLER 211:10
308:5 309:22
310:2, 10, 17
311:15 314:7
315:4 318:3
locker 315:8, 17
long 245:21
285:22 317:13
369:20
longer 390:19
391:21

longstanding
347:20, 22 351:21
352:6, 20 353:4
366:1 369:7
look 217:5 221:10
226:1 227:19
228:9 230:4, 21, 23
231:19 237:9, 11,
12 244:10 254:20
259:20 262:14, 16
264:3 279:5
291:2 292:16
294:20 295:18
301:25 302:15, 17,
21 303:15, 19
305:18, 21 314:4,
13, 15 335:14
339:18 340:1
352:10 358:16
363:2 369:19
374:10, 11 376:25
380:17 390:8
looked 230:24
242:7, 10 244:14
291:4 310:2, 17
356:5 370:18
looking 240:5
244:9 245:5
270:24 302:15
315:6 321:1
350:7 369:22, 23,
24, 25
looks 293:1
320:23 321:12
lopping 269:19
lunch 318:20
331:22, 24
lying 368:1

< M >
Macy 212:17
300:7 301:25
304:23 307:9, 16,
23 308:21, 25
309:6, 9, 16, 17
310:4, 14, 25
311:14 312:4
313:4, 18, 22 314:6,
23 322:22 323:4
Madam 237:25

magazine 221:17
Maginot 212:11
Mahan 288:13
MAIER 211:3
mailed 335:17, 18
336:11 390:10
maintain 230:18
340:21
making 224:25
225:3 283:19
295:3 302:3
310:22 367:16, 21,
24
male 221:6 232:8
246:11, 18 247:6
249:20 256:6
259:1, 11, 20, 20
260:7, 10, 16, 23
261:8, 15, 22 262:4,
21 263:10, 17
264:21, 22, 24
265:3, 5, 13, 25
266:9, 18 267:11,
16, 19 268:25
269:3, 14 270:1, 11,
17 271:4, 14 272:7
273:5, 6 274:22, 23,
23 275:4, 24
285:15, 17, 19, 21,
22 286:6, 9, 12, 15,
17, 24 287:7, 8, 10,
15, 22 290:5 292:5
293:25 305:10
309:2 312:20
316:13, 24 317:4
318:16 321:1, 12,
23, 25 327:19, 21
328:4, 11, 13
329:13 330:13, 16,
23 331:6 333:20
334:4, 19 344:23
364:17, 18 365:3, 4
378:3 385:8, 17
386:10, 22 387:9,
12, 13, 18, 19, 20
389:15 390:17
391:18
male, 371:9
male-identified
266:15

males 306:*14*
male-specific 270:*9*
male-to-female
  288:*8* 289:*15*
man 320:*23*
manager 233:*2*
  252:*12* 278:*14*
Mari 375:*19*
  377:*9, 19* 378:*8, 18,*
  *20* 379:*4, 20* 380:*2,*
  *14, 18*
mark 290:*24*
marked 215:*25*
  216:*2* 225:*8, 9*
  236:*14, 16* 237:*5, 8*
  260:*23* 261:*7*
  269:*14* 290:*25*
  298:*25* 299:*2, 5*
  302:*18, 22* 308:*13,*
  *14* 319:*1* 323:*9*
  349:*4, 5* 356:*22, 25*
  390:*4*
MARY 210:*24*
  394:*4, 20*
masculine 265:*1*
masculinity, 306:*16*
match 276:*12*
  277:*11, 21* 287:*8*
  293:*20*
matched 266:*18*
  276:*25* 287:*22*
  319:*24* 320:*10*
  331:*7*
matter 240:*25*
  241:*10* 257:*23*
  273:*17* 333:*18*
  338:*17, 17* 347:*10*
matters 216:*14*
  301:*22* 327:*16*
  332:*23* 333:*3*
McDade 334:*8*
  347:*12*
me, 259:*22*
mean 302:*3*
  319:*15* 341:*6*
  355:*3* 360:*11, 22,*
  *23* 361:*23* 363:*8*
  382:*8*
Meaning 294:*6*

means 228:*12, 14,*
  *25* 249:*4* 302:*20*
  337:*12* 360:*13*
meant 303:*8*
  386:*3* 387:*16*
measures 355:*21*
  391:*14*
medical 270:*10*
  316:*22* 330:*15, 15*
meet 306:*15*
  371:*7, 16* 375:*9*
  378:*2* 388:*20*
  389:*3, 6, 7, 14*
Meeting 212:*23*
  219:*22* 220:*22*
  238:*16* 262:*3, 13,*
  *19* 263:*25* 264:*14,*
  *21* 266:*12* 267:*1*
  268:*7* 270:*19*
  272:*12* 274:*15*
  278:*20* 287:*14*
  322:*7* 323:*20*
  327:*18* 328:*8*
  338:*11* 339:*13, 18*
  343:*15* 350:*21*
  367:*10* 384:*25*
  385:*20*
meetings 259:*3*
  344:*21*
member 221:*15*
  381:*11*
members 221:*18,*
  *19*
memo 239:*3, 13*
  243:*12* 256:*12, 17,*
  *25* 258:*20* 264:*5*
  267:*7* 270:*25*
memorandum
  254:*23* 255:*1, 4*
  257:*18* 267:*3*
memorialization
  230:*5* 349:*19*
memorialize 347:*19*
memorialized
  351:*10* 376:*23*
memorializing
  239:*12, 19*
memorized 225:*21*
memory 244:*14*
  245:*6*
men 280:*3*

MENDELSON
  211:*10* 308:*5*
  309:*22* 314:*7*
  315:*5* 318:*3*
Mendelson's 310:*2,*
  *11, 17*
men's 219:*25*
  221:*6* 233:*20*
  250:*18* 290:*6*
  320:*13* 329:*14*
  330:*7, 24* 331:*15,*
  *18*
mentioned 214:*19*
  215:*5* 273:*12, 19*
  292:*11, 13*
message 377:*10, 19,*
  *24* 389:*14*
met 374:*5* 376:*18,*
  *20* 388:*25*
Mia 212:*17*
middle 372:*16, 18*
mid-page 314:*11*
Mike 350:*10*
  356:*11*
mind 226:*22* 269:*9*
mine 226:*1*
Minnesota 215:*9,*
  *19, 22* 274:*7, 8, 12*
  292:*22, 25* 298:*12,*
  *14* 299:*21* 301:*13,*
  *18* 307:*13, 24*
minutes 254:*23*
  339:*18* 340:*1*
mischaracterize
  280:*15*
mischaracterizes
  220:*5* 235:*10*
  271:*21* 276:*3*
  277:*8, 18* 278:*7*
  280:*10* 287:*3*
  300:*5* 317:*22*
  324:*18* 326:*22*
  330:*8*
misdirection
  383:*13*
Misrepresents
  367:*4*
misspoke 347:*21*
misstated 286:*22*
mistake 382:*18*
  391:*25*

mistakenly 382:*20*
  383:*9*
moment 237:*21*
  252:*9*
month 350:*25*
months 224:*21*
  229:*25* 296:*5*
  297:*12* 309:*19*
  329:*21*
morning 214:*12,*
  *13* 344:*5* 373:*5*
motion 236:*4*
  241:*1* 335:*9, 11*
  336:*23*
Motivated 304:*6*
move 240:*21* 332:*9*

< N >
name 249:*4* 255:*7*
  277:*5, 14* 278:*1*
  279:*25* 373:*11*
  383:*10*
named 383:*13*
nature 280:*16*
  300:*6* 324:*18*
  326:*23*
necessarily 242:*13*
  289:*6* 322:*16*
necessary 285:*16*
  340:*4*
need 225:*8* 227:*1*
  237:*20* 285:*24*
  325:*11, 13* 328:*9*
  351:*20* 352:*5*
  359:*23* 372:*13*
  379:*12*
needed 266:*19*
  330:*17* 336:*12*
needs 230:*4*
  384:*22*
neglected 225:*12*
NERC 234:*11*
  235:*3, 8* 236:*22*
  239:*7, 10* 240:*7, 24*
  241:*9* 251:*15*
  273:*15* 282:*19*
  323:*15* 325:*5*
  329:*22* 390:*20*
NERC's 233:*17*
  235:*17* 236:*1*
  240:*13* 273:*16*

325:*21*  326:*11*
331:*4*
**neutral** 269:*14*
**NEVADA** 210:*2,*
*19* 213:*10* 215:*14*
216:*8* 222:*4*
223:*5* 230:*7*
233:*21* 235:*22*
236:*25* 241:*20*
245:*15* 252:*11, 19*
253:*4, 12* 257:*21*
258:*8* 264:*10, 16*
265:*10, 22* 266:*3*
278:*11, 24* 280:*7*
283:*1* 284:*11, 12,*
*25* 285:*1, 12*
286:*21* 287:*24*
288:*1, 23* 289:*2, 5,*
*8, 13, 19* 291:*15, 22*
294:*12* 295:*3*
296:*3, 4* 297:*12, 20*
298:*3, 7, 15, 16*
299:*7, 9, 12, 16*
300:*3, 4, 15* 301:*12,*
*17, 23* 304:*21*
306:*20* 308:*19*
312:*24* 313:*3*
319:*4* 322:*23, 24*
323:*5, 14, 17, 25*
324:*3, 16* 326:*14,*
*17* 327:*23* 328:*5*
329:*23* 330:*21, 22*
334:*25* 336:*19*
337:*1, 6, 8, 14, 24*
338:*5, 13, 17* 339:*3,*
*12, 17, 19, 21*
340:*14, 20* 341:*15,*
*18, 21* 342:*16*
386:*16* 390:*9, 18*
391:*3, 7, 22* 392:*2,*
*6, 8, 10* 394:*2, 4, 17*
**Nevada's** 290:*6*
329:*14*
**never** 214:*23*
255:*8* 263:*15*
273:*25* 278:*24*
317:*12* 330:*11*
341:*16* 343:*24, 25*
344:*20* 367:*12*
384:*19* 385:*22*
387:*18, 20*

**new** 216:*6* 218:*17*
223:*5* 224:*17*
225:*8* 229:*25*
230:*6* 231:*20*
274:*15* 296:*4, 25*
297:*12, 20* 298:*16*
332:*17* 345:*6, 7, 20*
346:*20* 360:*8*
371:*21* 375:*20*
376:*21* 377:*20*
378:*10* 384:*1, 7*
387:*24*
**newsletter** 357:*6, 7*
**newsletters** 358:*4*
**Nice** 241:*13*
**night** 382:*1, 1*
**Ninth** 215:*14*
301:*12, 14, 15, 17,*
*21, 24* 303:*22, 25*
304:*17, 23* 305:*8,*
*20* 306:*3, 12*
307:*10* 311:*16*
**no,** 322:*11*
**non-decision**
326:*10*
**Non-discrimination**
315:*1, 21*
**non-District**
371:*11* 378:*5*
**non-School** 371:*9*
374:*17* 378:*3*
**noon** 318:*19*
**normal** 255:*3, 6*
**NOS** 210:*11*
**notation** 229:*5*
**note** 216:*17* 302:*8,*
*9*
**notes** 344:*20*
368:*2, 4* 394:*9*
**Notice** 212:*8, 22*
213:*3, 5* 225:*15, 18,*
*20* 226:*11* 236:*3*
237:*16* 241:*20*
243:*2, 25* 244:*16*
323:*13, 22* 328:*6*
329:*1* 334:*24*
335:*8* 336:*4*
339:*10* 346:*22*
347:*10* 348:*14, 19*
353:*20* 355:*1*
375:*21* 378:*23*

379:*22* 380:*19*
381:*9, 10* 384:*16*
388:*17* 390:*9, 9*
**notice,** 355:*2*
**notices** 236:*25*
376:*17*
**notified** 246:*22*
323:*15*
**notifying** 374:*19*
**November** 215:*17*
219:*3, 11, 22*
220:*12, 22* 221:*4*
238:*15, 16, 18*
239:*2, 14, 18* 259:*3*
262:*2, 13* 264:*14*
266:*12* 268:*7*
269:*24* 270:*18*
272:*12* 274:*16*
287:*14, 18* 316:*20*
322:*18* 327:*18*
328:*8, 20* 343:*15*
344:*12* 345:*25*
367:*11* 385:*20*
**NRCP** 214:*3*
**NRS** 289:*19*
**number** 216:*4*
225:*12* 236:*24*
237:*14* 244:*11*
252:*7* 302:*20*
339:*1* 369:*23*
378:*10, 11* 387:*23*
**numbers** 225:*12*
242:*13* 253:*7*
**numerous** 298:*19*
361:*10*
**nutshell** 241:*12*
**NV** 211:*5, 7, 12*

**< O >**
**oath** 219:*2* 220:*14*
332:*5*
**object** 216:*16*
220:*4* 226:*16*
235:*9* 271:*20*
277:*7* 278:*4*
280:*9* 286:*2*
287:*2* 290:*14*
293:*7* 300:*5*
306:*24* 326:*21*
337:*10* 390:*22*

**objection** 216:*23*
217:*1* 218:*6*
219:*4, 17* 220:*19,*
*24* 221:*7* 222:*14,*
*24* 223:*9, 20* 224:*1,*
*11* 225:*1* 226:*9*
228:*1* 229:*18*
230:*9, 25* 231:*11,*
*24* 232:*9, 21* 233:*6*
242:*19* 243:*5, 19*
244:*2, 24* 245:*9, 16*
246:*6, 19* 247:*8, 19,*
*25* 248:*7* 249:*25*
250:*8, 15, 20* 251:*2,*
*10* 252:*4, 20* 253:*2,*
*6, 20* 254:*8* 255:*17*
256:*1, 8, 15, 20*
257:*8, 13, 25*
258:*10* 259:*7, 16,*
*24* 260:*12, 18, 24*
261:*10, 17* 262:*8,*
*24* 263:*5, 12, 19*
265:*14* 266:*5*
267:*12, 23* 268:*15,*
*16* 270:*3, 12, 20*
271:*9, 20* 272:*9, 17,*
*23* 274:*9, 17* 275:*6,*
*18* 276:*2, 16, 22*
277:*7, 17* 278:*4*
281:*19* 282:*1, 10*
283:*4, 17* 284:*3, 17*
285:*7* 288:*25*
289:*11* 294:*1, 16,*
*24* 295:*8, 23* 296:*7*
300:*24* 302:*6*
305:*1, 12* 308:*1, 8*
309:*5* 310:*6, 15*
311:*5, 17, 18* 312:*6,*
*9* 314:*1* 315:*12*
316:*16, 25* 317:*9,*
*15, 21* 318:*9* 321:*8,*
*9, 14, 18* 322:*25*
323:*1* 324:*17, 25*
326:*21* 329:*25*
330:*8, 25* 331:*11,*
*11* 338:*25* 339:*25*
340:*10, 17* 342:*14,*
*18* 343:*7, 22* 344:*8,*
*16, 25* 345:*11, 17*
348:*16* 349:*15*
350:*2* 351:*16*

352:*14, 23*  353:*11,
17, 25*  354:5, *24*
355:*13, 17*  356:2,
*12, 15*  358:13
359:5, *18*  360:19
361:2, 7, *15*  362:*1,
11, 17, 24*  363:13
364:*1, 8, 21*  365:5,
*12, 24*  366:6, *14, 23*
367:4, *14, 22*  368:*3,
23*  369:*4, 18*  370:*4,
22, 25*  371:23
373:*13, 21*  374:24
375:23  378:*14*
379:18  380:5, *23*
381:5, *12, 21*
383:15  385:18
386:*11, 19*  387:1
388:13  389:21
392:14

**objection,**  216:25
**obligation**  352:8
354:*3, 7*
**obviously**  380:*10*
384:*11, 14*
**occasions**  252:24
**occupancy**  266:*14*
**occupants**  321:*24*
**occupied**  263:2
**occurred**  349:*10*
369:14
**occurrence**  253:*10*
**October**  216:7
219:16  220:16
222:13  223:6, 25
224:5  239:14
261:23  297:13
298:17  333:21, 22
334:5, 6  345:25
349:11  375:18
376:24  378:20
382:2  383:*18*
384:6  390:*10*
**October-November**
332:11
**odds**  330:20  344:6
**offer**  288:5
297:11, 19
**offered**  215:16
239:23  240:10

**office**  216:13
222:9  241:*3*
248:*12, 14*  249:15
254:3  257:15
282:21  333:*3*
336:24  394:16
**Officer**  219:24
231:23  239:*10*
241:6, 7, 22  242:17
246:9, 16, 21  247:4
250:17  251:9
255:24  256:5, 6
258:3, 24  259:5, *14,
22*  260:9  262:*1*
263:16, 21, 24
264:15, 20, 22, 23
265:1, 3, 4, 7, 12
266:17, 25  267:2,
10  268:4, 11, 20, 23
269:5, 11, 17, 25
270:8  271:7, *13, 15*
272:5, 20  273:5
275:17  282:18
286:5  304:16
307:3  309:7, *16*
311:23  319:23
321:21  322:18
323:19  331:5, 9
333:18  334:3, 4
337:15, 23, 25
338:4, 12, 19  339:8
343:9  344:1, 12, 22
346:4  347:9
372:3, 10, 22  375:2
376:13, 20, 23
378:22  383:*18*
384:22  387:7
391:*17*
**officers**  376:17
378:24  384:*1*
**OFFICES**  211:6
249:2
**official**  357:21, 22
358:*3*  389:6
**officials**  221:4
259:5  277:*3*
**offsite**  378:*13*
**Oh**  306:7  314:17
318:24  370:24
391:24, 25, 25
392:6

**Okay**  214:17
220:14  226:8, 24
227:6, 21  234:6, 7
235:12  236:5
242:5  243:23, 24
244:9, 18  253:25
263:17  264:3
265:18, 20  267:6
270:23  280:20, 24
290:1  302:14, 19,
24  305:23  306:11
308:4  314:17
318:22  323:7
326:12  327:10
335:16  346:12
347:1, 6  356:20
358:18  360:4
368:6, 20  373:2
375:5  377:2
381:24  392:19
**OKAZAKI**  210:13
212:2  214:5, 12
218:8  226:14, 19
228:17, 22  236:17
237:7  238:4
248:19  249:2, 14
256:19  261:20
264:18  265:4, 9
269:21  271:5
278:24  287:1
291:3  294:19
296:12, 16, 19, 21
297:4  299:4
301:11  303:17
304:12  323:13
325:11, 16  332:4
342:23  346:9
349:7  356:24
360:2  376:4, 25
385:1  386:14
393:19, 24  394:6
**old**  215:23
**ones**  225:8  227:13
229:12  262:6
295:22  356:18
**open**  217:5  236:8
265:6  328:14
371:10, 13
**opening**  234:22
**Opens**  212:19

**operation**  263:11
316:23  361:9
362:*3*
**operations**  312:*21*
**opinion**  273:15
**opportunity**  237:9
**opposed**  235:23
251:8  281:*13*
283:19  293:8
384:18
**order**  237:23
278:3  290:6
293:13  310:13
329:14  330:23
336:1  352:9
**original**  377:*10, 24*
**OSHA**  293:4, *4, 11,
15, 21*  294:*4, 9, 11,
13, 20*  295:4, 6, 9,
20*  313:2
**ought**  310:4, *12*
**outside**  216:24
228:2, 20, 23
247:19, 24  281:19
308:*12*  310:24
311:7  317:*8, 19*
321:9
**outward**  306:*14*
**oversees**  358:*3*
361:24
**overturned**  392:*12*

**< P >**
**p.m**  331:24  392:2*0*
**P-4100**  213:*14*
**PAGE**  212:*3, 7*
213:*12*  232:*3*
234:8  244:*10, 13,
15, 18*  245:19
264:*3, 9*  285:24
289:24  292:16
293:*3*  301:25
302:15, 20, 25
303:*15, 15*  305:18
314:4, *13, 16, 17*
328:*10*  329:*4*
335:21  358:*17*
360:2  363:2
369:22, 23  393:2
**Pages**  210:*14*
245:*21*

paperwork 240:6
243:17 386:15
paragraph 256:24
258:21 292:17, 23
302:18, 22, 25
303:19 305:21, 24
306:2 314:10, 12
paren 265:6
328:14, 14
parenthesis 371:8,
9, 10, 12, 14, 15
Parkway 211:11
part 215:7 234:24
257:22 258:7
267:7 269:19
310:10 344:6
361:1, 17 375:16
391:1
participate 228:4
229:15 239:6
240:22 245:12, 13
252:25 253:19
participated
229:23 230:2
238:25 249:22
participation
230:6, 14, 16
238:17 250:7
252:17 285:5
332:13
particular 253:22
292:18 293:14, 25
301:5, 6, 9 385:25
parties 248:2, 8
356:17 394:13
party 337:4
passage 221:21, 24
passed 333:11
Pat 350:8 356:7
patrol 275:16
patrolled 276:1
PD 278:15 378:24
penalty 393:19
penis 330:6
penis, 330:12
people 215:21
231:16 232:14, 25
275:9, 13 281:21,
24 282:3 299:23
304:19 309:11
316:7 322:2

324:11 325:24
334:7 356:6 358:1
percipient 226:15
228:6 238:24
392:17
period 217:17
244:3 261:13
266:2 371:15
perjury 393:19
permission 276:12
permitted 221:5
258:7 260:10
261:8, 15, 22 262:7,
21, 23 265:25
267:10 268:23, 24
269:12, 25 270:8
276:14 286:23
292:2, 5 293:12, 23
316:23 317:4
318:15 364:18
365:4 385:7
386:21
person 215:6
230:24 261:21
268:6 293:12
303:4 382:21
389:5 394:14
personal 238:12,
14 383:3
personally 225:5
278:17 295:24
310:16 332:22
373:10
personnel 374:17
persons 293:22
332:13
perspective 319:14
pertaining 229:19
287:4
Phil 264:16
phone 226:22
227:2, 3
pick 297:6
picked 297:9
pinpoint 350:4, 6
place 240:23
271:12 272:3, 6
places 294:11
Plaintiff 210:4
211:2 332:12, 17

345:25
Plaintiff's 233:19
planning 318:20
pleadings 235:21,
22 236:25
please 217:25
218:15 236:17
237:13 244:9
248:16 267:8
271:5 276:19
277:2 280:12, 14,
19 281:13 291:2
302:23 306:8
323:10 358:24
360:5 368:7
371:5, 7, 15 373:11
375:20 378:2
379:3
Please, 371:6
point 215:22
243:3 292:2, 6
315:24 316:11
pointed 262:2
pointing 376:2, 3
points 302:4
Police 219:24
221:3 243:15
256:5 259:4
262:12, 18, 22
264:17 266:13
271:6 304:16
368:12, 13, 21
369:2, 7 370:3, 10,
19 373:19 374:5,
19 375:9, 15
376:17 379:16
380:20 381:4, 8, 16
384:21 388:10, 10,
15, 20 389:7
police's 379:4
policies 224:16
227:10, 19 229:16
242:11 314:22, 23
315:1, 7, 21 316:9
policy 224:19
225:6 228:25
229:5, 24 230:12
233:1, 19 288:6
315:13, 14 316:4
324:14 329:9, 9
332:11, 12, 14, 16,

17 333:5, 6, 9, 10,
12, 16, 18 335:6
336:16 345:6, 8, 10,
15, 18, 21, 24 346:1,
3, 17 347:20
359:13 363:3, 17,
18 368:22 369:25
370:5 389:13, 16
policy, 347:21
348:20
poll 366:16
portion 232:2
position 241:5, 8
250:14 251:23, 24
252:2 258:2
261:4 266:8, 16
267:5 268:11
269:6, 10, 17, 24
270:7 272:25
273:13, 16, 21
280:5, 11, 12
282:21, 25 283:2
285:9 286:21
287:15 289:5
295:14 296:3
297:24 298:13, 21,
22 301:4 305:16
308:2 309:7, 12, 15,
18 311:9, 20, 23
312:3, 5, 14 313:15
319:19 320:1, 7, 19
322:17 323:6
328:17, 19, 22, 25
329:10 330:5, 20
331:5 333:7, 25
334:3, 18 335:7, 13
336:13 337:9, 17,
18 340:21 341:2, 6
343:9, 16 344:1, 5,
6, 11 346:3, 20
347:9 376:21
378:16 387:5
possibility 273:11
334:20
possible 230:15, 15,
17 301:7 375:12
384:24
possibly 222:22
356:7
practice 218:9
255:3 300:2

309:18 318:4
320:13 322:8
324:14 326:19
347:22 348:6, 21,
23, 25 349:14, 22
352:20 359:1, 10,
17 360:23 365:20
366:1 369:7
**Practices** 216:9
274:12 294:20
295:20 314:22
328:7
**preceded** 214:22
299:6
**precise** 222:8
**pre-dates** 306:20
**preface** 331:3
**prefacing** 379:20
**pre-operative**
288:7 289:15
**preparation** 234:2,
5, 25 242:7 250:4
340:8 349:8
350:21 355:21
370:17 374:13
388:9
**prepare** 222:2
253:22 255:14
279:19 291:4
305:3 319:6 335:2
**prepared** 240:3
241:17 280:4
324:24 332:19
333:17 336:1
348:9 349:25
351:13
**preparing** 231:20
264:8 282:5, 15
283:7 284:6, 22
300:11 304:12
308:16 310:21
326:15 327:14
333:14 336:5
341:12 351:4
352:2 371:18
**present** 214:2
231:9 341:7, 13, 17,
20 342:7 346:10
**presented** 342:1, 4,
21 343:19

**President** 264:16
**pretty** 381:3
**previous** 233:12,
25 238:5 288:6
303:15 339:7
364:4 383:23
384:25
**previously** 227:11
228:18 292:21
384:23
**Price** 305:22
**primarily** 232:24
233:10 253:14, 16
254:13 282:15, 18
283:24 284:5
**primary** 233:4
**Principals** 213:9
357:4, 5 360:7
361:12, 14, 18, 22
362:4 368:9
370:1 381:14, 15
**printed** 314:9
**Printout** 212:17
**prior** 220:5, 12
353:21 363:23
394:8
**private** 314:21
**Pro** 213:8
**probable** 234:12
239:25 240:19
290:7, 15 299:8
329:7
**Probably** 215:9
240:12 256:21
273:19
**problem** 249:8
**procedure** 249:17
265:7 287:16
328:15 361:13, 19
**procedures** 224:16
241:4 314:24
316:9
**proceeding** 237:1
339:22
**proceedings** 239:8
249:24 257:19, 20
**process** 282:17
284:25
**processes** 254:11
**produce** 242:13

349:18
**program** 357:4
**programs** 233:3
**progress** 282:22
**prohibit** 292:18
300:23
**prohibited** 227:16
271:13 272:7
305:10 309:2
390:17
**prohibiting** 233:19
299:24 316:13
**prohibition** 223:5
260:9 266:1
275:23 286:25
287:10 297:25
305:9 311:23
334:18 366:5
385:17
**prohibitions** 219:14
**promised** 260:4
262:17, 20 267:13
271:1
**promulgated**
295:20
**pronouns** 265:1
**proof** 312:21
**properties** 316:24
**property** 317:8, 19
364:19 385:3
**protected** 220:12
223:13 224:8, 18
227:15 232:14
289:21 316:3
**Protection** 212:19
**protested** 367:19
**prove** 290:4
329:12
**provide** 232:12
250:23 251:5
258:1, 8 263:24
264:1 272:20
277:22 279:10, 11
280:3 288:20
309:23 373:20
384:22 387:12
**provided** 234:1
239:9 241:24
243:12 247:17
255:23 263:21
270:10 281:1, 2, 4

285:18 286:16
287:7 291:9
295:5 312:21
314:8 316:21
327:19 365:18
394:11
**provider** 293:22
330:15
**provides** 328:2
**providing** 245:22
264:5 352:17
387:24
**provisions** 297:1
**Public** 212:23
236:3 240:25
241:1 314:21
315:5 323:16
334:24 335:8, 12
336:16, 20 337:19,
20, 22 338:7, 21
340:22, 25 341:8,
18 347:11 353:20
**publication** 223:4
**publications**
222:22 310:18
**publicizing** 376:14
**publishing** 376:15
**purpose** 257:20
258:6
**purposefully**
344:11
**purposes** 362:3
366:13
**Pursuant** 210:12
289:18 394:14
**put** 227:2 268:19
323:10 343:24
351:21 353:3, 9, 19
355:6 356:1
363:9, 21 370:8
377:5 382:20
383:9
**putting** 226:22
357:24

**< Q >**
**quarrel** 234:16
**question** 217:21
218:1, 4, 8, 12, 16,
17 227:18 229:19
234:20 248:22

249:*14*  251:*14*
253:*23*  266:*13*
267:*21*  269:*20, 22*
271:*21, 24, 24, 25*
275:*20*  278:*5*
280:*19, 21, 23*
287:*3*  288:*15*
290:*18*  293:*8*
296:*14*  297:*7, 10*
315:*20*  320:*4*
325:*6, 14, 17, 18*
326:*22*  327:*3*
338:*25*  339:*4*
340:*11, 17*  342:*8, 9*
343:*13*  345:*12*
346:*10*  348:*16*
354:*19*  359:*23*
364:*23*  372:*7, 9, 14,*
*16, 17, 19, 21*
385:*23*  390:*24*
**questioning**  216:*10*
218:*6*  228:*1*  283:*5*
**questions**  214:*14*
216:*24*  218:*22*
225:*14*  226:*17*
228:*6, 20, 22*
232:*16, 17*  237:*4*
249:*8, 9, 11*  280:*14*
346:*9*  351:*7, 12*
**quick**  331:*22*
**quickly**  369:*25*
370:*2*  392:*17*
**quote**  303:*5*
306:*13, 17*  314:*15*
328:*8*  333:*12*
346:*2*

**< R >**
**R-4110**  213:*16*
231:*21*  232:*4*
**ramifications**
306:*25*
**rationale**  272:*24*
273:*8*
**RDR**  210:*24*
394:*20*
**reaction**  310:*4*
**read**  220:*2, 8*
227:*19*  233:*14, 23*
267:*8*  279:*5, 8*
297:*8*  302:*10, 12*

303:*2, 16*  306:*1, 9*
314:*10, 20*  316:*5*
371:*5*  393:*20*
**realize**  236:*19*
**realized**  347:*10*
**really**  392:*1*
**reason**  332:*12*
341:*1, 5*  393:*2*
**reasons**  233:*21*
**reassignment**
318:*7, 14*
**recall**  215:*6, 12*
216:*9*  217:*16*
219:*13*  221:*25*
223:*22*  229:*21*
231:*19, 25*  232:*10,*
22  234:*14, 15*
235:*3, 5, 14, 16, 16,*
19  236:*1*  238:*20*
239:*21*  242:*9*
243:*20*  244:*23*
245:*17, 21*  246:*7,*
15  254:*4*  258:*12,*
18  259:*14, 25*
262:*1*  266:*12*
268:*3*  269:*1*
270:*21*  271:*10*
273:*10*  312:*11*
367:*15, 21*  368:*1*
387:*6, 15*
**receipt**  242:*23*
334:*24*  335:*8*
346:*22*  353:*20*
**receive**  335:*23*
353:*14*
**received**  221:*15*
240:*18*  243:*2, 9*
244:*8*  245:*4*
252:*15*  254:*11*
268:*2*  352:*25*
353:*7*  355:*1, 3*
384:*16*
**receiving**  247:*10*
352:*12*
**Recess**  238:*2*
331:*24*  359:*25*
**recognition**  338:*24*
**recognize**  215:*2*
224:*22*  288:*3*
304:*3*  332:*4*
379:*20*

**recognized**  214:*20,*
21  220:*11*  290:*1*
**recollection**  218:*14,*
23  219:*7, 8, 19, 20*
220:*7, 9*  224:*13*
243:*9*  244:*7*
245:*3*  266:*25*
278:*19*  350:*8*
**recommended**
251:*16*
**reconsideration**
235:*21*
**record**  214:*1*
216:*18*  226:*10*
228:*16*  233:*15*
323:*10*  394:*10*
**records**  230:*16*
239:*7*
**reduced**  359:*3*
360:*24*
**refer**  214:*20*
**reference**  251:*12*
296:*9, 24*  297:*1, 14,*
16  360:*9, 15*  361:*1,*
6  365:*7*  368:*18*
**referenced**  312:*24*
376:*24*
**references**  292:*23*
**referred**  227:*11, 12*
274:*23*  333:*6*
**referring**  215:*19*
217:*1*  240:*9*
257:*6*  265:*2*
272:*20*  288:*16, 20*
289:*14*  293:*3*
305:*19*
**reflect**  224:*17*
**refresh**  245:*5*
**refreshed**  244:*14*
**refreshes**  350:*8*
**refuse**  245:*13*
318:*7*
**refused**  299:*14, 15*
**refusing**  300:*2*
304:*15*
**regard**  240:*12*
241:*4, 6*  257:*2*
258:*21, 22*  281:*5*
296:*10, 23, 23, 25*
297:*15, 25*  305:*6*
309:*7, 16*  311:*24*

346:*4*  347:*9, 20*
353:*1*  361:*9*
369:*8*  377:*20*
389:*2, 4*
**regarding**  239:*10*
290:*5*  329:*13*
347:*22*  349:*1*
362:*3*  378:*24*
384:*23*  387:*25*
**regardless**  277:*25*
316:*10*
**regards**  230:*12*
**regular**  308:*6, 10,*
11
**regularly**  366:*21*
367:*2*
**regulation**  224:*19*
225:*6*  229:*4, 6, 17,*
24  230:*13*  231:*21*
232:*3*  233:*1*
295:*9*  315:*14, 15*
316:*4*
**regulations**  223:*8,*
10  227:*10*  242:*11*
293:*4, 4, 11, 15, 21*
294:*5, 9, 11, 13*
295:*4, 6*  313:*2, 3*
**reimpose**  350:*1*
**reimposed**  337:*25*
**reiterated**  287:*14*
**rejected**  265:*3*
328:*11*
**related**  214:*15*
238:*13*  239:*6, 19*
303:*6*  355:*1*
**relating**  222:*20*
230:*16*  301:*3*
315:*14*  343:*11*
**relative**  258:*3, 3*
394:*12, 13*
**relevant**  256:*22*
293:*16*  305:*5, 7, 16*
307:*14*  311:*22*
312:*13, 16*  313:*16,*
16, 21  316:*1*
343:*11*
**relied**  305:*21*
384:*18*
**rely**  330:*14*
**relying**  215:*8*

288:22
remained 323:6
remedies 246:10
Remedy 246:2
247:4, 16, 22
249:18, 24 251:16
383:12
remember 222:7
248:21 262:10
263:23 269:3
279:25 347:4
367:24, 25
remembered 274:6
remove 237:16
repeat 234:17
271:23, 25 275:19
280:20 347:7
364:22
report 362:10, 14
Reported 210:24
297:5 394:6
Reporter 210:16
214:2, 3 237:8, 22,
25 297:5, 8 299:4
332:2 394:1, 4
reporting 388:2, 3
represent 216:20
representation
265:22
representations
295:3
representative
385:1
represented 266:24
representing
295:19 386:16
request 235:20
246:2 247:4, 17, 23
249:18, 24 256:6, 7
265:3 277:10, 10,
20, 25 328:11
requested 251:16
276:11 394:15
requests 263:25
require 259:11
260:5 267:14
271:2 273:18
290:4 293:8, 21
294:10 319:23

required 278:2, 6
293:19 320:24
321:21 330:17
requirements 214:3
requires 339:2
requiring 288:7
293:5 329:12
resolved 391:14
resources 223:2, 16
233:2
respect 273:9
respectfully 240:20
respecting 274:14,
20
respond 277:18
286:4 290:17
326:1
responded 240:19,
19 367:12
Respondent
278:13 286:14
287:14 288:5, 19
289:16
Respondent's 290:5
responding 217:25
218:18, 19 247:10
300:22
response 216:19
218:3 233:17
234:11 235:2, 7, 17
236:2, 2, 3, 21
239:9, 25 240:2, 13,
16 241:2 242:21
244:19 245:7, 23
247:16, 21, 22
249:17, 23 251:13,
15 263:22 264:10
273:14 277:10, 20
279:13 280:11
281:5, 9, 16 282:8,
16 283:22 284:7
290:23 291:13, 15,
20, 25 298:3
300:14 308:18
327:7 335:10
376:10 391:2
responses 240:6
291:3
responsibility
216:12 233:1

responsible 217:17
223:3 232:25
233:10 247:9
253:14, 17 254:13
282:15, 19 284:6
357:24 361:14
responsive 327:8
rest 236:16
restrain 248:16, 23
restriction 298:5, 9,
23 305:15 307:3
337:25 391:2
restrictions 337:15
343:17
restrictive 246:12
249:20
restroom 233:19
250:18 256:6
259:1, 12, 21 260:6,
10, 17, 23 261:7
262:22 265:4, 5
266:10, 16, 18
267:15, 18 269:13
270:17 271:3, 18
272:7, 13 273:6
275:15, 24, 25
276:12, 15, 25
277:11, 21 278:3
285:15, 17 286:6,
15, 24 287:7, 15, 22
288:9 292:19
293:6, 14, 18, 20, 22,
24 294:22 297:25
299:24 300:23
305:10 309:3
312:20 316:13, 24
317:4, 7 319:23
320:8, 25 321:13,
22, 25 322:1
327:19 328:4, 11,
13 330:7 331:6, 15,
19 332:11 333:20
334:4, 19 344:23
345:9, 16, 24 346:4
347:20, 22 349:1,
14, 22 351:15
353:2 354:18
355:5 358:22, 25,
25 359:8 360:6
364:16, 18 365:2, 9
368:21 369:8

376:16, 22 377:21
378:25 381:10
384:24 387:9, 12,
18, 19, 25 389:2, 4,
13, 20 390:17
392:16
restrooms 233:20
241:6 260:14, 20
261:6, 15, 22 262:4,
5, 14, 16, 22 263:10,
17 265:8, 13 266:1,
11 267:11 268:25
269:2, 18 270:1, 9
271:14 275:4
286:9, 12, 13
287:11 290:2, 3
292:5 315:8, 17
318:16 321:2
364:14 365:4, 11,
17, 23 366:2 385:2,
8, 12, 13, 17, 22, 24
386:10, 23 387:8,
13 389:16, 17
391:3, 18
result 255:22
283:16 308:25
309:16 314:6, 21
reverse 291:23
Review 213:12
216:13 217:2, 10
226:4 233:1
237:3 241:19
250:11 252:9
311:7 312:12
313:18, 22 314:21
394:14
reviewed 217:12,
15 219:3, 9 241:25
257:3 301:5, 6, 8
313:15, 16, 21
314:24 315:13, 14
319:6
reviewing 234:25
235:17 236:1
247:4
reviewing, 235:19
revise 223:14
revised 220:10
227:23 228:14
229:6, 10, 16, 17
233:15 315:15

316:*3*  356:*6*
363:*7*, *21*
**revising**  223:*4*
225:*6*  314:*22*
**revision**  217:*18*
222:*20*  228:*10*
230:*12*  363:*4*, *11*
364:*5*
**revisions**  229:*15*, *23*
**ridiculing**  232:*17*
**right**  220:*23*
231:*17*  237:*23*
259:*6*  288:*14*
293:*6*  296:*21*
303:*8*  306:*23*
314:*14*  318:*16*
320:*23*  329:*10*, *23*
333:*25*  342:*23*
343:*20*  345:*10*
357:*15*  360:*18*
362:*23*  369:*22*
373:*24*  383:*3*
384:*15*  386:*6*
391:*13*  392:*4*, *5*
**Rights**  235:*23*
236:*25*  241:*20*
245:*15*  252:*11*, *19*
253:*5*, *12*  257:*21*
258:*9*  264:*10*
265:*10*, *23*  266:*3*
273:*1*, *9*  274:*15*, *21*
278:*12*, *24*  280:*8*
283:*1*  284:*12*, *12*,
*25*  285:*12*  286:*21*
287:*24*  288:*1*, *23*
289:*2*, *5*, *8*, *13*
291:*15*, *22*  295:*4*
296:*3*  298:*3*, *15*
299:*7*, *12*, *16*  300:*3*
304:*21*  306:*20*
308:*19*  312:*24*
319:*4*  322:*23*
323:*5*, *14*, *17*, *25*
324:*3*, *16*  326:*14*,
*18*  327:*23*  328:*5*
330:*22*  334:*25*
336:*19*  337:*2*, *6*, *8*,
*14*, *24*  338:*5*, *13*, *18*
339:*3*, *13*, *17*, *19*, *22*
340:*14*, *20*  341:*18*,
*21*  386:*17*  390:*10*,

*18*  391:*3*, *7*, *22*
392:*3*, *6*, *8*
**ROBERTS**  210:*3*
214:*21*  219:*24*
221:*5*  231:*23*
232:*8*  238:*13*
239:*7*, *10*, *19*  241:*6*,
*7*  242:*17*  246:*9*, *16*,
*21*  247:*4*  248:*5*
249:*18*  250:*17*
251:*9*, *15*  255:*24*
256:*6*, *7*  258:*4*, *24*
259:*6*, *15*, *19*, *23*
260:*9*  261:*14*, *21*
262:*2*  263:*8*, *16*, *21*,
*24*  264:*15*, *20*, *22*,
*23*, *25*  265:*1*, *3*, *5*, *7*,
*12*, *25*  266:*9*, *17*, *25*
267:*2*, *10*  268:*4*, *11*,
*20*, *23*  269:*6*, *11*, *17*,
*25*  270:*8*, *16*  271:*7*,
*13*, *15*  272:*5*, *13*, *20*
273:*5*  274:*15*, *20*
275:*14*, *23*  276:*21*
277:*3*, *6*, *16*  278:*1*,
*5*  281:*18*  284:*14*
285:*14*, *16*, *20*
286:*5*, *15*, *23*
287:*15*, *18*  290:*4*,
*12*  291:*17*, *21*
292:*2*, *4*  298:*5*
299:*10*, *17*  304:*16*
305:*9*  306:*21*
307:*3*  309:*2*, *7*, *13*,
*16*, *19*  311:*24*
312:*19*  316:*13*, *21*
318:*5*, *13*  319:*23*
320:*7*, *13*  321:*12*,
*21*  322:*8*, *18*
323:*19*  324:*15*
326:*19*  327:*18*
328:*11*, *20*  329:*12*
330:*5*, *22*  331:*5*, *9*
333:*19*, *19*  334:*3*, *4*,
*19*  337:*9*, *15*, *25*
341:*23*  343:*9*
344:*2*, *12*, *22*  346:*4*,
*21*  347:*9*  364:*17*
365:*3*  366:*4*, *11*, *20*
367:*10*, *15*  371:*7*,
*20*  372:*3*, *10*, *22*

373:*8*, *20*  374:*5*
375:*3*, *9*  376:*13*, *20*,
*23*  378:*2*, *12*, *22*
383:*18*, *23*, *25*
384:*22*, *25*  385:*1*, *7*,
*16*  386:*9*, *21*  387:*7*
388:*20*  389:*1*, *8*, *15*,
*19*  390:*16*  391:*17*
**Roberts,**  375:*7*
**Rodriguez**  212:*10*
239:*10*  241:*21*
242:*21*  243:*2*
245:*23*  247:*11*
248:*12*  249:*22*
251:*17*  252:*12*
253:*21*  254:*2*, *5*, *6*,
*10*, *16*  258:*2*, *7*, *20*
264:*4*, *7*  267:*4*
278:*13*  281:*12*
282:*17*, *21*  283:*14*,
*20*  284:*8*, *19*
290:*20*  325:*24*
326:*7*
**room**  219:*25*
221:*6*  289:*17*
320:*13*, *23*  330:*24*
368:*11*
**rooms**  315:*8*, *18*
**routinely**  271:*7*, *19*
272:*8*  275:*16*, *25*
366:*12*
**rude**  296:*22*
**rudely**  218:*17*
**Rule**  214:*4*, *4*
347:*22*  348:*3*, *13*,
*21*, *23*  349:*1*, *14*, *22*
350:*16*  351:*15*, *21*
352:*6*, *20*  353:*1*, *4*,
*8*, *15*, *23*  354:*18*, *23*
355:*5*  356:*1*
359:*1*, *10*  360:*12*
363:*9*, *20*  364:*12*,
*16*  365:*2*, *9*, *9*, *25*
366:*1*  368:*11*, *14*
369:*3*, *7*, *12*  370:*7*,
*8*, *10*, *10*  371:*13*, *22*
372:*11*, *24*  373:*11*,
*15*, *20*  374:*7*  375:*8*,
*18*, *20*  376:*15*
377:*20*  378:*1*, *11*,
*24*  384:*5*, *7*, *12*, *15*,

*18*, *19*  388:*16*
389:*18*, *18*  394:*14*
**rules**  223:*7*, *10*
**ruling**  300:*6*, *7*
**rulings**  307:*20*

**< S >**
**saw**  218:*11*, *24*
242:*15*  278:*17*, *24*
327:*13*
**saying**  224:*24*
240:*20*  257:*12*
261:*13*  265:*12*
268:*23*  271:*14*
286:*20*  289:*2*, *3*, *9*
293:*21*  298:*13*
299:*23*  300:*22*
319:*25*  321:*3*
325:*23*  329:*9*
330:*12*  359:*8*
360:*22*  369:*12*
374:*2*  375:*20*
377:*13*  379:*1*
384:*7*
**says**  221:*23*
247:*20*  256:*4*, *24*
258:*22*  259:*10*
264:*13*  267:*13*
270:*25*, *25*  280:*11*
282:*11*, *11*  286:*14*
288:*5*, *19*  289:*6*, *13*,
*14*, *25*  290:*1*, *16*
294:*6*  297:*23*
302:*4*  303:*9*
304:*4*  306:*20*
314:*15*, *20*  315:*7*
327:*16*  357:*13*
358:*24*  359:*21*
360:*5*  361:*12*
363:*3*  365:*15*
368:*17*  377:*25*
378:*4*, *15*  379:*8*
383:*21*  384:*21*, *25*
386:*8*  387:*23*
**scan**  255:*11*
**scheduled**  253:*4*
**SCHOOL**  210:*6*
213:*12*, *14*  214:*24*
215:*1*, *2*, *3*, *13*, *17*
216:*12*, *20*, *22*
219:*14*, *23*  222:*1*, *2*,

12  224:6, 15, 20
225:3  226:12
227:14  230:6
231:20  232:19
234:13  236:20
238:14  239:23, 25
240:2, 5  241:22
242:12  243:15
244:20  245:12
246:17  247:3, 18
249:5, 16, 23  250:4
252:13, 16, 16, 25
257:22  258:8
259:4  261:16, 23
263:18  264:9, 17,
21  265:2  269:12
270:1, 18  271:18
273:24  274:1
275:5, 15  276:8
277:3  278:14, 25
279:12, 15, 16
280:5, 6  281:15, 17
282:8, 14  284:1, 10,
13, 15  285:1, 14, 16
288:2, 13, 21  289:9
290:10, 11  291:6,
14, 16  292:1, 5, 12
297:18, 20, 21
299:8, 13  300:1, 12,
13, 16, 17, 21
304:14, 16  305:8
306:21  308:6, 17,
18  309:1, 3, 12, 22
310:1, 3, 23  311:12
313:14  314:7
315:11  316:12, 14,
21, 24  317:5  318:3,
5  319:13  320:12,
14, 17  321:3, 11, 20
322:7  323:15, 18
324:7  325:4
326:18  327:23
329:18  330:19, 24
333:1, 10, 11, 20
334:5  337:3, 7, 16
338:10, 20, 22
339:23  340:9, 16
341:4, 6, 13, 20
342:5, 7, 13  343:4
344:23  345:15
346:14  347:21, 23

348:3, 6  349:1, 14,
18, 21  350:16
351:15  354:17, 18
355:5  357:5, 20
358:2, 22, 25
359:16  360:6, 7
361:9, 13, 24  362:2
364:19  365:2, 9, 15,
16, 20, 23  367:19
368:9, 11, 13, 15, 21
372:24  379:16
380:20  381:3, 10,
16, 20  384:12
388:12, 15, 25
389:5, 13, 16, 20
390:16, 18, 20
391:8, 17, 20, 25
392:2, 7, 9
**schools**  275:25
353:1  357:11, 14
361:25  362:8
366:4, 11, 17, 20
367:1, 2, 11  369:8,
13  370:1  371:12
373:11, 16  376:16
377:21  378:1, 25
381:14  384:18
387:25
**Schwenk**  303:13,
20  305:19  307:11
311:16  313:5
**scope**  216:17, 25
228:23  247:20
281:20  321:9
**Scott**  212:20
234:10  235:1
236:1  240:12, 15
241:18  250:1
251:17  254:3, 6
278:20  279:20, 21
281:11  282:15
283:24  284:5, 18
290:18  295:14
301:1  310:22
323:20  325:24
326:7, 16  334:7, 22
336:11  346:22
347:12  348:1, 4
349:20  350:4, 18,
19  354:16, 16
355:9, 21, 24

368:12, 20  369:6
374:21  375:5
377:8, 22  378:17,
21  380:9  382:6, 8,
14, 15, 19, 20  383:9,
10, 13  384:16
388:19  389:3
390:8
**scrutiny**  293:13
**second**  226:7
244:18  292:17
293:3  306:1
314:4, 13  328:8
329:4  358:16
371:6  383:24
**secondary**  376:14
**secretary**  379:5
**see**  217:21  221:22,
23  227:16  234:19
244:21  246:2, 13
252:22  257:3
258:21  259:12
260:7  264:9, 12
273:3  278:16
286:18  289:22, 23
292:14  295:18
302:8  303:11, 20
314:12, 17  315:2
323:13, 22  329:16
335:19  339:21
349:9  351:9
352:3  357:13, 18
358:19, 24  360:5, 6
363:3  366:11
368:16, 17  373:18
374:4  375:21, 24
376:6  377:6, 11
378:13, 15  379:13,
17  380:4, 21  382:2,
5, 7, 8  384:2  385:4
388:2
**seeing**  278:19
**seeking**  246:10
390:19
**seen**  310:10, 17, 18
362:9
**segregated**  290:2
293:6, 14  294:10
**send**  380:14
**sending**  338:19
370:24  371:2

377:9  380:1
382:9, 11  388:11
**sends**  375:12
378:18  379:10
380:3, 10
**Senior**  264:18
**sense**  227:23
304:8  333:16
**sent**  213:9  221:17
243:12, 14  344:1
370:19  377:11, 25
378:21  379:22
380:19  381:2, 10,
13, 20  382:1, 21
**sentence**  286:18
303:2  306:1, 9
316:5  371:6
**separate**  235:23,
25  236:6  376:17
378:21
**September**  213:9,
12  221:14, 17, 25
222:4  329:1
330:19  335:18
341:19  345:10
348:18  349:10
356:6  357:16
359:2  360:17
363:4, 22  368:10
369:15  370:8, 11
373:5, 19  374:4, 7,
20  375:13  379:9
**Sergeant**  264:16
**Seriously**  302:2
**served**  226:12
**session**  238:5
**set**  214:3  226:8
233:16  241:1
252:19  394:16
**settlement**  245:14
246:2  252:18
253:1
**Seventh**  210:18
211:4
**sex**  263:10  265:6
287:16  290:2, 3
293:14  294:10
303:6  312:20
316:22  318:7, 14
328:14
**sex,**  306:17

**sex-reassignment**
316:8
**sex-segregated**
295:7
**Sexual** 232:2, 4, 13
298:5
**sexually-based**
232:6
**shape** 222:10
250:24 251:7
312:3 322:8
**Shelley** 212:15
**shift** 317:14, 18
383:19
**short** 237:25
**shorthand** 394:9
**shortly** 242:20
255:19
**show** 216:2
222:10 225:7
267:7 330:23
341:8, 14, 22 349:3
**showed** 219:25
250:12 251:6
330:5
**shown** 374:6
**shows** 368:12
**sic** 303:5 306:4
**sign** 255:3 260:23
261:8 387:20
**signature** 255:5
380:4 393:21
**signed** 242:17
255:1
**similarly** 230:20
275:10, 13 355:24
**simply** 227:1
234:4 283:11
377:20 378:20
387:9
**single** 266:14
288:12 373:19
381:10 388:11
**singled** 371:21
372:10, 23 373:9
374:2
**single-occupancy**
266:11, 15, 20
267:18 269:2, 18
286:13 366:18

385:13, 21, 24
386:5, 22 387:8, 20
**single-occupant**
260:5, 10, 14, 16, 20,
22 261:5, 7, 22
262:4, 6, 21 265:13
266:1 267:11, 15
269:13 270:1
271:3 286:24
288:9
**single-use** 261:15
262:14 263:9, 17
268:25 270:8, 17
285:22 286:9
287:10 292:5
385:8, 17 386:3, 10
**sit** 235:5 268:8
269:9
**sites** 347:21, 23
348:3, 6 355:5
378:6
**sites,** 371:11
**sitting** 268:22
**situated** 275:10, 13
**situation** 266:21
297:22
**six** 224:21 229:25
296:5 297:12
**Skorkowsky** 350:9
352:11 354:9
356:7 362:7, 14, 21
**small** 254:19
**social** 306:16
**somebody** 233:9
293:16 324:21
**soon** 223:24 224:6
375:12 384:24
**sooner** 370:20
**Sorry** 225:11, 11,
12, 13 233:8
234:18 236:13
270:24 275:19
306:7 314:17
318:24 343:24
348:16 359:22
364:22 370:24
373:6 382:24
390:3 392:1
**sort** 216:5 227:2
235:20 236:6
314:8

**South** 210:18
211:4, 7
**Southern** 264:16
**speak** 248:23
250:6 279:19
284:21 296:21
324:24 325:12
335:3 352:9
**speaking** 298:11
359:1
**speaks** 292:9
306:24
**specific** 218:9, 14,
23 219:6, 8, 18, 20
220:7, 9 223:21
224:2, 12 243:8
244:7 245:3
254:9 278:18
280:12, 14 297:1,
16 300:9 312:11
313:12 335:25
364:14 383:23
**specifically** 217:3,
16 219:12, 13
234:15 265:4
276:24 294:14, 21
299:18 301:5
312:22 313:19
326:25 365:6
388:21
**specificity** 277:4
278:2 387:13
**specifics** 268:19
**specified** 294:22
**speculation** 243:6
321:8 337:11
339:2
**spoke** 254:23
**squared** 312:4
**ss** 394:2
**staff** 256:5 357:23
**stalled** 348:20
**stamp** 244:11
**stamps** 242:8
**stand-alone** 235:23
**standing** 216:23,
25 218:5 219:4, 17
220:19, 24 221:7
222:14, 24 223:9,
20 224:1, 11 225:1
227:25 229:18

230:9, 25 231:11,
24 232:9, 21 233:6
242:19 243:5, 19
244:2, 24 245:9, 16
246:6, 19 247:8, 19,
24 249:25 250:8,
15, 20 251:2, 10
252:4, 20 253:2, 6,
20 254:8 255:17
256:1, 8, 15, 20
257:8, 13, 25
258:10 259:7, 16,
24 260:12, 18, 24
261:10, 17 262:8,
24 263:5, 12, 19
265:14 266:5
267:12, 23 268:16
270:3, 12, 20 271:9,
20 272:9, 17, 23
274:17 275:18
276:2, 16, 22 277:7,
17 278:4 281:19
282:1, 10 283:4, 17
284:3, 17 285:7
288:25 289:11
294:1, 16, 24 295:8,
23 296:7 300:24
302:6 305:1, 12
308:1, 8 309:5
310:6, 15 311:5, 18
312:6, 9 314:1
315:12 316:16, 25
317:9, 15, 21 318:9
321:9, 14, 18 323:1
324:17, 25 326:21
330:25 331:11
339:25 342:14, 18
343:7, 22 344:25
345:11, 17 348:15
349:15 350:2
351:16 352:14, 23
353:11, 17, 25
354:5, 24 355:13,
17 356:2, 12, 15
358:13 359:5, 18
360:19 361:2, 7, 15
362:1, 11, 17, 24
363:13 364:1, 8, 21
365:5, 12, 24 366:6,
14, 23 367:4, 14, 22
368:3, 23 369:4, 18

370:4, 22, 25
371:23 373:13, 21
374:24 375:23
378:14 379:18
380:5, 23 381:5, 12,
21 383:15 385:18
386:11, 19 387:1
388:13 389:21
392:14
**stapler** 237:20, 22
**staples** 237:24
**start** 234:19 306:8
320:3 336:12
**started** 334:20
**starts** 314:10, 12
**state** 219:2, 12
220:2, 14 222:4
226:9 319:12
394:2, 4, 16
**stated** 287:4
295:11 301:4
343:8
**statement** 223:15
238:19 239:15
240:7 245:24
265:10 291:23
327:16, 22 328:16
367:16, 21, 25
**statements** 387:6
**STATES** 210:1
**stating** 263:8
285:18 286:16
**station** 266:13
**status** 220:12
227:15 304:2
316:3, 3, 10
**statuses** 223:13
224:8, 18, 18 230:7
**stay** 328:9 337:17
**stems** 337:13
**step** 336:25
**stepped** 220:22
**stop** 291:20
296:17 297:5
299:15 300:2
390:19 392:15
**stopped** 297:4
391:9 392:2
**straight** 373:4
**stream** 376:7, 11

**Street** 210:18
211:4, 7
**strike** 268:9
388:23
**student** 214:23
273:25 289:16, 16
366:2 389:17
**stuff** 378:12
**styled** 337:1
**SUBJECT** 210:11
214:15, 15, 25
216:5 233:13, 14,
14, 15 234:5
236:19, 20 238:5, 7
239:24 247:3
249:6, 7, 10 257:23
283:8 291:7
294:14, 21 307:1
332:9, 20 333:17
336:2, 6 345:3, 20
346:1 349:8
354:15 357:13
373:7 374:14, 16
375:6 378:19
**subjected** 276:8, 20,
21
**subjects** 226:13
234:3 250:5, 7
**submissions** 266:3
**submitted** 257:21
**subsequent** 285:6
**subsequently** 355:6
**substance** 307:17
**substantive** 283:9,
21
**substantively**
283:15, 25
**subvocalization**
297:6
**sued** 289:16
**suggest** 288:21
364:3
**suggested** 343:5
**suggests** 278:5
**Suite** 210:18
211:4, 11
**summarized** 267:3
**summary** 214:25
234:1, 11, 25 235:2,
7, 14, 24, 25 236:6
240:9, 12, 15

241:18 273:24
288:14
**summary,** 240:11
**superintendent**
248:13 250:6, 12,
25 251:6, 13, 20
252:1 281:11
282:20, 24 283:9
284:8, 18, 21 285:4
290:20 325:25
326:8, 9 334:10, 14
350:10, 11 352:11
356:8, 11 362:8, 12,
15, 16, 22, 22
**supervisor** 358:7
**support** 311:20
313:14 357:23
**supported** 250:14
312:5, 14, 18 329:7
**supports** 273:20
290:7
**supposed** 320:8
358:4 365:17
369:1
**Supreme** 215:9
301:13, 18 307:24
**Sure** 220:18
227:19 234:18
255:9, 13, 16 272:2
275:22 282:2
295:21 321:5
330:13 343:2
345:14 346:13
351:23 364:24
368:17 390:25
**surgery** 316:8
318:7, 15
**surgical** 220:1
250:19 265:6
287:16 316:10
**surprise** 261:20
**survey** 272:4
366:10, 16
**sway** 341:8
**switched** 274:22
**swore** 394:8
**sworn** 214:6

**< T >**
**take** 227:4 230:3
237:11, 12, 13, 19,

21, 25 254:20
273:13 277:25
299:13 300:14
304:17 308:20
321:11 331:22
345:14 352:10
359:23 368:2, 4
374:20 378:20
392:16
**Taken** 210:15
226:15 234:10
238:2 252:3
283:10, 15 284:2
331:24 346:4
359:25 391:14
**talk** 275:11 353:22
**talked** 225:15
273:11 288:12
292:21 315:20
340:21 346:15
354:22 383:6
**talking** 223:11
235:20 242:2
244:4 247:20
251:11 254:15
273:2 279:22
295:9 315:24
346:6 353:6
354:15 376:19
386:3
**tangible** 343:3
**task** 337:7
**tasked** 347:25
**teacher** 382:16
383:13
**technically** 225:17
**tell** 215:21 227:22
240:16 250:13
255:7 262:3
281:13 311:13, 14,
15 312:2 326:12,
16 327:3 335:5
338:10, 16 345:4
347:3, 6 348:9
350:13 351:9, 13
352:8 354:25
355:9, 10, 15
368:20 369:1
371:20 372:2, 4, 9,
22 378:12 383:2, 5,

*8*, *11* 384:*10*, *13*
389:*9*, *15*
**telling** 315:*5*
368:*12*, *13* 373:*18*
374:*4* 378:*16*
380:*1*
**tells** 358:*3* 373:*6*
375:*9*, *11* 379:*11*
**term** 328:*1* 333:*9*,
*9*, *15* 340:*18*
**terms** 387:*16*
**testified** 214:*8*
230:*20* 234:*4*, *8*, *24*
238:*4* 242:*6*
292:*3*, *4* 343:*19*
344:*7* 366:*15*
385:*22*
**testify** 214:*6*
220:*9* 240:*3*
242:*10* 279:*15*
280:*4* 327:*4*
333:*17* 336:*2*
340:*4* 344:*5*
349:*25* 351:*4*
354:*4* 394:*8*
**testifying** 285:*20*
385:*15*
**testimony** 220:*5*
234:*14*, *15* 235:*3*,
*10* 238:*10*, *20*
259:*2* 265:*9*
269:*1*, *15*, *23*
270:*15* 278:*23*
286:*25* 370:*17*
385:*6* 394:*10*
**texting** 226:*20*, *21*
**Thank** 226:*25*
233:*11* 240:*20*
254:*17* 318:*22*
390:*6*
**Thanks** 237:*17*
241:*14*
**then-existing**
233:*18*
**thing** 327:*8*
376:*14* 385:*19*
**things** 266:*23*
299:*25* 361:*5*, *8*
375:*7*
**think** 233:*9*
237:*15* 242:*6*

245:*19* 255:*6*
267:*17*, *24*, *25*
273:*4* 278:*17*
293:*15* 298:*9*
312:*10* 326:*3*
331:*21* 334:*9*, *10*
340:*19* 343:*10*
363:*8* 389:*3*, *14*
**thinking** 339:*3*
382:*19*
**thinks** 261:*21*
386:*13*
**Third** 211:*7* 293:*2*
303:*19* 314:*16*, *17*
**this,** 376:*19*
**Thomas** 212:*10*
280:*1*, *1*, *2* 281:*2*
**thought** 225:*16*
279:*17* 336:*24*
**three** 214:*19*
234:*3* 250:*7*
280:*3* 281:*12*, *21*,
*24* 282:*3* 304:*20*
331:*19*
**three-year-old**
298:*14*
**time** 214:*16*, *18*
217:*11*, *15*, *16*
228:*19*, *21* 231:*9*
233:*8* 242:*15*
243:*3*, *11* 244:*3*, *8*
245:*8*, *22* 246:*16*,
*21* 250:*12* 256:*25*
260:*6* 261:*14*
267:*16* 268:*3*
269:*10* 270:*7*
271:*3* 276:*9*
278:*17*, *18* 279:*4*,
*12* 281:*10* 300:*2*,
*21* 304:*10* 310:*3*
316:*11* 327:*13*
331:*22* 332:*1*, *23*
347:*16* 348:*12*, *18*
349:*10* 350:*9*
359:*17* 360:*11*, *13*,
*17* 363:*8* 364:*5*
368:*14*, *18* 371:*3*
374:*1*, *3* 394:*11*
**times** 253:*8* 274:*3*
298:*19*

**timing** 233:*21*
373:*4*
**Title** 212:*19* 215:*1*
273:*23* 288:*14*
289:*18* 292:*14*, *20*
298:*12*, *14* 299:*21*,
*25* 300:*19* 304:*2*, *7*,
*7*, *20* 306:*23* 307:*7*,
*12* 309:*11* 311:*4*,
*12* 313:*1*
**titled** 212:*17*
358:*24*
**today** 219:*2*
220:*14* 225:*18*
226:*13*, *15* 235:*5*
239:*22* 240:*3*
241:*17* 249:*5*
265:*9*, *12* 268:*8*, *22*
269:*9*, *15*, *23*
270:*15* 278:*23*
279:*15* 280:*4*
282:*6* 283:*8*
284:*22* 285:*20*
287:*1* 291:*4*
292:*3* 300:*13*
305:*4* 308:*16*
310:*21* 314:*9*
319:*6* 324:*24*
326:*15* 327:*4*
331:*10* 332:*6*
333:*14* 335:*2*
336:*2* 340:*4*
341:*12* 344:*4*
348:*9* 351:*5*, *12*
352:*3*, *9* 354:*4*
369:*1*, *10* 370:*18*
385:*6*, *15* 386:*18*
388:*9*
**told** 250:*17* 254:*6*
258:*24* 266:*19*, *25*
267:*10* 268:*24*
269:*6* 276:*24*
281:*24* 282:*2*
285:*14*, *16*, *21*
286:*6*, *12*, *14* 287:*6*,
*18*, *21* 289:*17* 301:*1*
308:*20* 311:*7*, *11*
312:*17* 313:*11*, *15*
324:*13* 326:*16*
327:*4*, *18*, *23* 328:*2*,
*12* 350:*17*, *20*

351:*5* 353:*15*, *23*
354:*21*, *22* 355:*21*,
*22*, *25*, *25* 360:*8*
367:*10* 368:*10*
369:*6* 370:*3*
374:*7*, *20* 387:*18*,
*21* 388:*6* 392:*3*
**Tom** 241:*21*
247:*10* 248:*12*
249:*22* 251:*17*
252:*11* 253:*21*
254:*1*, *16* 258:*2*, *20*
264:*7* 267:*3*
281:*12* 282:*17*, *21*
283:*20* 284:*8*, *19*
290:*20* 325:*24*
326:*7*
**Tony** 380:*11*, *13*
**Tony,** 380:*8*
**top** 296:*21* 335:*15*
377:*6*
**Topic** 216:*17*, *19*,
*25* 225:*16*, *20*, *22*
226:*17* 228:*2*, *7*, *20*
229:*20* 247:*24*
280:*10*, *13*, *15*, *16*
281:*2*, *14* 282:*10*
283:*18* 302:*5*
345:*23* 346:*5*
**Topics** 225:*15*, *19*
226:*14* 228:*23*
247:*20* 357:*9*
**totally** 247:*24*
**transcribed** 394:*9*
**transcript** 394:*10*,
*14*
**transcription**
393:*20*
**Transgender**
212:*19* 214:*23*
215:*6* 232:*8*, *14*
264:*23* 273:*25*
288:*8* 299:*23*
300:*18* 303:*4*
304:*1*, *15*, *19*, *25*
306:*4*, *13* 309:*11*
316:*7*, *10* 364:*17*
365:*3*, *7*
**transgendered**
289:*15*

transition 231:23
238:13 239:7
246:18 264:20
treated 274:23, 25
275:3, 9, 12
treating 318:6
treatment 275:8,
12 304:2
treatment, 303:5
triggered 335:12
true 367:8 394:10
truth 214:6, 7, 7
394:9, 9, 9
try 241:13 288:23
trying 248:15, 21
273:1, 8 334:9
347:7 372:6
turn 234:4 245:19
289:24 368:7
373:3 379:3
381:25
turned 380:18
turning 327:10
two 214:14
245:21 262:14
279:7 292:11, 16,
20, 23 299:11
326:13 327:13
336:5 339:1
350:23 354:20
356:17 369:16
370:12, 14 375:7
378:10, 11 382:25
383:22 386:6
two-page 244:20
252:10
type 232:15
266:20 277:4
types 227:15 361:8
typewriting 394:10
typewritten 394:10
typically 254:10

< U >
U.S 299:22 301:12
ultimate 335:13
ultimately 224:15
239:2
unable 231:8
unaware 225:13
384:12, 15

unchanged 328:23,
25
undergo 293:13, 23
underlying 337:21
understand 225:17
227:18 262:18
282:16 287:25
294:6, 9 319:12
321:7 340:11
345:12, 21 354:6
365:19 390:15
understanding
258:13 260:19
261:4, 11, 14 267:1,
2 269:16 273:3
276:5 302:14
320:6, 17 337:19
387:4
understood 320:9
333:15 340:24, 25
341:5 355:1
359:16 391:16
undertake 271:5,
14 272:3, 4 355:20
366:10
undertaken 216:6
219:13 290:11
undertaking 366:10
undertook 222:1,
11 234:2, 6 351:14
unequal 275:12
unequivocally
220:2
unimportant 340:8
Union 264:18
unisex 265:8
Unit 213:5 334:16
345:5 346:15, 19,
23 347:16, 25
348:1, 5 349:13, 21
350:14, 15, 18
351:6, 18, 23, 23
352:5, 25 353:1, 7,
9, 15, 23 354:13, 17,
22 355:2, 4, 11, 16
356:1 358:9, 10, 12
359:2, 15 360:8, 14
361:1, 6, 16, 17, 21,
23 362:5, 10, 15
364:13 368:14
369:17 371:22

372:23 373:10
374:6 375:8, 17, 18,
20 376:15 378:1,
11 384:17 387:24
UNITED 210:1
unlawful 273:18
288:9 298:1, 6, 9,
24 307:3, 6 311:24
319:22 337:16, 25
unquote 303:6
306:16, 18 333:12
346:2
unsuccessful
240:23 319:11
unusual 336:19, 22,
25
unwritten 355:5
372:11
upcoming 341:7
update 221:19
updated 295:5
urinate 317:13
urinating 366:13
use 219:25 221:6
233:19 241:6
246:11 247:6
249:19 250:18
256:6 258:16
259:1, 12, 21 260:5,
10, 13, 16, 20, 22
261:5, 8, 15, 22
262:4, 7, 21, 23
263:9, 17 265:3, 5,
7, 13, 25 266:9, 10,
15, 15, 17, 19
267:10, 15 268:24
269:13, 17, 25
270:8, 17 271:2, 8
273:5, 7 275:4, 14,
24 276:11, 12, 14,
24 277:11, 20
278:3 285:17, 21
286:6, 12, 12, 15, 23
287:6, 15, 22 288:8
290:6 292:5
293:13, 18, 19, 24
297:25 311:24
315:8 316:23
317:4, 7, 19 318:15
319:23 320:22, 24
321:22 327:19

328:3, 11, 13
329:14 330:6, 23
331:6, 15, 18
340:18 344:22
345:16 346:4
347:20, 22 349:1,
14, 22 353:2
354:18 355:5
358:22, 25, 25
359:8 360:6
364:14, 16, 18
365:2, 4, 9, 22
366:12 368:11, 15,
22 369:8, 12 371:8,
13 372:24 373:11,
16 374:17 376:16
377:14, 21, 21
378:1, 2, 25 379:12
384:24 385:2, 8, 11,
12, 17 386:10, 22
387:7, 9, 11, 14, 18,
19, 25 389:2, 4, 13,
15, 16, 20 391:2
uses 321:13
371:11 378:5, 13
usually 275:10

< V >
vague 251:11
Valley 214:24
274:1
various 222:22
357:8 361:8
Vegas 210:19
211:5, 7, 12
verbal 240:12, 15
241:18
verbally 235:16
353:15, 23 369:6
version 255:1
364:4 384:5
versus 215:3
288:13 301:25
305:19 308:21
311:12 337:2, 3
339:8
vibrate 227:2
victim, 303:6
VII 212:19 299:25
300:19 304:2, 7, 20

306:*23*  307:*7*

**VII,** 309:*11*

**violate** 298:*1*

**violated** 329:*14*

**violates** 290:*6*

**violation** 290:*16*
298:7  299:*25*
300:*19*

**Violence** 304:*6*

**visited** 272:*8*
275:*16*

**visiting** 271:*19*

**Volume** 210:*14*

**vote** 340:*15*

**voted** 338:7
339:*15*

**vs** 210:*5*

**< W >**

**wait** 217:*25*  226:*3*

**waive** 214:*3*

**waiving** 252:*17*

**walked** 219:*22*

**want** 239:*17*

**wanted** 214:*14*
236:5  264:*25*
265:*1*  273:*5*

**wants** 273:7
371:*14*  389:*13, 17*

**warned** 232:*20*

**warnings** 222:*21*

**wasting** 228:*19*
304:*10*

**Waterhouse** 305:*22*

**way** 222:*10*  245:*6*
250:*24*  251:*7, 21*
271:*15*  274:*24, 25*
312:*3, 18*  313:*13*
322:7  323:*11*
326:4  327:*1*
337:1  376:*23*
388:*10*

**ways** 255:*13*

**website** 222:*22*
242:*12*  310:*2, 11,*
*17*  314:*9*

**Wednesday** 210:*15*
394:*6*

**week** 234:*9*  235:*1,*
*6*  278:*21*  371:*16*

**weekly** 357:*11, 14*

**weeks** 279:*7*
299:*11*  304:*20*
326:*13*  327:*14*
336:5  350:*23*
354:*20*  369:*16*
370:*12, 15*  382:*25*

**well** 235:*16*
243:*23*  248:*5*
258:6  268:*9*
273:*14*  275:*3*
292:*15*  300:*19, 20*
302:*14*  317:*12*
321:*20*  322:*24*
328:*25*  335:*14*
339:7  341:*19*
345:9  357:*4*
360:*16*  363:*14, 18*
376:*25*  381:*13*

**went** 219:*15*
222:*13*  223:*6, 24*
224:5  229:*25*
230:7  238:*18*
271:7  272:*3*
297:*12*  298:*16*
310:*24*  311:*2*
313:*13*  346:*23*
350:*14, 17*

**we're** 228:*21*
233:*11*  236:*12, 16*
237:*14, 21*  240:*21*
241:*11*  252:*7*
254:7  265:*18*
273:*1, 2*  284:*15*
291:*21, 21*  300:*22*
308:*4*  318:*18*
323:7  356:*20*
360:2  368:*6*
373:2  378:*11*
381:*24*  391:*14*
392:*1*

**We've** 237:*9, 11*
280:*13*  356:*24*

**WHEREOF** 394:*16*

**whichever** 223:*3*

**Williams** 213:*8*
357:*20, 20*  358:*2,*
*11*

**willing** 259:*21*

**withdraw** 218:*22*
391:*4*

**Withdrawal** 213:*5*
390:*9*

**WITNESS** 212:*2*
216:*19, 21*  217:*2,*
*25*  218:*2, 20*  219:*6,*
*18*  220:*6, 25*  221:*8*
222:*15*  223:*10, 21*
224:*2, 12*  226:*15*
228:6  229:*21*
230:*11*  231:*1, 25*
232:*10, 22*  242:*20*
243:7, *20*  244:*3*
245:*10, 17*  246:7,
*20*  247:*9*  248:*1, 8,*
*15*  250:*1, 9, 21*
251:*3, 12*  252:*5*
253:7, *21*  254:*9*
255:*19*  256:*2, 9, 16,*
*21*  257:*9, 14*  258:*1,*
*11*  259:*8, 17, 25*
260:*13, 19*  261:*11,*
*18*  263:*13, 20*
265:*15, 24*  266:*6*
267:*13, 24*  268:*17*
270:*5, 13, 21*
271:*10, 23*  272:*10,*
*24*  274:*4, 19*
275:*19*  276:*4, 17,*
*23*  277:*9, 19*  278:*8*
280:*17, 20*  281:*4,*
*21*  282:*2, 13*
283:*20*  284:*4, 18*
285:*8*  286:*5*
287:6  289:*1*
290:*18*  293:*9*
294:*2, 17*  295:*10,*
*24*  296:*9, 18, 23*
298:*20*  300:*8*
301:*1*  305:*14*
307:2  308:*2*
309:*6*  310:*7, 16*
311:*6, 19*  312:*10*
313:*8*  315:*13*
316:*18*  317:*1, 10,*
*24*  321:*19*  323:*2*
324:*20*  325:*13*
326:*24*  330:*11*
331:*2, 12*  337:*13*
339:*2, 5*  340:*1, 11,*
*19*  341:*25*  342:*20*
343:*8*  344:*7, 9, 18*

345:*1, 12, 18*
349:*16, 24*  351:*17*
352:*15, 24*  354:*1, 6,*
*25*  355:*18*  356:*3,*
*17*  358:*14*  359:*6,*
*19*  360:*20*  361:*3, 8,*
*16*  362:*2, 12, 18, 25*
363:*14*  364:*10, 22*
365:*6, 13, 25*  366:*7,*
*15*  367:*15*  368:*4*
369:*5, 19*  370:*5, 23*
371:*2, 25*  372:*6, 18*
373:*14*  375:*1, 24*
378:*15*  379:*19*
380:*25*  381:*6, 13,*
*22*  383:*16*  385:*19*
387:*3*  388:*14*
389:*22*  390:*25*
392:*17*  393:*1, 19*
394:*8, 11, 15, 16*

**women's** 320:*8, 22,*
*25*  321:*2, 13*

**word** 221:*22*
229:*8*  240:*11*
303:7  330:*12*
371:*6*

**wording** 332:*14*

**words** 287:*20*

**work** 222:6  272:*6*
358:*2, 6, 11*  365:*16*

**worked** 346:*17*

**working** 346:*16*

**write** 225:*12*
257:*18*  327:*8*
367:*18*

**writing** 239:*13*
256:*25*  263:*16, 22,*
*24*  264:*1*  268:*20*
343:*25*  347:*19*
348:*2, 5, 24, 25*
349:*13*  351:*22*
353:*3, 4, 9, 19, 21*
355:7  359:*4, 11*
360:*24*  363:*9, 21,*
*24*  364:*6*  370:*8*
380:*12*

**written** 258:*1*
348:*12, 25*  349:*21*
350:*16*  351:*15*
352:*22*  356:*1*
359:*15*  360:*12, 17,*

25  364:4  368:11,
14  369:2, 12  370:9,
10  371:22  372:24
373:11, 15  374:7
375:8  376:15
377:20, 20  378:24
384:4  388:16
389:18
**wrong**  321:6, 12
322:3  382:21
384:14
**wrote**  243:12
249:10  344:20

**< Y >**
**yeah**  274:4  276:4
296:9  311:19
313:11  322:16
330:11  331:2
343:14  354:6
358:9  370:23
388:3
**year**  263:9  275:5,
23  286:24  333:21
364:20  366:5
385:16
**year-long**  334:18
344:22
**years**  215:23
231:13  274:8
292:25  304:17
331:19
**York**  257:2
263:23  264:19
324:12  375:19
376:13  377:8, 22
378:18  379:10, 23,
25  380:11, 11
382:4, 10, 11, 13, 19
383:9  384:7, 11, 14,
15, 19  388:2, 3
**York's**  376:24
377:19  378:19
**YOUNG**  211:10
216:16  217:24
218:15  219:4, 17
220:4, 19, 24  221:7
222:14, 24  223:9,
20  224:1, 11  225:1,
13, 25  226:4, 6, 9
227:25  228:5, 16

229:2, 18  230:9, 25
231:11, 24  232:9,
21  233:6  235:9
236:11  238:7
241:11, 14  242:4,
19  243:5, 19  244:2,
24  245:9, 16  246:6,
19  247:8, 19  248:7,
15, 20  249:7, 25
250:8, 15, 20  251:2,
10  252:4, 20  253:2,
6, 20  254:8  255:17
256:1, 8, 15, 20
257:2, 8, 13, 25
258:10  259:7, 16,
24  260:12, 18, 24
261:10, 17  262:8,
24  263:5, 12, 19
264:20  265:14
266:5  267:12, 23
268:15  270:3, 12,
20  271:9, 20  272:9,
17, 23  274:2, 9, 17
275:6, 18  276:2, 16,
22  277:7, 17  278:4
279:24  280:9, 18
281:2, 3, 19  282:1,
10  283:4, 17  284:3,
17  285:7  286:2
287:2  288:25
289:11  290:14
292:9  293:7
294:1, 16, 24  295:8,
23  296:7, 14, 17, 20
298:18  300:5, 24
302:2  304:5
305:1, 12  306:24
308:1, 8  309:5
310:6, 15  311:5, 17
312:6, 9  313:6
314:1  315:12, 19
316:16, 25  317:9,
15, 21  318:9, 19, 22
319:15  320:2
321:8, 14, 18
322:25  324:13, 17,
25  325:10, 12
326:21  329:25
330:8, 25  331:11
337:10  338:25
339:25  340:10, 17

341:24  342:6, 14,
18  343:7, 22  344:8,
16, 25  345:11, 17,
23  348:15  349:15,
17, 23  350:1
351:16  352:14, 23
353:11, 17, 25
354:5, 24  355:13,
17  356:2, 12, 15
358:13  359:5, 18,
22  360:19  361:2, 7,
15  362:1, 11, 17, 24
363:13  364:1, 8, 21
365:5, 12, 24  366:6,
14, 23  367:4, 14, 22
368:3, 23  369:4, 18
370:4, 22, 25
371:23  372:5, 15
373:13, 21  374:24
375:23  377:9
378:9, 14  379:11,
18  380:1, 5, 15, 16,
23  381:5, 12, 21
382:4, 12  383:15
385:18  386:11, 19,
24  387:1  388:13
389:21  390:6, 22
392:14, 19

**WORD LIST**

**< 0 >**
**001911**  *(1)*
**006-007**  *(1)*
**008-012**  *(1)*
**012**  *(1)*
**048-051**  *(1)*

**< 1 >**
**1**  *(3)*
**1:10**  *(2)*
**1:44**  *(1)*
**1:50**  *(1)*
**10**  *(2)*
**10:06**  *(1)*
**10:08**  *(1)*
**10th**  *(1)*
**11**  *(3)*
**11:00**  *(1)*
**11:30**  *(1)*
**11th**  *(3)*
**11-year-old**  *(1)*
**12**  *(3)*
**12:15**  *(1)*
**12:30**  *(1)*
**12th**  *(9)*
**13**  *(1)*
**13th**  *(1)*
**14**  *(2)*
**16**  *(2)*
**17510A**  *(1)*
**19**  *(4)*
**1911**  *(1)*
**19th**  *(3)*
**1st**  *(12)*

**< 2 >**
**2**  *(4)*
**2:15-CV-00388-JAD**
**-PAL**  *(1)*
**2:31**  *(1)*
**2000**  *(2)*
**2001**  *(6)*
**2008**  *(3)*
**2011**  *(47)*
**2012**  *(88)*
**2015**  *(1)*
**2016**  *(8)*
**20th**  *(3)*

**21**  *(3)*
**210**  *(1)*
**211**  *(20)*
**211's**  *(1)*
**214**  *(1)*
**215**  *(1)*
**21st**  *(1)*
**22**  *(2)*
**225**  *(2)*
**22nd**  *(21)*
**233**  *(1)*
**236**  *(1)*
**237**  *(2)*
**24**  *(1)*
**25th**  *(9)*
**26**  *(1)*
**26th**  *(1)*
**28**  *(17)*
**29**  *(8)*
**290**  *(1)*
**299**  *(1)*

**< 3 >**
**3**  *(3)*
**30**  *(41)*
**300**  *(1)*
**308**  *(1)*
**30th**  *(3)*
**31**  *(8)*
**319**  *(1)*
**31st**  *(2)*
**32**  *(7)*
**323**  *(2)*
**33**  *(4)*
**332**  *(1)*
**34**  *(4)*
**349**  *(1)*
**35**  *(4)*
**356**  *(1)*
**36**  *(3)*
**37**  *(6)*
**38**  *(6)*
**39**  *(4)*
**390**  *(1)*
**394**  *(1)*
**3960**  *(1)*
**3rd**  *(25)*

**< 4 >**
**4**  *(18)*

**4:07**  *(1)*
**40**  *(8)*
**400**  *(4)*
**41**  *(5)*
**4110**  *(2)*
**41's**  *(1)*
**42**  *(8)*
**42's**  *(1)*
**43**  *(4)*
**44**  *(1)*

**< 5 >**
**5**  *(21)*
**59**  *(6)*

**< 6 >**
**6**  *(47)*
**6:36**  *(2)*
**613**  *(1)*
**630**  *(1)*
**65**  *(4)*
**66**  *(10)*
**67**  *(12)*
**6th**  *(3)*

**< 7 >**
**7**  *(5)*
**710**  *(2)*

**< 8 >**
**8**  *(1)*
**89101**  *(2)*
**89169**  *(1)*
**8th**  *(1)*

**< 9 >**
**9**  *(1)*
**9:32**  *(1)*

**< A >**
**a.m**  *(2)*
**AB**  *(21)*
**ability**  *(3)*
**able**  *(4)*
**above-referenced**
  *(1)*
**accept**  *(2)*
**access**  *(2)*
**account**  *(5)*
**accounted**  *(1)*

**accurate**  *(12)*
**accurately**  *(2)*
**acknowledged**  *(5)*
**acknowledging**  *(1)*
**acknowledgment**
  *(4)*
**Act**  *(2)*
**action**  *(13)*
**actionable**  *(1)*
**actions**  *(19)*
**actions,**  *(1)*
**activities**  *(8)*
**actual**  *(14)*
**add**  *(2)*
**added**  *(4)*
**adding**  *(1)*
**addition**  *(1)*
**additional**  *(3)*
**additionally**  *(1)*
**address**  *(1)*
**addressed**  *(4)*
**addressing**  *(1)*
**admin**  *(1)*
**administration**  *(1)*
**Administrative**
  *(21)*
**Administrator**  *(4)*
**adopted**  *(2)*
**adult**  *(28)*
**adults**  *(1)*
**advice**  *(4)*
**advise**  *(2)*
**advised**  *(7)*
**advising**  *(2)*
**advisor**  *(1)*
**advisors**  *(1)*
**affirmative**  *(5)*
**affirmed**  *(1)*
**affix**  *(1)*
**afternoon**  *(3)*
**agency**  *(1)*
**Agenda**  *(1)*
**ago**  *(6)*
**agree**  *(18)*
**agreed**  *(3)*
**agreeing**  *(2)*
**agreement**  *(1)*
**ahead**  *(7)*
**alert**  *(2)*
**allegedly**  *(1)*

allow  (2)
allowed  (34)
allowing  (2)
allows  (1)
Alt  (1)
alteration  (1)
alternative  (4)
amended  (1)
anatomical  (3)
anatomically  (3)
anatomy  (15)
announce  (10)
announced  (2)
announcement  (4)
answer  (49)
answered  (13)
answering  (6)
Anthony  (3)
anti-discrimination
  (4)
anybody  (8)
anyway  (1)
apart  (2)
apparently  (7)
appeal  (1)
Appeals  (2)
appear  (1)
appearance  (2)
APPEARANCES
  (1)
appears  (2)
applicable  (3)
application  (5)
apply  (2)
appointment  (1)
appreciate  (1)
appropriate  (2)
approval  (4)
approve  (1)
approved  (3)
approving  (2)
approximately  (4)
April  (18)
arguable  (1)
arguably  (1)
argue  (1)
arguing  (1)
argument  (1)
argumentative  (24)
arguments  (1)

art  (1)
articulated  (5)
articulating  (1)
ascertain  (1)
asked  (36)
asking  (21)
asks  (1)
asserted,  (1)
asserting  (1)
assertion  (1)
assigned  (8)
assist  (4)
Assistant  (2)
assisted  (1)
assisting  (3)
associate  (4)
Association  (1)
assume  (2)
assumed  (1)
assuming  (1)
Asterisk  (2)
asterisked  (1)
attach  (1)
attached  (7)
attaches  (1)
attachment  (8)
attachments  (2)
attempted  (1)
attempting  (1)
attend  (2)
attendance  (1)
attended  (4)
attending  (1)
Attorney  (6)
attorneys  (1)
August  (4)
authoritative  (7)
authorities  (1)
authority  (24)
auto-populates  (1)
available  (6)
avoid  (2)
aware  (44)
awareness  (1)
AYON  (1)

< B >
back  (32)
ban  (21)
banned  (8)

bar  (3)
BARRAZA  (1)
Barton  (14)
Barton's  (2)
base  (2)
based  (12)
basis  (5)
Bates  (15)
bathroom  (14)
bathrooms  (4)
bathrooms,  (1)
bears  (1)
began  (2)
beginning  (3)
begins  (2)
behalf  (12)
behavior  (1)
belief  (1)
believe  (44)
believed  (4)
best  (3)
biggest  (3)
bill  (2)
bills  (3)
bind  (1)
biological  (5)
biologically  (5)
biology  (2)
blank  (1)
blurb  (1)
blurbs  (1)
Board  (1)
bodily  (1)
book  (5)
BR  (1)
brackets  (2)
Brad  (95)
BRADLEY  (3)
break  (6)
breaking  (1)
briefs  (1)
bringing  (2)
broader  (1)
brought  (1)
BRUCE  (5)
building  (2)
buildings  (3)
bullet  (5)
bulleted  (1)
bullets  (1)

< C >
call  (4)
called  (6)
calling  (1)
calls  (3)
cancel  (1)
Captain  (23)
caption  (1)
care  (3)
carefully  (1)
Carlos  (2)
case  (88)
cases  (9)
category  (1)
cause  (7)
CC  (1)
CC'ing  (1)
CCR  (2)
CCSD  (13)
CCSD000330  (1)
CCSD000331-336
  (1)
CCSD001059-1062
  (1)
CCSD001066-1067
  (1)
CCSD001074-1079
  (1)
CCSD001080-1081
  (1)
CCSD001082  (1)
CCSD001082-1088
  (1)
CCSD001907-1908
  (1)
CCSD001910-1914
  (1)
CCSD's  (10)
cease  (1)
certain  (1)
certainly  (1)
CERTIFICATE
  (2)
Certified  (2)
certify  (3)
Cha  (2)
chain  (3)
challenge  (1)
challenging  (1)

chance  (2)
change  (40)
change,  (1)
changed  (12)
changes  (3)
changing  (2)
chapters  (1)
characterization  (4)
characterize  (1)
characterized  (1)
Charge  (16)
charging  (1)
check  (3)
Chief  (16)
chief's  (1)
children  (1)
children's  (1)
Chinchilla  (2)
choice  (3)
choice,  (1)
choose  (1)
chronology  (2)
Circuit  (17)
circumstance  (3)
citation  (1)
cite  (4)
cited  (5)
claim  (4)
claiming  (1)
claims  (1)
clarification  (1)
clarified  (1)
clarify  (1)
CLARK  (65)
class  (2)
classes  (1)
clear  (3)
clearer  (1)
clearly  (2)
close  (2)
closed  (5)
closing  (2)
collectively  (1)
come  (18)
comes  (4)
coming  (1)
commencing  (1)
comment  (1)
comments  (4)

Commission  (89)
Commissioner  (1)
Commission's  (4)
commit  (1)
committed  (6)
committing  (15)
communal  (1)
communally  (1)
communicate  (4)
communicated  (9)
communication  (7)
communications  (2)
Communiqué  (2)
community  (3)
Complaint  (3)
complaints  (2)
complete  (2)
completed  (1)
completely  (4)
complication  (1)
comply  (1)
complying  (1)
compound  (2)
comprised  (1)
computer  (5)
concede  (1)
conceded  (1)
concerned  (1)
concerning  (1)
concerns  (3)
conciliation  (5)
conclude  (1)
concluded  (5)
conclusion  (1)
conduct  (5)
conference  (3)
confirm  (5)
confirmation  (2)
confirming  (1)
confirms  (2)
conformity  (2)
confusing  (3)
confusion  (4)
connection  (5)
consider  (6)
consideration  (1)
considered  (5)
considering  (1)
considers  (2)

consist  (2)
consistent  (3)
constitute  (2)
constituted  (1)
constitutes  (2)
consultation  (1)
contained  (5)
content  (1)
continue  (3)
CONTINUED  (8)
continuing  (1)
contracted  (1)
contradiction  (1)
contradictory  (2)
contrary  (4)
conversation  (4)
convey  (1)
conveyed  (1)
copied  (1)
copy  (15)
Correct  (52)
corrected  (1)
correctly  (2)
correspondence  (4)
counsel  (25)
counsel,  (1)
counsel's  (1)
country  (2)
COUNTY  (65)
course  (2)
COURT  (19)
Courts  (1)
COX  (3)
create  (5)
created  (4)
creating  (1)
critical  (1)
CRR  (2)
current  (2)
currently  (1)
curriculum  (1)
cut  (3)

< D >
DANIEL  (3)
DANIELLE  (1)
dash  (1)
date  (21)
dated  (8)
dates  (4)

dating  (1)
day  (2)
days  (5)
deal  (4)
dealing  (3)
dealt  (3)
decide  (1)
decided  (8)
Decision  (116)
decision-making  (1)
decisions  (2)
declare  (1)
declared  (4)
declined  (1)
declining  (1)
defecate  (1)
defecating  (1)
Defendants  (2)
defense  (3)
defer  (1)
defined  (1)
definitely  (3)
definitions  (1)
deliberately  (1)
Demand  (1)
demonstrated  (2)
denied  (2)
Dennis  (1)
department  (39)
departments  (1)
depend  (2)
depends  (1)
depo  (1)
deponent  (1)
deposed  (1)
DEPOSITION  (30)
depositions  (1)
Deputy  (5)
designated  (3)
designation  (1)
DESIGNEE  (24)
desired  (1)
despite  (5)
detail  (2)
details  (3)
determination  (53)
determine  (1)
DETR  (2)
develop  (1)

developed  (2)
development  (3)
devise  (1)
difference  (1)
different  (4)
differently  (6)
difficult  (3)
direct  (1)
directed  (6)
directing  (1)
direction  (9)
directions  (1)
directly  (2)
disagree  (7)
disclose  (4)
disclosed  (1)
disclosure  (2)
disclosures  (1)
discriminate  (1)
discriminated  (2)
discriminates  (1)
discriminating  (4)
Discrimination  (67)
discrimination,  (1)
discriminatory  (3)
discuss  (15)
discussed  (4)
discussing  (2)
discussion  (6)
discussions  (1)
dismiss  (4)
dismissal  (1)
disparate  (2)
dissemination  (1)
distinction  (1)
distribute  (1)
distributed  (2)
distributing  (1)
distribution  (1)
DISTRICT  (213)
District's  (76)
diversity  (1)
divulged  (1)
do,  (1)
Doctor  (1)
document  (15)
documentation  (16)
documents  (15)
Doe  (6)
doing  (13)

Door  (1)
dotted  (1)
doubt  (1)
downgraded  (1)
Dr  (12)
drafted  (1)
drafting  (1)
drafts  (1)
due  (1)
duly  (2)
Dwight  (6)

< E >
earlier  (6)
early  (1)
easier  (1)
educated  (1)
EEO  (1)
EEOC  (22)
EEOC's  (3)
effect  (16)
efforts  (1)
eight  (2)
eight-hour  (1)
either  (10)
elaborate  (2)
elect  (1)
Election  (2)
elementary  (5)
E-mail  (50)
e-mailed  (3)
e-mailing  (1)
e-mails  (5)
embodied  (1)
emergency  (1)
employee  (20)
employees  (14)
employee's  (1)
Employees,  (1)
employer  (6)
employers  (6)
Employment  (10)
enables  (1)
enacted  (1)
enclosed  (1)
ended  (5)
enforced  (1)
enforcement  (1)
enforcing  (1)
engage  (1)

engaged  (4)
engaging  (3)
ENGLAND  (308)
enrolled  (1)
ensure  (2)
entire  (1)
entitled  (1)
entry  (1)
Equal  (85)
Equality  (1)
equally  (1)
era  (1)
Eric  (1)
especially  (1)
espoused  (1)
espousing  (2)
ESQ  (9)
Ethan  (2)
Ethan's  (1)
event  (2)
events  (1)
everybody  (2)
everybody's  (3)
evidence  (35)
evidencing  (1)
exact  (5)
exactly  (7)
Examination  (2)
examined  (2)
example  (2)
examples  (2)
exceed  (1)
exceeds  (1)
Excerpt  (1)
excuse  (8)
executive  (2)
Exhibit  (102)
EXHIBITS  (5)
exist  (1)
existence  (3)
existing  (2)
expectation  (1)
expectations  (1)
experience  (1)
experiences  (2)
expertise  (2)
explain  (1)
explanation  (3)
express  (4)
expression  (6)

extent  (13)

< F >
face  (1)
facilities  (59)
facilities,  (2)
facility  (5)
fact  (20)
factors  (1)
facts  (12)
failed  (1)
Fair  (10)
familiar  (1)
familiarize  (1)
families  (2)
FAPR  (2)
far  (5)
favor  (1)
February  (9)
federal  (6)
feel  (1)
felt  (1)
female  (10)
female-identified  (2)
females  (3)
Fernandez  (6)
Fernandez's  (1)
fifth  (2)
fight  (1)
figure  (2)
file  (1)
filed  (5)
filing  (1)
filings  (1)
finally  (2)
financially  (1)
find  (15)
finding  (11)
fine  (4)
finish  (8)
finished  (2)
first  (44)
Fitzgerald  (5)
five  (2)
folks  (1)
follow  (3)
followed  (1)
follows  (2)
follow-up  (2)

forced  (2)
foregoing  (1)
form  (13)
formal  (2)
forms  (2)
formulating  (1)
forth  (2)
forward  (2)
forwarded  (6)
forwarding  (6)
found  (8)
foundation  (1)
four  (1)
fourth  (1)
frame  (9)
FRCP  (2)
free  (3)
frequent  (1)
front  (12)
full  (7)
fully  (6)
functions  (1)
Further  (3)

< G >
gain  (1)
gender  (54)
gender-neutral  (15)
gender-specific  (4)
General  (11)
generalized  (1)
General's  (2)
genital  (6)
genital,  (1)
genitals  (9)
Gervasi  (1)
getting  (3)
give  (4)
given  (12)
gives  (3)
giving  (1)
glasses  (1)
go  (47)
God  (1)
goes  (4)
going  (69)
Goins  (12)
Good  (4)
gotten  (3)
governing  (1)

Government  (1)
granting  (1)
Great  (3)
Green  (2)
Greenberg  (149)
Greenberg's  (12)
groups  (4)
guess  (3)
guidance  (5)
guidelines  (2)
GUTIERREZ  (1)

< H >
hand  (1)
handed  (6)
handles  (1)
happened  (3)
happens  (2)
happy  (1)
harassed  (1)
harassment  (5)
Harassment,  (1)
harkening  (1)
Hartford  (1)
he,  (2)
head  (7)
headnote  (2)
headnotes  (1)
headquarters  (3)
heard  (4)
Hearing  (35)
Heenan  (1)
held  (7)
he'll  (1)
help  (1)
hereunto  (1)
hierarchy  (1)
High  (3)
hold  (1)
Holder  (4)
holding  (3)
holds  (1)
hope  (1)
hopefully  (1)
hour  (4)
Howard  (1)
Hughes  (1)
Human  (4)

< I >

i.e  (4)
i.e.,  (1)
idea  (10)
identifications  (1)
identified  (12)
identifies  (1)
identify  (5)
identity  (21)
identity,  (1)
II  (1)
illegal  (31)
immediate  (1)
impact  (1)
impacted  (1)
implement  (2)
implementation  (2)
implemented  (1)
implementing  (2)
implications  (1)
import  (1)
important  (4)
impose  (1)
imposed  (4)
imposing  (3)
inaccurate  (3)
inappropriate  (7)
include  (7)
included  (11)
includes  (1)
including  (1)
inclusion  (1)
inclusive  (1)
incomplete  (1)
inconvenienced  (1)
incorrect  (3)
incredibly  (1)
incumbent  (1)
INDEX  (1)
indicate  (5)
indicated  (13)
indicates  (6)
indicating  (7)
indication  (2)
individual  (6)
individually  (3)
individuals  (1)
inform  (3)
informal  (4)
information  (24)
informational  (1)

in-house  (2)
initial  (2)
initials  (1)
initiated  (7)
initiating  (1)
initiation  (1)
injunction  (2)
insofar  (2)
inspect  (1)
instruct  (1)
instructed  (3)
Instruction  (75)
instructions  (3)
instructs  (1)
intended  (3)
intent  (2)
InterAct  (1)
interested  (1)
intermediary  (1)
interrupt  (2)
interrupting  (2)
introduce  (1)
introducing  (1)
investigation  (1)
involved  (24)
involvement  (12)
inward  (1)
irrelevant  (1)
ISMs  (1)
issuance  (3)
issue  (14)
issued  (30)
issues  (9)
issuing  (2)
it,  (1)
Item  (2)
items  (1)
iteration  (1)
its  (33)
IX  (14)

< J >
Jane  (5)
January  (11)
Job  (5)
joint  (1)
JON  (8)
Jones  (18)
journal  (1)
Juanita  (2)

**judge** *(1)*
**judgment** *(3)*
**July** *(8)*
**June** *(17)*
**jury** *(1)*
**justification** *(2)*

**< K >**
**KATHLEEN** *(1)*
**Kathy** *(9)*
**keep** *(2)*
**Ken** *(4)*
**Kenneth** *(1)*
**kept** *(1)*
**Ketsaa** *(10)*
**kind** *(6)*
**kinds** *(1)*
**knew** *(11)*
**know** *(77)*
**knowledge** *(2)*

**< L >**
**labeled** *(13)*
**labor** *(1)*
**laboring** *(1)*
**Lack** *(1)*
**ladies** *(1)*
**laid** *(1)*
**landmark** *(1)*
**language** *(5)*
**largest** *(2)*
**Las** *(4)*
**late** *(2)*
**LAW** *(53)*
**lawyer** *(2)*
**layer** *(1)*
**laypeople** *(1)*
**layperson's** *(1)*
**leaves** *(1)*
**left** *(1)*
**legal** *(53)*
**legal,** *(1)*
**Legislative** *(5)*
**Legislature** *(1)*
**legitimacy** *(1)*
**Letter** *(17)*
**letting** *(1)*
**licensed** *(1)*
**Lieutenant** *(6)*
**lift** *(2)*

**lifted** *(3)*
**lifting** *(1)*
**light** *(1)*
**likelihood** *(3)*
**limited** *(3)*
**line** *(9)*
**lined** *(1)*
**lingo** *(1)*
**List** *(1)*
**listed** *(1)*
**listen** *(1)*
**listing** *(1)*
**LITTLER** *(10)*
**locker** *(2)*
**long** *(4)*
**longer** *(2)*
**longstanding** *(8)*
**look** *(46)*
**looked** *(9)*
**looking** *(12)*
**looks** *(3)*
**lopping** *(1)*
**lunch** *(3)*
**lying** *(1)*

**< M >**
**Macy** *(25)*
**Madam** *(1)*
**magazine** *(1)*
**Maginot** *(1)*
**Mahan** *(1)*
**MAIER** *(1)*
**mailed** *(4)*
**maintain** *(2)*
**making** *(9)*
**male** *(112)*
**male,** *(1)*
**male-identified** *(1)*
**males** *(1)*
**male-specific** *(1)*
**male-to-female** *(2)*
**man** *(1)*
**manager** *(3)*
**Mari** *(11)*
**mark** *(1)*
**marked** *(26)*
**MARY** *(3)*
**masculine** *(1)*
**masculinity,** *(1)*
**match** *(5)*

**matched** *(6)*
**matter** *(8)*
**matters** *(5)*
**McDade** *(2)*
**me,** *(1)*
**mean** *(10)*
**Meaning** *(1)*
**means** *(7)*
**meant** *(3)*
**measures** *(2)*
**medical** *(4)*
**meet** *(10)*
**Meeting** *(30)*
**meetings** *(2)*
**member** *(2)*
**members** *(2)*
**memo** *(10)*
**memorandum** *(5)*
**memorialization** *(2)*
**memorialize** *(1)*
**memorialized** *(2)*
**memorializing** *(2)*
**memorized** *(1)*
**memory** *(2)*
**men** *(1)*
**MENDELSON** *(6)*
**Mendelson's** *(3)*
**men's** *(11)*
**mentioned** *(6)*
**message** *(4)*
**met** *(4)*
**Mia** *(1)*
**middle** *(2)*
**mid-page** *(1)*
**Mike** *(2)*
**mind** *(2)*
**mine** *(1)*
**Minnesota** *(15)*
**minutes** *(3)*
**mischaracterize** *(1)*
**mischaracterizes** *(14)*
**misdirection** *(1)*
**Misrepresents** *(1)*
**misspoke** *(1)*
**misstated** *(1)*
**mistake** *(2)*
**mistakenly** *(2)*
**moment** *(2)*

**month** *(1)*
**months** *(6)*
**morning** *(4)*
**motion** *(5)*
**Motivated** *(1)*
**move** *(2)*

**< N >**
**name** *(8)*
**named** *(1)*
**nature** *(4)*
**necessarily** *(3)*
**necessary** *(2)*
**need** *(12)*
**needed** *(3)*
**needs** *(2)*
**neglected** *(1)*
**NERC** *(16)*
**NERC's** *(8)*
**neutral** *(1)*
**NEVADA** *(119)*
**Nevada's** *(2)*
**never** *(16)*
**new** *(28)*
**newsletter** *(2)*
**newsletters** *(1)*
**Nice** *(1)*
**night** *(2)*
**Ninth** *(17)*
**no,** *(1)*
**non-decision** *(1)*
**Non-discrimination** *(2)*
**non-District** *(2)*
**non-School** *(3)*
**noon** *(1)*
**normal** *(2)*
**NOS** *(1)*
**notation** *(1)*
**note** *(3)*
**notes** *(4)*
**Notice** *(38)*
**notice,** *(1)*
**notices** *(2)*
**notified** *(2)*
**notifying** *(1)*
**November** *(35)*
**NRCP** *(1)*
**NRS** *(1)*
**number** *(12)*

**numbers** *(3)*
**numerous** *(2)*
**nutshell** *(1)*
**NV** *(3)*

**< O >**
**oath** *(3)*
**object** *(17)*
**objection** *(228)*
**objection,** *(1)*
**obligation** *(3)*
**obviously** *(3)*
**occasions** *(1)*
**occupancy** *(1)*
**occupants** *(1)*
**occupied** *(1)*
**occurred** *(2)*
**occurrence** *(1)*
**October** *(24)*
**October-November** *(1)*
**odds** *(2)*
**offer** *(3)*
**offered** *(3)*
**office** *(12)*
**Officer** *(96)*
**officers** *(3)*
**OFFICES** *(2)*
**official** *(4)*
**officials** *(3)*
**offsite** *(1)*
**Oh** *(8)*
**Okay** *(50)*
**OKAZAKI** *(51)*
**old** *(1)*
**ones** *(6)*
**open** *(6)*
**opening** *(1)*
**Opens** *(1)*
**operation** *(4)*
**operations** *(1)*
**opinion** *(1)*
**opportunity** *(1)*
**opposed** *(6)*
**order** *(9)*
**original** *(2)*
**OSHA** *(15)*
**ought** *(2)*
**outside** *(13)*
**outward** *(1)*

**oversees** *(2)*
**overturned** *(1)*

**< P >**
**p.m** *(2)*
**P-4100** *(1)*
**PAGE** *(36)*
**Pages** *(2)*
**paperwork** *(3)*
**paragraph** *(13)*
**paren** *(3)*
**parenthesis** *(6)*
**Parkway** *(1)*
**part** *(12)*
**participate** *(8)*
**participated** *(4)*
**participation** *(8)*
**particular** *(8)*
**parties** *(4)*
**party** *(1)*
**passage** *(2)*
**passed** *(1)*
**Pat** *(2)*
**patrol** *(1)*
**patrolled** *(1)*
**PD** *(2)*
**penalty** *(1)*
**penis** *(1)*
**penis,** *(1)*
**people** *(19)*
**percipient** *(4)*
**period** *(5)*
**perjury** *(1)*
**permission** *(1)*
**permitted** *(29)*
**person** *(9)*
**personal** *(3)*
**personally** *(6)*
**personnel** *(1)*
**persons** *(2)*
**perspective** *(1)*
**pertaining** *(2)*
**Phil** *(1)*
**phone** *(3)*
**pick** *(1)*
**picked** *(1)*
**pinpoint** *(2)*
**place** *(4)*
**places** *(1)*
**Plaintiff** *(5)*

**Plaintiff's** *(1)*
**planning** *(1)*
**pleadings** *(3)*
**please** *(28)*
**Please,** *(1)*
**point** *(6)*
**pointed** *(1)*
**pointing** *(2)*
**points** *(1)*
**Police** *(37)*
**police's** *(1)*
**policies** *(11)*
**policy** *(49)*
**policy,** *(2)*
**poll** *(1)*
**portion** *(1)*
**position** *(90)*
**possibility** *(2)*
**possible** *(6)*
**possibly** *(2)*
**practice** *(24)*
**Practices** *(6)*
**preceded** *(2)*
**precise** *(1)*
**pre-dates** *(1)*
**preface** *(1)*
**prefacing** *(1)*
**pre-operative** *(2)*
**preparation** *(12)*
**prepare** *(8)*
**prepared** *(10)*
**preparing** *(19)*
**present** *(8)*
**presented** *(4)*
**President** *(1)*
**pretty** *(1)*
**previous** *(9)*
**previously** *(4)*
**Price** *(1)*
**primarily** *(9)*
**primary** *(1)*
**Principals** *(13)*
**printed** *(1)*
**Printout** *(1)*
**prior** *(5)*
**private** *(1)*
**Pro** *(1)*
**probable** *(7)*
**Probably** *(4)*
**problem** *(1)*

**procedure** *(6)*
**procedures** *(4)*
**proceeding** *(2)*
**proceedings** *(4)*
**process** *(2)*
**processes** *(1)*
**produce** *(2)*
**program** *(1)*
**programs** *(1)*
**progress** *(1)*
**prohibit** *(2)*
**prohibited** *(6)*
**prohibiting** *(3)*
**prohibition** *(12)*
**prohibitions** *(1)*
**promised** *(5)*
**promulgated** *(1)*
**pronouns** *(1)*
**proof** *(1)*
**properties** *(1)*
**property** *(5)*
**protected** *(8)*
**Protection** *(1)*
**protested** *(1)*
**prove** *(2)*
**provide** *(17)*
**provided** *(22)*
**provider** *(2)*
**provides** *(1)*
**providing** *(4)*
**provisions** *(1)*
**Public** *(23)*
**publication** *(1)*
**publications** *(2)*
**publicizing** *(1)*
**publishing** *(1)*
**purpose** *(2)*
**purposefully** *(1)*
**purposes** *(2)*
**Pursuant** *(3)*
**put** *(16)*
**putting** *(2)*

**< Q >**
**quarrel** *(1)*
**question** *(64)*
**questioning** *(4)*
**questions** *(18)*
**quick** *(1)*
**quickly** *(3)*

quote  (7)

< R >
R-4110  (3)
ramifications  (1)
rationale  (2)
RDR  (2)
reaction  (1)
read  (20)
realize  (1)
realized  (1)
really  (1)
reason  (4)
reasons  (1)
reassignment  (2)
recall  (48)
receipt  (5)
receive  (2)
received  (14)
receiving  (2)
Recess  (3)
recognition  (1)
recognize  (6)
recognized  (4)
recollection  (15)
recommended  (1)
reconsideration  (1)
record  (7)
records  (2)
reduced  (2)
refer  (1)
reference  (12)
referenced  (2)
references  (1)
referred  (4)
referring  (11)
reflect  (1)
refresh  (1)
refreshed  (1)
refreshes  (1)
refuse  (2)
refused  (2)
refusing  (2)
regard  (26)
regarding  (9)
regardless  (2)
regards  (1)
regular  (3)
regularly  (2)
regulation  (14)

regulations  (17)
reimpose  (1)
reimposed  (1)
reiterated  (1)
rejected  (2)
related  (6)
relating  (5)
relative  (4)
relevant  (14)
relied  (2)
rely  (1)
relying  (2)
remained  (1)
remedies  (1)
Remedy  (8)
remember  (9)
remembered  (1)
remove  (1)
repeat  (7)
report  (2)
Reported  (3)
Reporter  (12)
reporting  (2)
represent  (1)
representation  (1)
representations  (1)
representative  (1)
represented  (1)
representing  (2)
request  (15)
requested  (3)
requests  (1)
require  (10)
required  (6)
requirements  (1)
requires  (1)
requiring  (3)
resolved  (1)
resources  (3)
respect  (1)
respectfully  (1)
respecting  (2)
respond  (4)
responded  (3)
Respondent  (6)
Respondent's  (1)
responding  (5)
response  (54)
responses  (2)
responsibility  (2)

responsible  (13)
responsive  (1)
rest  (1)
restrain  (2)
restriction  (7)
restrictions  (2)
restrictive  (1)
restroom  (123)
restrooms  (58)
result  (6)
reverse  (1)
Review  (16)
reviewed  (16)
reviewing  (4)
reviewing,  (1)
revise  (1)
revised  (13)
revising  (3)
revision  (7)
revisions  (2)
ridiculing  (1)
right  (29)
Rights  (89)
ROBERTS  (191)
Roberts,  (1)
Rodriguez  (34)
room  (7)
rooms  (2)
routinely  (6)
rude  (1)
rudely  (1)
Rule  (71)
rules  (2)
ruling  (6)
rulings  (1)

< S >
saw  (6)
saying  (28)
says  (49)
scan  (1)
scheduled  (1)
SCHOOL  (240)
schools  (26)
Schwenk  (6)
scope  (6)
Scott  (66)
scrutiny  (1)
second  (12)
secondary  (1)

secretary  (1)
see  (66)
seeing  (1)
seeking  (2)
seen  (4)
segregated  (4)
send  (1)
sending  (8)
sends  (5)
Senior  (1)
sense  (3)
sent  (17)
sentence  (6)
separate  (5)
September  (30)
Sergeant  (1)
Seriously  (1)
served  (1)
session  (1)
set  (6)
settlement  (4)
Seventh  (2)
sex  (13)
sex,  (1)
sex-reassignment  (1)
sex-segregated  (1)
Sexual  (4)
sexually-based  (1)
shape  (5)
Shelley  (1)
shift  (3)
short  (1)
shorthand  (1)
shortly  (2)
show  (9)
showed  (4)
shown  (1)
shows  (1)
sic  (2)
sign  (4)
signature  (3)
signed  (2)
similarly  (4)
simply  (6)
single  (5)
singled  (5)
single-occupancy  (15)
single-occupant

Jon Okazaki, Esq., Volume II, 6/29/16                    Bradley Roberts v. Clark County School District

(21)
**single-use** (15)
**sit** (3)
**sites** (6)
**sites,** (1)
**sitting** (1)
**situated** (2)
**situation** (2)
**six** (4)
**Skorkowsky** (7)
**small** (1)
**social** (1)
**somebody** (3)
**soon** (4)
**sooner** (1)
**Sorry** (21)
**sort** (5)
**South** (3)
**Southern** (1)
**speak** (9)
**speaking** (2)
**speaks** (2)
**specific** (27)
**specifically** (16)
**specificity** (3)
**specifics** (1)
**specified** (1)
**speculation** (4)
**spoke** (1)
**squared** (1)
**ss** (1)
**staff** (2)
**stalled** (1)
**stamp** (1)
**stamps** (1)
**stand-alone** (1)
**standing** (212)
**stapler** (2)
**staples** (1)
**start** (4)
**started** (1)
**starts** (2)
**state** (10)
**stated** (4)
**statement** (13)
**statements** (1)
**STATES** (1)
**stating** (3)
**station** (1)
**status** (6)

**statuses** (5)
**stay** (2)
**stems** (1)
**step** (1)
**stepped** (1)
**stop** (7)
**stopped** (3)
**straight** (1)
**stream** (2)
**Street** (3)
**strike** (2)
**student** (6)
**stuff** (1)
**styled** (1)
**SUBJECT** (41)
**subjected** (3)
**subjects** (4)
**submissions** (1)
**submitted** (1)
**subsequent** (1)
**subsequently** (1)
**substance** (1)
**substantive** (2)
**substantively** (2)
**subvocalization** (1)
**sued** (1)
**suggest** (2)
**suggested** (1)
**suggests** (1)
**Suite** (3)
**summarized** (1)
**summary** (16)
**summary,** (1)
**superintendent**
   (33)
**supervisor** (1)
**support** (3)
**supported** (5)
**supports** (2)
**supposed** (4)
**Supreme** (4)
**Sure** (19)
**surgery** (3)
**surgical** (5)
**surprise** (1)
**survey** (3)
**sway** (1)
**switched** (1)
**swore** (1)
**sworn** (1)

**< T >**
**take** (25)
**Taken** (12)
**talk** (2)
**talked** (9)
**talking** (16)
**tangible** (1)
**task** (1)
**tasked** (1)
**teacher** (2)
**technically** (1)
**tell** (45)
**telling** (7)
**tells** (5)
**term** (5)
**terms** (1)
**testified** (13)
**testify** (15)
**testifying** (2)
**testimony** (18)
**texting** (2)
**Thank** (6)
**Thanks** (2)
**then-existing** (1)
**thing** (3)
**things** (5)
**think** (22)
**thinking** (2)
**thinks** (2)
**Third** (5)
**this,** (1)
**Thomas** (5)
**thought** (3)
**three** (10)
**three-year-old** (1)
**time** (59)
**times** (3)
**timing** (1)
**Title** (23)
**titled** (2)
**today** (58)
**told** (57)
**Tom** (22)
**Tony** (2)
**Tony,** (1)
**top** (3)
**Topic** (23)
**Topics** (6)
**totally** (1)

**transcribed** (1)
**transcript** (2)
**transcription** (1)
**Transgender** (23)
**transgendered** (1)
**transition** (5)
**treated** (5)
**treating** (1)
**treatment** (3)
**treatment,** (1)
**triggered** (1)
**true** (2)
**truth** (6)
**try** (2)
**trying** (7)
**turn** (7)
**turned** (1)
**turning** (1)
**two** (25)
**two-page** (2)
**type** (3)
**types** (2)
**typewriting** (1)
**typewritten** (1)
**typically** (1)

**< U >**
**U.S** (2)
**ultimate** (1)
**ultimately** (2)
**unable** (1)
**unaware** (3)
**unchanged** (2)
**undergo** (2)
**underlying** (1)
**understand** (15)
**understanding** (15)
**understood** (8)
**undertake** (6)
**undertaken** (3)
**undertaking** (1)
**undertook** (5)
**unequal** (1)
**unequivocally** (1)
**unimportant** (1)
**Union** (1)
**unisex** (1)
**Unit** (66)
**UNITED** (1)
**unlawful** (12)

unquote  (5)

unsuccessful  (2)

unusual  (3)

unwritten  (2)

upcoming  (1)

update  (1)

updated  (1)

urinate  (1)

urinating  (1)

use  (167)

uses  (4)

usually  (1)

< V >

vague  (1)

Valley  (2)

various  (3)

Vegas  (4)

verbal  (3)

verbally  (4)

version  (3)

versus  (9)

vibrate  (1)

victim,  (1)

VII  (8)

VII,  (1)

violate  (1)

violated  (1)

violates  (1)

violation  (4)

Violence  (1)

visited  (2)

visiting  (1)

Volume  (1)

vote  (1)

voted  (2)

vs  (1)

< W >

wait  (2)

waive  (1)

waiving  (1)

walked  (1)

want  (1)

wanted  (5)

wants  (4)

warned  (1)

warnings  (1)

wasting  (2)

Waterhouse  (1)

way  (18)

ways  (1)

website  (6)

Wednesday  (2)

week  (5)

weekly  (2)

weeks  (12)

well  (25)

went  (18)

we're  (28)

We've  (4)

WHEREOF  (1)

whichever  (1)

Williams  (5)

willing  (1)

withdraw  (2)

Withdrawal  (2)

WITNESS  (211)

women's  (5)

word  (6)

wording  (1)

words  (1)

work  (6)

worked  (1)

working  (1)

write  (4)

writing  (30)

written  (32)

wrong  (5)

wrote  (3)

< Y >

yeah  (13)

year  (8)

year-long  (2)

years  (6)

York  (27)

York's  (3)

YOUNG  (290)